NEXSEN PRUET, PLLC
Brian Anderson
Christine L. Myatt
701 Green Valley Road, Suite 100
Greensboro, North Carolina
Telephone:  (336) 387-5156
Facsimile:  (336) 387-8932

and

GRIFFIN HAMERSKY LLP
Scott A. Griffin (*pro hac vice pending*)
Michael D. Hamersky (*pro hac vice pending*)
420 Lexington Ave., Suite 400
New York, New York 10170
Telephone : (646) 998-5575
Facsimile :  (646) 998-8284

*Counsel for BKP Enterprise
and Expim International*

UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| DYNAMIC INTERNATIONAL AIRWAYS, LLC | ) Case No. 17-10814 |
| | ) Chapter 11 |
| Debtor. | ) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS
OF BKP ENTERPRISE AND EXPIM INTERNATIONAL TO EMERGENCY
MOTION SEEKING INTERIM AND FINAL ORDERS:  (1) AUTHORIZING
DEBTOR TO OBTAIN POST-PETITION FINANCING, (2) GRAINTING LIENS
AND SUPERPRIORITY ADMINISTRATIVE EXPENSE, AND (3) SETTING AND
PRESCRIBING THE FORM AND MANNER OF NOTICE FOR A FINAL HEARING**

BKP Enterprise and Expim International (collectively, the "BKP Entities"),[1] by and through their attorneys, hereby submit their Limited Objection and Reservation of Rights (the

---

[1] The BKP Entities are owed $3.5 million pursuant to a judgment plus costs of $2.8 million from the above-captioned Debtor pursuant to certain arbitration awards and judgments arising from the Debtor's breach of contract with those entities.
.

"Objection") to the Emergency Motion Seeking Interim and Final Orders: (1) Authorizing Debtor to Obtain Post-petition Financing, (2) Granting Liens and Superpriority Administrative Expense, and (3) Setting and Prescribing the Form and Manner of Notice for a Final Hearing [Dkt. No. 16] (the "DIP Motion"), [2] and in support thereof respectfully state as follows:

## PRELIMINARY STATEMENT

In connection with its first day relief, the Debtor proposes a DIP Credit Facility that is ripe with the potential for abuse by insiders. Indeed, the Debtor's president and ultimate co-owners co-own the entity that is being proposed as the Lender for the Debtor's postpetition financing. Although such insider financing relationships are not *per se* prohibited, they are subject to a heightened level of review – mandating that the Debtor demonstrate that the insider transaction is "***entirely fair***" to creditors. Here, surprisingly, the Debtor has completely failed to establish how the proposed DIP Financing - with its severe insider conflicts - is entirely fair to creditors.

Rather, it seeks this Court's approval of the transaction based largely on unsupported contentions that the proposed DIP Financing is the only financing available to the Debtor, and that its entry into transaction constitutes a good faith exercise of its business judgment. However, other than mentioning the buzz words necessary for post-petition financing approval, the Debtor simply has not carried its burden for such approval. It has not established or even described a process in the DIP Motion that would suggest that this transaction is entirely fair to creditors in this Chapter 11 Case. Instead, the Debtor aims to protect and entrench its insiders and insider Lender through provisions in the DIP Motion and Loan Agreement that would make

---

[2] Capitalized terms used in this Objection, but not otherwise defined, shall have the meanings ascribed to them in the DIP Motion.

it difficult for creditors to challenge the transaction. Such impediments are impressible and should not be approved on either an interim or final basis.

Accordingly, the BKP Entities respectfully request that the Court deny the DIP Motion in its entirety.

## RELEVANT FACTUAL BACKGROUND

Commencement of the Chapter 11 Case

1. On July 19, 2017, the above-captioned debtor, Dynamic International Airways, LLC (the "Debtor") commenced a case (the "Chapter 11 Case") under chapter 11 of title 11 of the United States Code in this Court.

2. In conjunction with the Chapter 11 Case, the Debtor has sought this Court's approval of certain first day relief, including approval of the DIP Motion.

3. Pursuant to the DIP Motion, the Debtor seeks to borrow from Solitude Strategies, LLC (the "Lender") up to $2.3 million of DIP Financing on an interim basis and up to $6 million of DIP Financing pursuant to a Final Order.

4. Significantly, the Lender is co-owned by Paul Kraus ("Kraus") and Ken Woolley ("Woolley"). See *DIP Motion, n. 2*. Messrs. Kraus and Woolley are also the ultimate co-owners of the Debtor, with Kraus serving as the Debtor's president and chief executive officer. See *DIP Motion, Sec III. ¶2*. Notably, Kraus executed the Loan Agreement for the DIP Financing on behalf of the Debtor, while Woolley executed the agreement on behalf of the Lender.

## LIMITED OBJECTION

The Proposed DIP Financing Is Subject to a Heightened Standard of Review

5. It is well-established in determining whether to approve postpetition financing, courts typically will not substitute their own views regarding a proposed transaction as long as it

is supported by a reasonable exercise of the debtor's business judgment.[3]  See *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); see also, *In re Alpha Nat. Res., Inc.*, 546 B.R. 348, 356 (Bankr. E.D. Va. 2016), *aff'd sub nom. United Mine Workers of Am. 1974 Pension Plan & Tr. v. Alpha Nat. Res., Inc.*, 553 B.R. 556 (E.D. Va. 2016). However, where, as here, the transaction involves an insider or insiders stand to benefit, the debtor's decisions are not afforded the judicial deference typically granted under the business judgment rule.[4]  Instead, the standard for approval is the much higher "entire fairness" review.  See *In re Zenith Elecs. Corp.*, 241 B.R. 92, 108 (Bankr. D. Del. 1999); see also, *Stancill v. Harford Sands Inc. (In re Harford Sands Inc.)*, 372 F.3d 637, 641 (4th Cir. 2004) ("An insider's dealings with a bankrupt corporation are ordinarily subject to 'rigorous' or 'strict' scrutiny.") (citation omitted); *Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holdings Unsecured Claims (In re Papercraft Corp.)*, 211 B.R. 813, 823 (W.D. Pa. 1997) (finding that "insider transactions are subjected to rigorous scrutiny and when challenged, the burden is not only to prove the good faith of a transaction but also to show the inherent fairness from the viewpoint of the corporation

---

[3] In evaluating whether proposed financing satisfies the business judgment standard, courts consider a number of factors, including: (a) whether the proposed financing is an exercise of sound and reasonable business judgment; (b) whether alternative financing is available on any other basis; (c) whether the financing is in the best interests of the estate and its creditors; (d) whether any better offers, bids, or timely proposals are before the court; (e) whether the credit transaction is necessary to preserve the assets of the estate; (f) whether the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender; (g) whether the financing is necessary, essential and appropriate for the continued operations of the debtor's business and the preservation of its estate; and (h) whether the financing agreement was negotiated in good faith and at arms' length between the debtor, on the one hand, and the lender, on the other hand. See, e.g., *In re Farmland Indus., Inc.*, 294 B.R. 855, 879-80 (Bankr. W.D. Mo. 2003).

[4] The business judgment rule as generally formulated and applied in corporate litigation provides "that courts should defer to-should not interfere with-decisions of corporate directors upon matters entrusted to their business judgment except upon a finding of bad faith or gross abuse of their "business discretion."  See *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046–47 (4th Cir. 1985).

and those with interests therein.") (citation omitted); *WHBA Real Estate Ltd. P'ship v. Lafayette Hotel P'ship (In re Lafayette Hotel P'ship)*, 227 B.R. 445, 454 (S.D.N.Y. 1998) ("Since there is an incentive and opportunity to take advantage . . . insiders' loans in a bankruptcy must be subject to rigorous scrutiny."), *aff'd*, 198 F.3d 234 (2d Cir. 1999).

6. Under the "entire fairness" standard of judicial review, **the Debtor must demonstrate that the challenged transaction is entirely fair to creditors** both in terms of "fair dealing," which entails an examination of when the transaction was timed and how it was initiated, structured, negotiated and disclosed to the directors, and "fair price," which entails an examination of the economic and financial considerations of the transaction. Id. (citing *Weinberger v. UOP, Inc.*, 457 A.2d 701, 711 (Del. 1983)).

7. Here, the Debtor has not demonstrated that the current transaction is entirely fair to its creditors. Indeed, as noted above, Kraus, the Debtor's president, chief executive officer and ultimate co-owner, and Woolley, the Debtor's other ultimate co-owner, jointly own the Lender. They are indisputably on both sides of the DIP Financing transaction and, as a result, the Debtor must demonstrate, that notwithstanding such clear conflict, the proposed DIP Financing is entirely fair to creditors of its estate. Remarkably, the Debtor has not made this showing.

8. With the exception of alleging general platitudes regarding, *inter alia*, the inability of the Debtor to obtain alternative financing and the Debtor's allege exercise of its business judgment in entering into the current proposed DIP Financing transaction, the Debtor has not remotely addressed how this transaction is fair to creditors – even on an interim basis - given Messrs. Kraus and Woolley's conflicted insider status. It has offered no support to demonstrate that it marketed the transaction, or that after such marketing, the proposed DIP

Financing with the Debtor's insiders was deemed in the best interest of its estate and creditors. Further, the Debtor has failed to establish that the transaction is fair and reasonable, or was negotiated in good faith and at arm's length.[5]  Tellingly, there is no mention of the individual that negotiated the transaction on behalf of the Debtor - was it Mr. Kraus, one of the owners of the Lender?  To satisfy its burden, even on an interim basis, the Debtor simply cannot rely on bald statements as support for the proposed DIP Financing.  It is required to establish that the DIP Financing is proper in light of the severe conflict of issues present here. The Debtor has failed to carry its burden of showing the entire fairness of the transaction; and as a result, the DIP Motion must be denied.

Interim Relief Should Not Prejudice Creditors' Rights

9. Alternatively, if this Court were to approve the DIP Motion on an interim basis (which it should not based on the serious conflicts discussed herein), such relief should not prejudice the rights of creditors to later challenge the propriety of the DIP Financing on a final basis. As currently drafted, however, the terms of the proposed DIP Financing would inhibit those creditor rights.

10. For example, the Debtor has proposed that the security interests and liens requested by the Lender become effective upon this Court's approval of the Interim Order, even in the event this Court does not enter a Final Order for the DIP Financing.  See *Interim Order, ¶6* ("If a Final Order is not entered for any reason, this Order will remain in full force and effect and nothing shall affect the rights of the Lender under the DIP Loan Documents . . . and (i) the Liens and Superpriority Claims granted to . . . Lender shall continue in full force and effect and shall maintain their priorities as provided in this Order. . . .).  This Court's approval of such language

---

[5] It is difficult to determine whether the transaction is fair and reasonable given the lack of information from the Debtor regarding its assets and the value thereof.

could have the impact of barring a later challenge to the Liens contemplated under the DIP Credit Facility.

11. Similarly, Section 8.5 of the DIP Loan Agreement, includes as an event of default, any challenge to the priority of the payment and performance obligations of the Debtor to the Lender – such language presumably would include any challenge to payments made by the Debtor to the Lender based on a corresponding challenge to the Lender's proposed liens. Thus, if this Court were to approve the DIP Loan Agreement on an interim basis, the commencement of an adversary proceeding, by a creditors committee later challenging the DIP Financing would trigger a default of the loan. Such default, could provide the Lender with grounds to seek stay relief and foreclose on estate assets.

12. Lastly, the proposed carve-out of $15,000 set forth in the Motion for the creditors committee and its professionals to investigate, object to or contest the Lenders' liens are wholly inadequate, especially in light of the potential conflicts arising from the insider status of the Debtor and Lender's principals.

**RESERVATION OF RIGHTS**

13. The BKP Entities reserve the right to supplement this Objection, including objecting to the Debtor's request for entry of the Final Order.

WHERERFORE, the BKP Entities respectfully request that the Court (i) deny the Motion, and (ii) grant such other and further relief as the Court deems just an appropriate.

Dated: July 24, 2017

Respectfully submitted,

/s/ Christine L Myatt
Christine L. Myatt, Esq.
N.C. State Bar No. 10444
cmyatt@nexsenpruet.com
Brian Anderson
N.C. State Bar No. 37989
banderson@nexsenpruet.com
(336) 373-1600
*Local Counsel for BKP Enterprise and Expim International*

*And*

/s/ Scott A. Griffin
Scott A. Griffin
Griffin Hamersky LLP
420 Lexington Ave., Suite 400
New York, New York 10170
Telephone : (646) 998-5575
Facsimile :  (646) 998-8284
*Counsel for BKP Enterprise and Expim International (Pro Hac Vice pending)*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| In re:<br><br>DYNAMIC INTERNATIONAL AIRWAYS, LLC<br><br>Debtor. | )<br>)<br>)<br>)  Case No. 17-10814<br>)  Chapter 11<br>)<br>) |

## CERTIFICATE OF SERVICE

I certify that I have this date, served or caused to be served a copy of the foregoing **LIMITED OBJECTION AND RESERVATION OF RIGHTS OF BKP ENTERPRISE AND EXPIM INTERNATIONAL TO EMERGENCY MOTION SEEKING INTERIM AND FINAL ORDERS: (1) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING, (2) GRAINTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE, AND (3) SETTING AND PRESCRIBING THE FORM AND MANNER OF NOTICE FOR A FINAL HEARING** by the Court's CM/ECF electronic service and/or by first class Mail, postage prepaid, on the following:

| | |
|---|---|
| **Dynamic International Airways, LLC**<br>(via U.S. Mail)<br>4310 Regency Drive<br>Suite 100<br>High Point, NC 27265<br>*Debtor* | **Daniel C. Bruton** (via ECF)<br>Bell, Davis & Pitt, P.A.<br>P. O. Box 21029<br>Winston-Salem, NC 27120-1029<br>*Counsel for Debtor* |
| **Erick T. Gjerdingen** (via ECF)<br>**Gerald M. Gordon** (via ECF)<br>**Teresa M. Pilatowicz** (via ECF)<br>Garman Turner Gordon, LLP<br>650 White Drive, Suite 100<br>Las Vegas, NV 89119<br>*Counsel for Debtor* | **William P. Miller** (via ECF)<br>101 South Edgeworth Street<br>Greensboro, NC 27401<br>*Bankruptcy Administrator* |
| **Clint Shepperd Morse** (via ECF)<br>Brooks Pierce McLendon Humphrey, et al<br>230 N. Elm St.<br>Greensboro, NC 27401<br>*Counsel for PMC Aviation 2012-1 LLC* | **Holmes P. Harden** (via ECF)<br>Williams Mullen<br>PO Box 1000<br>Raleigh, NC 27602<br>*Counsel for Worldwide Flight Services, Inc.* |

Respectfully submitted this 24th day of July, 2017.

/s/ Christine L Myatt
Christine L. Myatt, Esq.
N.C. State Bar No. 10444
cmyatt@nexsenpruet.com
*Local Counsel for BKP Enterprise and Expim International*