UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                              )
                                    )
DYNAMIC INTERNATIONAL               )     Case No. 17-10814
AIRWAYS, LLC                        )     Chapter 11
                                    )
          Debtor.                   )
_____)

**EMERGENCY MOTION SEEKING FOURTH INTERIM ORDER: (1)
AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING, AND (2)
GRANTING LENDER AN ALLOWED SUPERPRIORITY ADMINISTRATIVE
EXPENSE**

Dynamic International Airways, LLC, a Virginia limited liability company, debtor
and debtor-in-possession ("Debtor"), hereby submits its motion (the "Motion") for entry
of a fourth interim order (the "Fourth Interim Financing Order," or "Order"): (1)
authorizing Debtor to enter into a modification of the existing debtor-in-possession credit
facility (the "DIP Credit Facility") pursuant to Sections[1] 105 and 364 of title 11 of the
United States Code (the "Bankruptcy Code") with Solitude Strategies, LLC,[2] as lender (the
"Lender") to allow Lender to advance an additional $1.5 million immediately, with an
option to advance an additional $1 million in December 2017 in accordance with the terms
of the prior Interim Orders (as defined below).

This Motion is made and based on the memorandum of points and authorities
below, declaration of Ray Lawlor (the "Lawlor Declaration"), a copy of which is attached
hereto as **Exhibit A** and incorporated herein by reference, the Initial DIP Financing Motion

---

[1] All references to "Chapter" and "Section" herein shall be to the Bankruptcy Code appearing in
Title 11 of the U.S. Code; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of
Bankruptcy Procedure; and all references to "LBR" shall refer to the Local Rules of Bankruptcy
Practice of the United States Bankruptcy Court for the Middle District of North Carolina

[2] Solitude Strategies, LLC is owned equally by Paul Kraus and Kenneth M. Woolley, Debtor's
ultimate principals.

and the Interim Orders (as defined below), the pleadings and papers on file with this Court, judicial notice of which is respectfully requested, and the argument of counsel at any hearings on the Motion.

## I.
## BANKRUPTCY RULE 4001 CONCISE STATEMENT

Debtor previously filed its motion seeking interim and final orders authorizing Debtor to obtain post-petition financing (the "Initial DIP Financing Motion")[3] [ECF No. 16] on July 19, 2017, seeking approval of the DIP Loan Agreement. On August 3, 2017, this Court entered its first interim order (the "First Interim Order") [ECF No. 99], authorizing an interim loan from Lender in the amount of $800,000, with 6% interest as an administrative expense. On August 23, 2017, this Court entered its second interim order (the "Second Interim Order") [ECF No. 185], authorizing an additional interim loan from Lender in the amount of $2,355,369, plus an increase of up to $160,000 for certain enumerated expenses. On October 5, 2017, this Court entered its third interim order (the "Third Interim Order" and, collectively, the "Interim Orders") [ECF No. 258], authorizing but not requiring Lender to advance up to $500,000. As of the filing of this Motion, in accordance with the Interim Orders, Lender has advanced $3,808,369 under the DIP Credit Facility. This Court has scheduled a Further Hearing (as defined in the Third Interim Financing Order) related to the DIP Credit Facility for December 7, 2017, at 2:00 p.m.

By this Motion, Debtor requests entry of a Fourth Interim Order authorizing but not requiring Lender to advance up to $1.5 million immediately, and an additional $1 million in December 2017 (the "Fourth Interim Loan") at the rate of 6% interest, which funds would be extended as part of the existing DIP Credit Facility under the terms of the Interim Orders. Debtor requests that, as with previous extensions approved by the Interim Orders,

---

[3] All capitalized, undefined terms herein have the meanings ascribed to them in the Initial DIP Financing Motion, and the three Interim Financing Orders.

advances constituting the Fourth Interim Loan shall be an unsecured administrative expense under Sections 364(b) and 503(b)(1), under the same terms as the previous Interim Orders.  As described more fully below, the Fourth Interim Loan is necessary on the basis that logistical issues related to aircraft operation have prevented Debtor from fully performing under and obtaining the revenue from certain aircraft, crew, maintenance, and insurance contracts ("ACMI Contracts") that were anticipated in connection with the Third Interim Loan.  Debtor anticipates that it will be able to perform under the ACMI Contracts with the cash provided by the Fourth Interim Loan.  Further, Debtor intends on filing a plan of reorganization on or before Friday, November 3, 2017, with an accompanying disclosure statement filed during the week of November 6, 2017.  Under the anticipated plan, Lender's allowed administrative expenses arising out of the DIP Credit Facility will be converted to equity in Debtor.

## II.
## RELEVANT BACKGROUND

1. For brevity, the Initial DIP Financing Motion and the Interim Orders are incorporated herein by reference.

2. As detailed above, as of the filing of this Motion, Lender has advanced $3,808,369 under the DIP Credit Facility.  See Lawlor Dec. ¶ 3.

3. In connection with the extension of the Third Interim Loan, Debtor anticipated that it would have sufficient operating revenue based on certain ACMI Contracts into which it had entered.  See id. ¶ 4.

4. In particular, Debtor had two signed contracts and was in the process of executing a third with Gulfstream, Sky Capital Leasing/Fly One, and Latin America Wings ("LAW").  See id. ¶ 4

5. With regard to its contract with Gulfstream, Debtor was able to fly for several days, but was interrupted by multiple maintenance issues. On October 24, 2017, a Debtor sent a representative to Cuba to meet with the domestic aviation authority to discuss

performance issues.    After being satisfied with discussions during this meeting, the aviation authority allowed flights to resume. Later that same day aircraft N254MY, on a return trip from Cuba, developed engine problems and is currently undergoing evaluation and maintenance.  Debtor anticipates that it will be able to resume operations on this contract this week.  See id. ¶ 5.

6.      With regard to its contract with Sky Capital Leasing/Fly One, permitting issues arose with Chilean Directorate General of Civil Aviation ("DGAC" using its Spanish acronym), which resulted in the cancellation of the contract on October 19, 2017.   Sky Capital Leasing/Fly One continues to work with the DGAC to renew its permits and begin flying again with Debtor.  See id. ¶ 6.

7.      With regard to its contract with LAW, Debtor cancelled the contract on or about October 25, 2017, for failure to pay.  Upon cancellation of the contract, Debtor took steps to immediately return its aircraft from Santiago, Chile to Miami, Florida for use in connection with the above-referenced Gulfstream contract; however, LAW impermissibly held Debtor's aircraft, and has only recently released it.  See id. ¶ 7.

8.      As a general matter, Debtor has faced difficulty due to a lack of operating and available aircraft, not a lack of contracts.  Dynamic anticipated having three aircraft available to service the contracts, with an additional three aircraft undergoing longer term maintenance on certification.   This was not possible, however, given the unforeseen maintenance problems, coupled with LAW's physically preventing an aircraft from leaving Chile.  See id. ¶ 8.

9.      Nevertheless, Dynamic anticipates that aircraft will return to service in the next two weeks, which will allow it to perform under the Gulfstream and additional contracts.  Of debtor's six aircraft, two aircraft should be available in the next few days, three additional aircraft are expected to return mid-November, and an additional aircraft's return date is unknown.  See id. ¶ 9.

10.      As such, Debtor requires the Fourth Interim Loan in order to allow it to keep

operating while its aircraft return to service contracts. <u>See</u> <u>id.</u> ¶ 10.

11.     Additionally, Debtor anticipates filing a plan of reorganization on or before Friday, November 3, 2017, with an accompanying disclosure statement filed during the week of November 6, 2017.  Through the proposed plan, it is anticipated that Lender's allowed administrative claim arising out of the DIP Credit Facility will be converted to equity. <u>See</u> <u>id.</u> ¶ 11.

**III.**
**RELIEF REQUESTED**

12.     Debtor hereby requests entry of the Fourth Interim Order authorizing Lender to extend additional advances in the amounts of $1.5 million immediately and $1 million in December 2017 under the DIP Credit Facility, on the same terms as approved under the previous Interim Orders, subject to the Further Hearing and the entry of a Final Order, and granting Lender an allowed administrative expense claim.

**IV.**
**LEGAL AUTHORITIES**

A.     **Approval Under Section 364 of the Bankruptcy Code.**

13.     Section 364 of the Bankruptcy Code allows a debtor to (a) obtain unsecured credit in the ordinary course of business, (b) obtain unsecured credit out of the ordinary course of business, and (c) obtain credit with specialized priority or with security.  Debtor has been unable to obtain, nor does it believe it would be unable to obtain, financing in the form of unsecured credit, allowable under Section 364(b) of the Bankruptcy Code as an administrative expense.  Debtor is unable to obtain unsecured credit out of the ordinary course of business or credit with specialized priority or with security. The only party willing to lend funds to Debtor is Lender, which has agreed to provide the DIP loan to Debtor on the terms previously presented to this Court in Interim Orders.  Thus, Debtor proposes to obtain financing under the terms consistent with the Interim Ordesr, and the Final Order pursuant to Sections 105 and 364(c) of the Bankruptcy Code.

14.     Section 364(c) of the Bankruptcy Code provides, among other things, that

if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the Court may authorize the debtor to obtain credit or incur debt (a) with priority over any and all administrative expenses as specified in Sections 503(b) or 507(b) of the Bankruptcy Code or (b) secured by a lien on property of the estate that is not otherwise subject to a lien. "The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." See Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co., Inc.), 789 F.2d 1085, 1088 (4th Cir. 1986)); see also Suntrust Bank v. Den-Mark Const., Inc., 406 B.R. 683, 691 (E.D.N.C. 2009) (debtor need only make a reasonable effort to obtain post-petition financing under Section 364(c)).

**B.**     **Debtor Does Not Have an Alternative to the DIP Loan.**

15.     Debtor previously explained in the DIP Financing Motion and before the Court in subsequent hearings that the DIP Credit Facility was needed in this Chapter 11 Case. Debtor has been unable to locate another lender willing to lend on terms better than or similar to those offered by the Lender, and Debtor does not believe that there is any lender willing to lend on terms better than or similar to those offered by the Lender (especially not before Debtor's limited resources are depleted by such a search). Debtor now requires the Fourth Interim Loan as an extension of the DIP Credit Facility. See Lawlor Dec. ¶ 13.

**D.**     **Application of the Business Judgment Standard.**

16.     As described above, Debtor has concluded that the Fourth Interim Loan as an extension of the DIP Credit Facility provides the only reasonable alternative available under the circumstances. Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money. See Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry., 318 U.S. 523, 550 (1943); In re Ames Dep't Stores, Inc., 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (in examining requests by a debtor for interim financing, courts apply the same business judgment standard

applicable to other business decisions); In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); In re Lifeguard Indus., Inc., 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

17.    In general, a bankruptcy court should defer to a debtor-in-possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. See In re Wilson, 94 B.R. 886, 889 (Bankr. E.D.Va. 1989); In re Curlew Valley Assoc., 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Courts generally will not second-guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code." Curlew Valley, 14 B.R. at 513-14 (footnotes omitted); see also Wilson, 94 B.R. at 889. Provided that a debtor's business judgment does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance therewith. See, e.g., Ames, 115 B.R. at 40 ("[T]he court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estates as it is to benefit a party-in-interest."); see also In re Yellowstone Mountain Club, LLC, 2008 WL 5869859 (Bankr. D. Montana, November 26, 2008) (acknowledging the use of the business judgment standard with respect to approval of Section 364 financing).

18.    Approval of the DIP Credit Facility will provide Debtor with immediate and ongoing access to funds to avoid harm to Debtor's estate and potential erosion of the enterprise value of Debtor's business. Unless Debtor has access to such additional funds,

the going concern value of Debtor's business will be diminished, and Debtor's ability to maximize value and reorganize will be jeopardized. The funds provided under the Fourth Interim Loan will enable Debtor to pay operating expenses and fund the reorganization of its business. See Lawlor Dec. ¶ 14.

19.     Debtor has exercised sound business judgment in determining that the Fourth Interim Loan is appropriate and has satisfied the legal prerequisites to borrow under the Interim Orders. Accordingly, Debtor should be granted authority to borrow funds from the Lender described above, pursuant to Sections 364(c) of the Bankruptcy Code, and take the other actions contemplated herein. See id. ¶ 15.

**E.     Interim Approval of the DIP Loan.**

13.     As previously detailed in the DIP Financing Motion, Bankruptcy Rules 4001(c)(2) provide that a final hearing on a motion to obtain credit pursuant to Section 364 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on obtaining credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

14.     Pursuant to Bankruptcy Rule 4001(c), Debtor requests that the Court conduct an expedited interim hearing to consider entry of the Fourth Interim Order authorizing Debtor to borrow an amount sufficient to fund its operating expenses pending a final hearing on the DIP Credit Facility and request to use Cash Collateral.

15.     No prior request for the relief sought herein has been made to this or any other Court, other than in connection with the relief granted in the prior Interim Orders.

**VII.**
**NOTICE,  REQUEST FOR WAIVER OF THE STAY,**
**AND REQUEST FOR FINAL HEARING**

16.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order,

unless the court orders otherwise." In view of the urgency of the relief requested herein and the risk to Debtor's operations if immediate relief with authority to fund the amounts requested in the Fourth Interim Order, Debtor will not be able to fund operations through the expiration of the 14-day period. Accordingly, Debtor requests that this Court waive the stay under Bankruptcy Rule 6004(h) and provide in the order granting the relief sought herein that such order shall be effective immediately.

17.    Given the emergency nature of the relief requested herein, and the potential disruption to Debtor's business that will ensue if such relief requested is not granted, Debtor submits that no further notice need be given prior to granting the relief sought herein.

18.    Pursuant to Bankruptcy Rules 4001(c)(2), Debtor also respectfully requests that the Court make final hearing on the DIP Financing Motion the final hearing on this Motion.

19.    Such relief is necessary in order to maintain ongoing operations and avoid immediate and irreparable harm and prejudice to Debtor's estate.

## VIII.
## CONCLUSION

Based on the foregoing, Debtor respectfully requests the Motion be approved as follows:

a.    Entering an order substantially in the form of the proposed Interim Order attached hereto as **Exhibit B;**

b.    After a final hearing, entering a Final Order approving the relief requested herein, substantially in the form that shall be filed with the Court;

c.    Waiving the fourteen-day stay applicable to any order approving the use of estate property imposed by Bankruptcy Rules 6004(h); and

d.    Granting such other and further relief as is just.

Dated this 30th day of October, 2017.

BELL, DAVIS & PITT, PA

By: _____
WALTER PITT, ESQ.
NC Bar No. 3467
DANIEL C. BRUTON, ESQ.
NC Bar No. 22440
PO Box 21029
Winston-Salem, NC 27120-1029
Telephone 336-714-4110

-and-

GARMAN TURNER GORDON LLP
GERALD M. GORDON, ESQ.
NV Bar No. 229
TERESA M. PILATOWICZ, ESQ.
NV Bar No. 9605
650 White Drive, Ste. 100
Las Vegas, Nevada 89119
Telephone 725-777-3000

*Attorneys for Debtor*

UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                                          )
                                                )
DYNAMIC INTERNATIONAL                           )     Case No. 17-10814
AIRWAYS, LLC                                    )     Chapter 11
                                                )
              Debtor.                           )
                                                )
_____ )

### DECLARATION OF RAY LAWLOR IN SUPPORT OF DEBTOR'S EMERGENCY MOTION SEEKING FOURTH INTERIM ORDER: (1) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING, AND (2) GRANTING LENDER AN ALLOWED SUPERPRIORITY ADMINISTRATIVE EXPENSE

I, RAY LAWLOR, hereby declare as follows:

1. I am over the age of 18 and am mentally competent and I make this declaration in support of Debtor's *Emergency Motion Seeking Fourth Interim Order: (1) Authorizing Debtor to Obtain Post-Petition Financing, and (2) Granting Lender an Allowed Superpriority Administrative Expense* (the "Motion").

2. I am the Chief Operating Officer ("COO") of Dynamic International Airways, LLC ("Debtor"). In my capacity as Debtor's COO, I am familiar with Debtor's daily business, operations, and financial affairs. Except as otherwise indicated, all of the facts set forth in this Declaration are based upon my personal knowledge of Debtor's operations and finances, information learned from my review of relevant documents, and information supplied to me by other members of Debtor's management and Debtor's business and legal advisors. If called upon to testify as to the content of this Declaration, I could and would do so.

3. As detailed above, as of the filing of this Motion, Lender has advanced $3,808,369 under the DIP Credit Facility.

4. In connection with the extension of the Third Interim Loan, Debtor anticipated that it would have sufficient operating revenue based on certain ACMI Contracts into which it had entered.

5. In particular, Debtor had two signed contracts and was in the process of executing a third with Gulfstream, Sky Capital Leasing/Fly One, and Latin America Wings ("LAW").

6. With regard to its contract with Gulfstream, Debtor was able to fly for



several days, but was interrupted by multiple maintenance issues. On October 24, 2017, a Debtor sent a representative of Cuba to meet with the domestic aviation authority to discuss performance issues.  After being satisfied with discussions during this meeting, the aviation authority allowed flights to resume. Later that same day aircraft N254MY, on a return trip from Cuba, developed engine problems and is currently undergoing evaluation and maintenance.  Debtor anticipates that it will be able to resume operations on this contract this week.

7.    With regard to its contract with Sky Capital Leasing/Fly One, permitting issues arose with Chilean Directorate General of Civil Aviation ("DGAC" using its Spanish acronym), which resulted in the cancellation of the contract on October 19, 2017. Sky Capital Leasing/Fly One continues to work with the DGAC to renew its permits and begin flying again with Debtor.

8.    With regard to its contract with LAW, Debtor cancelled the contract on or about October 25, 2017, for failure to pay.  Upon cancellation of the contract, Debtor took steps to immediately return its aircraft from Santiago, Chile to Miami, Florida for use in connection with the above-referenced Gulfstream contract; however, LAW impermissibly held Debtor's aircraft, and has only recently released it.

9.    As a general matter, Debtor has faced difficulty due to a lack of operating and available aircraft, not a lack of contracts.  Dynamic anticipated having three aircraft available to service the contracts, with an additional three aircraft undergoing longer term maintenance on certification.  This was not possible, however, given the unforeseen maintenance problems, coupled with LAW's physically preventing an aircraft from leaving Chile.

10.    Nevertheless, Dynamic anticipates that aircraft will return to service of the next two weeks, which will allow it to perform under the Gulfstream and additional contracts.  Of debtor's six aircraft, two aircraft should be available in the next few days, three additional aircraft are expected to return mid-November, and an additional aircraft's return date is unknown.

11.    As such, Debtor requires the Fourth Interim Loan in order to allow it to keep operating while its aircraft return to service contracts.

12.    Additionally, Debtor anticipates filing a plan of reorganization on or before Friday, November 3, 2017, with an accompanying disclosure statement filed during the week of November 6, 2017.  Through the plan, it is anticipated that Lender's allowed administrative claim arising out of the DIP Credit Facility will be converted to equity.

13.    Debtor previously explained in the DIP Financing Motion and before the Court in subsequent hearings that the DIP Credit Facility was needed in this Chapter 11 Case.  Debtor has been unable to locate another lender willing to lend on terms better than or similar to those offered by the Lender, and Debtor does not believe that any there is any lender willing to lend on terms better than or similar to those offered by the Lender (especially not before Debtor's limited resources are depleted by such a search).  Debtor

14.   Approval of the DIP Credit Facility will provide Debtor with immediate and ongoing access to funds to avoid harm to Debtor's estate and potential erosion of the enterprise value of Debtor's business.  Unless Debtor has access to such additional funds, the going concern value of Debtor's business will be diminished, and Debtor's ability to maximize value and reorganize will be jeopardized.  The funds provided under the Fourth Interim Loan will enable Debtor to pay operating expenses and fund the reorganization of its business.

15.   Debtor has exercised sound business judgment in determining that the Fourth Interim Loan is appropriate and has satisfied the legal prerequisites to borrow under the Interim Orders.  Accordingly, Debtor should be granted authority to borrow funds from the Lender described above, pursuant to Sections 364(c) of the Bankruptcy Code, and take the other actions contemplated herein.

I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

DATED this _____ day of October, 2017.

RAY LAWLOR

UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                                    )
                                          )
DYNAMIC INTERNATIONAL                     )        Case No. 17-10814
AIRWAYS, LLC,                             )        Chapter 11
                                          )
                Debtor.                   )
_____)

**FOURTH INTERIM ORDER (1) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING, (2) GRANTING ADMINISTRATIVE EXPENSE, AND (3) SETTING AND PRESCRIBING THE FORM AND MANNER OF NOTICE FOR A FURTHER HEARING**

This matter came before the Court on November 1, 2017 to further consider the

Debtor's *Emergency Motion Seeking Interim and Final Orders: (1) Authorizing Debtor to*

*Obtain Post-Petition Financing, (2) Granting Liens and Superpriority Administrative*

*Expense, and (3) Setting and Prescribing the Form and Manner of Notice for a Final*

*Hearing* [ECF No. 16] (the "Motion")[4] filed on July 19, 2017 by Dynamic International

Airways, LLC ("Debtor") in the above-captioned chapter 11 bankruptcy case (the

"Chapter 11 Case").

On August 3, 2017, the United States Bankruptcy Administrator appointed the

official committee of unsecured creditors (the "Committee") pursuant to section

1102(a)(1) of the Bankruptcy Code [ECF No. 98].

Following an initial hearing on July 24, 2017 (the "First Interim Hearing"), the

Court entered the *Interim Order (1) Authorizing Debtor to Obtain Post-Petition*

*Financing, (2) Granting Administrative Expense, and (3) Setting and Prescribing the*

---

[4]      All of the capitalized terms used in this Order will have the meanings ascribed to them in
the Motion or the DIP Loan Agreement (as defined in the Motion), unless otherwise indicated.


EXHIBIT
13

*Form and Manner of Notice for a Further Hearing* [ECF No. 99] (the "First Interim Order"). Following a second hearing on August 15, 2017 (the "Second Interim Hearing"), the Court entered the *Second Interim Order (1) Authorizing Debtor to Obtain Post-Petition Financing, (2) Granting Administrative Expense, and (3) Setting and Prescribing the Form and Manner of Notice for a Further Hearing* [ECF No. 185] (the "Second Interim Order") on August 23, 2017. Following a third hearing on September 18, 2017 (the "Third Interim Hearing"), the Court entered the *Third Interim Order (1) Authorizing Debtor to Obtain Post-Petition Financing, (2) Granting Administrative Expense, and (3) Setting and Prescribing the Form and Manner of Notice for a Further Hearing* [ECF No. 258] (the "Third Interim Order" and, collectively the "Interim Orders"). The Lender represents that it has advanced funds to the Debtor in the aggregate amount of $3,808,369 pursuant to the Interim Orders.

Upon the hearing (the "Fourth Interim Hearing") held before this Court on November 1, 2017, due and sufficient notice of the Motion and the Fourth Interim Hearing having been provided by Debtor; and after considering all the pleadings filed with this Court, and upon the record made by Debtor at the Fourth Interim Hearing; and the Court having found and determined that, subject to the terms of this order (the "Fourth Interim Order"), limited relief sought in the Motion is in the best interests of Debtor, its estate, creditors, and all parties in interest; and after due deliberation and consideration and good and sufficient cause appearing therefor,

THE COURT FINDS AND CONCLUDES:

A.    <u>Bankruptcy Chapter 11 Case</u>. On the Petition Date, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Pursuant to

Sections 1107(a) and 1108 of the Bankruptcy Code, Debtor continues to operate its business and manage its properties, affairs and assets as a debtor-in-possession.

B.   <u>Jurisdiction and Venue</u>.   This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).   Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.   <u>Notice</u>.   Notice of the Motion, the relief requested therein and the Fourth Interim Hearing was served by the Debtor on (i) the Bankruptcy Administrator for the Middle District of North Carolina; (ii) the Unsecured Creditors Committee; (iii) all applicable government agencies; (iv) all applicable taxing authorities; and (v) any entity which filed and served on Debtor a request for special notice within a reasonable time prior to the hearing of this Motion.   Under the circumstances, the proper, timely, adequate, and sufficient notice given by the Debtor of the Motion, the relief requested therein and the Fourth Interim Hearing was reasonable and appropriate under, and complies with, the requirements of due process, Bankruptcy Rule 4001(b), and the rules of this Court such that no other or further notice of the foregoing or of the entry of this Order is required, except as provided herein.

D.   <u>The DIP Credit Facility</u>.   Debtor and Lender engaged in negotiations with respect to the terms and conditions of the DIP Credit Facility.   Except as specifically provided in this Order, the Court defers to the Further Hearing (defined below) as provided for below to determine whether the terms set forth in the DIP Loan Agreement, among Lender and the Debtor, are fair, reasonable, and in the best interests of Debtor, its estate, and creditors.   Notwithstanding, Lender represents that it has advanced funds to

the Debtor in the aggregate amount of $3,808,369 pursuant to the Interim Orders, and pursuant to this Fourth Interim Order Lender is authorized, but not directed or required, to advance up to $1,500,000 immediately, and an additional $1,000,000 during December 2017 to the extent requested by the Debtor and necessary to fund operational shortfalls and professional fees as set forth in the Budget. Funds advanced by Lender pursuant to the Interim Orders, with interest at the rate of 6%, shall be an unsecured administrative expense under sections 364(b) and 503(b)(1) of the Bankruptcy Code (the "Administrative Claim") and no senior or junior liens shall be created hereunder. Further, the Administrative Claim shall not be paid or otherwise satisfied by the Debtor's or the estate's claims or causes of action under chapter 5 of the Bankruptcy Code or any proceeds thereof, any insurance policies protecting officers and directors of the Debtor or the proceeds thereof, any claims or causes of action against any of the officers or directors of the Debtor, or any claims or causes of action against any of Commercial Aircraft Services Holdings, LLC, NVLV Management, LLC, F. Paul Ohadi Trust, or any of their members, officers or directors, including, without limitation, Kenneth M. Woolley and Paul Kraus, or any proceeds thereof.  Approval of the Fourth Interim Loan and granting the Administrative Claim is fair, reasonable, and in the best interest of Debtor and its estate for the period from the Petition Date through the date of the Further Hearing.

E.      The Approved Budget.  Attached hereto as **Exhibit "1"** is an approved budget (the "Budget") through May 2018. Debtor and Lender have agreed upon the Budget and the expenses and funding shown on the Budget.  The Budget includes and contains Debtor's best estimate of all operational receipts and allows for operational

disbursements, fees, costs and other expenses that will be payable, incurred and/or accrued by Debtor, to be timely paid in the ordinary course of business pursuant to and in accordance with the Budget unless such operational disbursements, fees, costs and other expenses are not incurred or otherwise payable. Notwithstanding anything contained in the Budget, and in light of the consent of the various lessors of the Aircraft, the Debtor shall (i) pay maintenance reserves as required under the existing aircraft leases, shown on the Budget as Aircraft Reserves, commencing the last week in September based on hours of use, and (ii) shall defer payment of rents as required under the existing aircraft leases, shown on the Budget as Aircraft Leases, and such payments of rent will accrue without late fees, interest, or other costs above principal amounts of such payments; provided however, subject to the terms of this paragraph, the Debtor reserves the right to commence payment of current aircraft rent obligations in the event sufficient additional revenues are generated to commence such payments based on hours of use, but rents shall not be funded through the DIP Credit Facility. Prior to commencing payment of aircraft rent, notice of Debtor's intent to pay current aircraft rent shall be provided by Debtor to counsel for the Committee, counsel for PMC Aviation 2012-1 LLC, and counsel for the Bankruptcy Administrator (the "Rent Notice Parties"), together with a revised Budget disclosing the proposed payments. If none of the Rent Notice Parties object to payment of such aircraft rent within 7 days after such notice is provided, payment of aircraft rent pursuant to the revised Budget may commence. If any of the Rent Notice Parties timely object, payment of any aircraft rent obligations prior to the Further Hearing shall not be permitted unless approved by the Court, after notice and a hearing, and all parties' rights

to object to such payment of any aircraft rent are fully preserved. All rights of the Committee regarding the Budget are fully reserved and preserved.

      F.      <u>The Debtor's Needs for the DIP Credit Facility.</u>

For purposes of this Fourth Interim Order, only, the Court makes the following findings on the Debtor's need for interim funding. Nothing contained in this Order shall bind the Court, the Committee, or any other party-in-interest with respect to any matters brought before the Court at a later time, including but not limited to, the relief requested in the Motion not granted under this Fourth Interim Order, the Motion to Convert, the Further Hearing, or any other hearing on this Motion:

      (a)      Debtor does not have sufficient available sources of working capital and financing to carry on the management of its assets and liabilities, in the form that the Debtor operated pre-petition, without the Fourth Interim Loan.

      (b)      Good cause has been shown for the entry of this Fourth Interim Order and for the immediate effectiveness of the oral ruling at the Fourth Interim Hearing granting the Motion to the extent provided herein. Specifically, entry of this Order allows the Debtor to continue operating as it did pre-petition, pending the Further Hearing on this Motion for the limited time called for and pending the Court's ruling on the Further Hearing on this Motion. Debtor and its estate would suffer immediate and irreparable harm unless the Court authorizes the Debtor to obtain emergency funding from Lender up to the amount of the Fourth Interim

Loan, pursuant to the Budget, prior to the Further Hearing on the Motion to fund critical operating expenses of the Debtor;

(c) Lender has indicated a willingness to provide Debtor with post-petition secured financing but solely on the terms and conditions set forth in this Fourth Interim Order.  No parties were willing to provide financing in the form of unsecured credit allowable under Section 364(a) of the Bankruptcy Code.

(d) The terms and conditions of the Fourth Interim Loan are fair and reasonable, reflect Debtor's exercise of prudent business judgment consistent with its fiduciary duty and are supported by reasonably equivalent value and fair consideration.   The Fourth Interim Loan provided by this Order permits the Debtor to secure the post-petition financing required for its operating expenses under the best terms available for the Fourth Interim Period.

(e) Good cause has been shown and this Court concludes that the entry and implementation of this Order will, among other things, sustain the operation and value of the Debtor's bankruptcy estate.

**Accordingly, it is hereby ORDERED, ADJUDGED AND DECREED that:**

1. <u>Motion Granted in Part</u>.  The Motion is hereby granted in part to allow for the Fourth Interim Loan effective and enforceable with the entry of the oral ruling and order at the Fourth Interim Hearing. Approval of the terms of the DIP Loan Agreement, except as to any terms applicable to the Fourth Interim Loan as set forth herein, is deferred to the Further Hearing. The DIP Loan Agreement is of no force or effect.  For

the avoidance of doubt, this Fourth Interim Order does not (a) approve or grant any liens or security interests to the Lender relating to the Fourth Interim Loan, (b) approve or grant liens or security interests in, or approve payment of the Administrative Claim from (i) the Debtor's or the Debtor's estate's claims or causes of action under chapter 5 of the Bankruptcy Code or proceeds thereof, (ii) any insurance policies protecting officers and directors of the Debtor, (iii) or any claims or causes of action against any of the officers or directors of the Debtor, or any of Commercial Aircraft Services Holdings, LLC, NVLV Management, LLC, F. Paul Ohadi Trust, or any of their members, officers or directors, including , without limitation, Kenneth M. Woolley, and Paul Kraus, or any proceeds thereof, or (iv) deposits, prepayments, or other cash held by any creditor, and all parties' rights regarding any such relief requested in the Motion is deferred to the Further Hearing or some other hearing to be determined by the Court.  To the extent the terms of the DIP Loan Agreement or the previous Interim Orders differ in any material respect from the terms of this Fourth Interim Order, this Fourth Interim Order shall control.

2.    <u>Notice</u>.  Notice of the Motion, and the transactions contemplated thereby, has been provided to all parties entitled thereto and such notice was appropriate under the circumstances, and no other or further notice of the Motion, and the transactions contemplated thereby, is or shall be required, except as otherwise provided by this Fourth Interim Order.

3.    <u>DIP Credit Facility</u>.  Debtor is authorized pursuant to this Fourth Interim Order to borrow and spend in accordance with the Budget, as modified through this Fourth Interim Order, the Fourth Interim Loan through the Further Hearing on the Motion as reflected in the Budget.

4.      <u>Funding of Third Interim Loan</u>.    The Lender is authorized, but not directed or required, to advance up to $1,500,000 immediately, with an additional $1,000,000 in December 2017.

5.      <u>Approval and Binding Effect</u>.    With respect to the amounts advanced under the Budget, such amounts are deemed to be reasonable and necessary and the Administrative Claim granted under this Fourth Interim Order to protect such funds advanced by Lender in accordance with the Budget and this Fourth Interim Order is final in all respects.

6.      <u>Authorization of Financing</u>.    Subject to the terms and conditions of this Fourth Interim Order, the Debtor is authorized and/or ratified to perform all obligations under this Third Interim Order and the Budget.    Funds advanced under this Fourth Interim Order shall be used for payment of the operating expenses of the Debtor, in such amounts set forth at applicable line items. Lender shall not have any obligation or responsibility to monitor Debtor's use of proceeds of the Fourth Interim Loan and may, but is not required to, rely on the Debtor's representations that the amount of any advances requested by Debtor, and the use thereof, are in accordance with the requirements of this Fourth Interim Order.

7.      <u>Interim Nature</u>.    If a Final Order is not entered for any reason, this Fourth Interim Order will remain in full force and effect and, or the rights of the Lender under this Fourth Interim Order, and all such rights and remedies of the Lender this Fourth Interim Order shall remain in full force and effect and (i) the Administrative Claim granted to and conferred upon Lender shall continue in full force and effect and shall maintain the priority as provided in this Fourth Interim Order until

the Fourth Interim Loan shall have been paid and satisfied in full and shall remain binding on Debtor, its estate, any Chapter 7 or 11 Trustee appointed in the Chapter 11 Case, and all interested parties; and (ii) this Court shall retain jurisdiction, notwithstanding the failure to approve the final order, for the purpose of enforcing this Fourth Interim Order and the Administrative Claim.

8.    Evidence of Liability. This Fourth Interim Order shall be sufficient and conclusive evidence of the liability of Debtor respecting advances made in accordance with this Fourth Interim Order and shall be sufficient and conclusive evidence of the validity and enforceability of the Fourth Interim Loan without any further action of Debtor or any other party.

9.    Compliance with Approved Budget. Debtor is strictly prohibited from using funds advanced except in accordance with this Fourth Interim Order and the Budget. Debtor shall be permitted to use the funds advanced under the Fourth Interim Loan solely to pay the expenses and costs set forth in the Budget, in an amount not to exceed those amounts set forth in the Budget.

10.    Binding Effect. The provisions of this Third Interim Order shall be binding upon and inure to the benefit of Debtor, any official committee or estate representative appointed in the Chapter 11 Case, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereafter appointed or elected for the estate of Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of Debtor or with respect to the property of the estate of any of Debtor. To the extent permitted by applicable law, this Fourth Interim Order, and the Court's conclusion that the Fourth Interim Loan is

allowed through the Administrative Claim, shall bind any trustee hereafter appointed for the estate of Debtor, whether in the Chapter 11 Case or in the event of the conversion of the Chapter 11 Case to a liquidation under chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this Third Interim Order.

11.    <u>Preservation of Rights</u>.  If the Chapter 11 Case is dismissed or converted, then neither the dismissal or conversion of the Chapter 11 Case shall affect the rights of the Lender under this Fourth Interim Order, and all such rights and remedies of the above-referenced parties shall remain in full force and effect as if the Chapter 11 Case had not been dismissed or converted.  If an order dismissing the Chapter 11 Case is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that the Fourth Interim Loan shall continue in full force as an administrative loan binding on Debtor, the estate of Debtor, any Chapter 7 or 11 Trustee appointed in the Chapter 11 Case, and all interested parties; and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing this Third Interim Order and the Administrative Claim.

12.    <u>Extension of Bankruptcy Code Section 1110 Period</u>.  To the extent the 60-day period set forth in Section 1110(a) (such period, the "<u>Section 1110 Period</u>") applies such that Aircraft Lessors have a right to any relief including, without limitation, to take possession of to any property subject to Section 1110(a) (the "<u>Aircraft Equipment</u>"), the Section 1110 Period is hereby extended for such property to the date that is 10 days after the Further Hearing (the "<u>Extended Section 1110 Period</u>"), provided, however, that in the event that the Debtor ceases operations or determines that it no longer requires the use of an aircraft, the Aircraft Lessors retain the right to immediately seek, upon notice and

hearing, relief as provided for under Section 1110(a). Notwithstanding anything in the Bankruptcy Code to the contrary, including the provision of Sections 363(e) and 365(d)(5) (to the extent applicable), except to the extent otherwise provided in this Order the Debtor shall accrue the principal amounts due to the Aircraft Lessors for rent of any Aircraft Equipment, but shall not be obligated to make, and the Aircraft Lessors shall not seek, any payments for rent due with respect to any Aircraft Equipment during the Extended Section 1110 Period. This Fourth Interim Order shall not be deemed to constitute an agreement by the Debtor under Section 1110(a), and nothing contained herein shall be construed as such an election or agreement. This Fourth Interim Order does not constitute an assumption by the Debtors of any lease, executory contract, or other agreement relating to the Aircraft Equipment under any section of the Bankruptcy Code, and nothing contained herein shall be construed to constitute such an assumption. The parties have agreed to extend this period, and the Court hereby approves the extension under section 1110(b).

13.  Immediate Effect; Protection of Order. The provisions of this Fourth Interim Order shall be effective immediately.

14.  Further Hearing. The Court shall hold a further hearing on the DIP Financing on December 7, 2017, at 2:00 p.m. (the "Further Hearing") at the United States Bankruptcy Court for the Middle District of North Carolina, Courtroom 2, Third Floor, 101 S. Edgeworth St., Greensboro, NC 2740.

15.  Further Notice. The Debtor shall serve copies of this Fourth Interim Order on the Bankruptcy Administrator, the Committee, and all parties that have filed a notice of appearance in this case.

END OF DOCUMENT

# DYNAMIC INTERNATIONAL AIRWAYS-DIP - REVENUE PROJECTIONS

| Time Period | 11/4/17 | 11/11/17 | 11/18/17 | 11/25/17 | 12/2/17 | 12/9/17 | 12/16/17 | 12/23/17 | 12/30/17 |
|---|---|---|---|---|---|---|---|---|---|
| **MIA-HVA-MIA (Gulfstream Charter)** | 192,500 | 192,500 | 192,500 | 192,500 | 192,500 | 192,500 | 192,500 | 192,500 | 192,500 |
| Trips | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 |
| Flight Hours | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 |
| Cycles | 14.00 | 14.00 | 14.00 | 14.00 | 14.00 | 14.00 | 14.00 | 14.00 | 14.00 |
| Rate/Trip | 27,500 | 27,500 | 27,500 | 27,500 | 27,500 | 27,500 | 27,500 | 27,500 | 27,500 |
| **MIA-SNU-MIA (Gulfstream Charter)** | 137,500 | 137,500 | 137,500 | 137,500 | 137,500 | 137,500 | 137,500 | 137,500 | 137,500 |
| Trips | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 |
| Hours | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 |
| Cycles | 12.00 | 12.00 | 12.00 | 12.00 | 12.00 | 12.00 | 12.00 | 12.00 | 12.00 |
| Rate/Trip | 27,500 | 27,500 | 27,500 | 27,500 | 27,500 | 27,500 | 27,500 | 27,500 | 27,500 |
| **Additional ACMI - Starting week 11/18/17** | | | 90,116 | 180,233 | 180,233 | 180,233 | 180,233 | 180,233 | 180,233 |
| Hours | | | 29 | 58 | 58 | 58 | 58 | 58 | 58 |
| Cycles | | | 5.8 | 11.6 | 11.6 | 11.6 | 11.6 | 11.6 | 11.6 |
| Rate/ Hour | | | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 |
| Deposit | | | 270,349 | | | | | | |
| **Additional ACMI - Starting week 11/25/17** | | | | 144,186 | 180,233 | 180,233 | 180,233 | 180,233 | 257,733 |
| **Hours** | | | | 47 | 58 | 58 | 58 | 58 | 83 |
| **Cycles** | | | | 6.2 | 7.8 | 7.8 | 7.8 | 7.8 | 11.1 |
| **Rate/ Hour** | | | | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 |
| **Deposit** | | | | 324,419 | | | | | |
| **Additional ACMI - Starting 2019** | | | | | | | | | |
| **Hours** | | | | | | | | | |
| **Cycles** | | | | | | | | | |
| **Rate/ Hour** | | | | | | | | | |
| **Deposit** | | | | | | | | | |
| | | | | | | | | | |
| **Total ACMI / Charter Revenue** | 330,000 | 330,000 | 420,116 | 654,419 | 690,465 | 690,465 | 690,465 | 690,465 | 767,965 |
| Hours | 24 | 24 | 53 | 129 | 140 | 140 | 140 | 140 | 165 |
| Cycles | 26 | 26 | 32 | 44 | 45 | 45 | 45 | 45 | 49 |
| Rate / Hour | 13,750 | 13,750 | 7,916 | 5,087 | 4,922 | 4,922 | 4,922 | 4,922 | 4,646 |
| Deposits | - | - | 270,349 | 324,419 | - | - | - | - | - |



EXHIBIT

tabbies

1

# DYNAMIC INTERNATIONAL AIRW/

| Time Period | Jan-18 | Feb-18 | Mar-18 | Apr-18 | May-18 |
|---|---|---|---|---|---|
| **MIA-HVA-MIA (Gulfstream Charter)** | 852,500 | 770,000 | 852,500 | 825,000 | 852,500 |
| Trips | 31 | 28 | 31 | 30 | 31 |
| Flight Hours | 62 | 56 | 62 | 60 | 62 |
| Cycles | 14.00 | 14.00 | 14.00 | 14.00 | 14.00 |
| Rate/Trip | 27,500 | 27,500 | 27,500 | 27,500 | 27,500 |
| **MIA-SNU-MIA (Gulfstream Charter)** | 605,000 | 605,000 | 605,000 | 605,000 | 605,000 |
| Trips | 22 | 22 | 22 | 22 | 22 |
| Hours | 44 | 44 | 44 | 44 | 44 |
| Cycles | 12.00 | 12.00 | 12.00 | 12.00 | 12.00 |
| Rate/Trip | 27,500 | 27,500 | 27,500 | 27,500 | 27,500 |
| **Additional ACMI - Starting week 11/18/17** | 1,085,000 | 1,240,000 | 1,550,000 | 1,550,000 | 1,550,000 |
| Hours | 350 | 400 | 500 | 500 | 500 |
| Cycles | 70.0 | 80.0 | 100.0 | 100.0 | 100.0 |
| Rate/ Hour | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 |
| Deposit | | | | | |
| **Additional ACMI - Starting week 11/25/17** | 1,085,000 | 1,240,000 | 1,550,000 | 1,550,000 | 1,550,000 |
| **Hours** | 350 | 400 | 500 | 500 | 500 |
| **Cycles** | 46.7 | 53.3 | 66.7 | 66.7 | 66.7 |
| **Rate/ Hour** | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 |
| **Deposit** | | | | | |
| **Additional ACMI - Starting 2019** | | | | | |
| **Hours** | | | | | |
| **Cycles** | | | | | |
| **Rate/ Hour** | | | | | |
| **Deposit** | | | | | |

| Total ACMI / Charter Revenue | 3,627,500 | 3,855,000 | 4,557,500 | 4,530,000 | 4,557,500 |
|---|---|---|---|---|---|
| Hours | 806 | 900 | 1,106 | 1,104 | 1,106 |
| Cycles | 143 | 159 | 193 | 193 | 193 |
| Rate / Hour | 4,501 | 4,283 | 4,121 | 4,103 | 4,121 |
| Deposits | - | - | - | - | - |

# DYNAMIC INTERNATIONAL AIRWAYS-DIP – STATEMENT OF CASH FLOWS

| Time Period | WEEK 11/4/17 | 11/11/17 | 11/18/17 | 11/25/17 | 12/2/17 | 12/9/17 | 12/16/17 | 12/23/17 | 12/30/17 | MONTH Jan-18 | Feb-18 | Mar-18 | Apr-18 | May-18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Inflows from Operations** | | | | | | | | | | | | | | |
| ACMI / Charter | 330,000 | 330,000 | 420,116 | 654,419 | 690,465 | 690,465 | 690,465 | 690,465 | 767,965 | 3,627,500 | 3,855,000 | 4,557,500 | 4,530,000 | 4,557,500 |
| Ticket Sales | | | 270,349 | 324,419 | | | | | | | | | | |
| Deposits | | | | | | | | | | | | | | |
| **Total Cash Inflows from Operations** | 330,000 | 330,000 | 690,465 | 978,837 | 690,465 | 690,465 | 690,465 | 690,465 | 767,965 | 3,627,500 | 3,855,000 | 4,557,500 | 4,530,000 | 4,557,500 |
| **Cash Outflows from Operations** | | | | | | | | | | | | | | |
| Aircraft Rents | | | | | | | | | | 432,120 | 481,000 | 608,300 | 607,200 | 608,300 |
| Aircraft Reserves | | | | | | | | | | 492,535 | 538,963 | 588,120 | 587,080 | 588,120 |
| Crew | 183,964 | 183,964 | 183,964 | 183,964 | 183,964 | 183,964 | 183,964 | 183,964 | 183,964 | 393,525 | 393,525 | 620,178 | 620,178 | 620,178 |
| Fuel | 102,767 | 102,767 | 170,381 | 138,048 | 138,048 | 138,048 | 138,048 | 138,048 | 138,048 | 625,692 | 593,792 | 393,525 | 386,100 | 393,525 |
| Ground Operations & Fees[1] | | | 89,100 | 89,100 | 89,100 | 89,100 | 89,100 | 89,100 | 89,100 | 593,792 | 593,792 | 593,792 | 615,058 | 625,692 |
| Hotel and Travel Expense | 141,767 | 78,000 | 78,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| Sales and Marketing | 2,326 | 2,326 | 2,326 | 2,326 | 2,326 | 2,326 | 2,326 | 2,326 | 2,326 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Maintenance | | 90,120 | | 123,380 | 175,293 | 187,893 | 111,227 | 111,227 | 127,657 | 543,495 | 588,885 | 588,885 | 687,025 | 831,945 |
| Flight Operations Expenses | 75,911 | 6,926 | 40,649 | 40,649 | 72,911 | 33,033 | 86,629 | 86,629 | 10,945 | 52,392 | 55,392 | 55,392 | 52,392 | 55,392 |
| Wages & Professional Fees - Admin, Ops & Maintenance | 227,389 | 227,389 | 227,389 | 227,389 | 227,389 | 227,389 | 227,389 | 227,389 | 227,389 | 433,444 | 425,944 | 279,355 | 331,021 | 331,021 |
| General Facilities | 11,000 | 500 | 500 | 11,000 | 11,000 | 500 | 500 | 500 | 500 | 500 | 500 | 12,150 | 12,150 | 12,150 |
| Insurance | 46,538 | 46,538 | 46,538 | 46,538 | 47,263 | 46,538 | 46,538 | 46,538 | 46,538 | 46,538 | 177,123 | 256,563 | 256,563 | 177,123 |
| **Total Cash Outflows from Operations** | (716,942) | (937,302) | (497,557) | (916,892) | (600,941) | (973,790) | (462,104) | (900,720) | (480,113) | (3,302,315) | (3,304,500) | (4,105,780) | (4,215,368) | (4,303,446) |
| **Net Cash Flow from Operations** | (386,942) | (607,302) | 192,908 | 61,945 | 89,524 | (283,325) | 228,361 | (210,255) | 287,852 | 325,185 | 550,500 | 451,720 | 314,632 | 254,054 |
| **Cash Flows from Investing Activities** | | | | | | | | | | | | | | |
| New Hire Crew Training | (330,000) | | | | (57,000) | (57,000) | (57,000) | (57,000) | (57,000) | (263,433) | (263,433) | | | |
| **Net Cash Flow from Investing Activities** | (330,000) | | | | (57,000) | (57,000) | (57,000) | (57,000) | (57,000) | (263,433) | (263,433) | | | |
| **Cash Flows from Financing Activities** | | | | | | | | | | | | | | |
| DIP Loan Invested | 1,500,000 | | | | | 600,000 | | 400,000 | | | | | | |
| **Net Cash Flow from Financing Activities** | 1,500,000 | | | | | 600,000 | | 400,000 | | | | | | |
| **NET CASH FLOW BEFORE REORGANIZTION & PLAN PAYMENTS** | 783,058 | (607,302) | 192,908 | 61,945 | 32,524 | 259,675 | 171,361 | 132,745 | 230,852 | 61,751 | 287,067 | 451,720 | 314,632 | 254,054 |
| **Cash Flows from Reorganization & Plan Payments** | | | | | | | | | | | | | | |
| Additional Contributed Capital | | | | | | | | 400,000 | | | 2,000,000 | | | |
| US Bankruptcy Administrator | (13,000) | | | | | | | | | | (13,000) | | | (13,000) |
| Debtor Professional Fees | (19,500) | (185,685) | | (15,600) | (117,016) | (145,630) | | | | (31,200) | (448,331) | (31,200) | (215,550) | |
| Committee Professional Fees | | | | | | (221,063) | | (15,600) | | | (301,063) | | (150,531) | |
| DIP Loan Repayment | | | | | | | | | | | (2,000,000) | | | |
| Accrued Aircraft Rent Payments | | | | | | | | | | | | | | |
| Accrued Aircraft Reserve Payments | | | | | | | | | | | | | | |
| IRS Payment[2] | | | | | | | | | | | | | | |
| Convenience Class Payments | | | | | | | | | | | | | | |
| Unsecured Class Payments | | | | | | | | | | | | | | |
| **Total Cash Flow from Reorganization and Plan Payments** | (32,500) | (185,685) | | (15,600) | (117,016) | (366,693) | | 384,400 | | (31,200) | (762,394) | (30,200) | (366,082) | (13,000) |
| **NET INCREASE/(DECREASE) IN CASH** | 750,558 | (792,987) | 192,908 | 46,345 | (84,492) | (107,018) | 171,301 | 517,145 | 230,852 | 30,551 | (475,326) | 421,520 | (51,250) | 241,054 |
| Beginning Cash[3] | 57,309 | 807,867 | 14,880 | 207,788 | 254,133 | 169,641 | 62,623 | 233,925 | 751,069 | 981,921 | 1,012,473 | 537,147 | 958,667 | 907,417 |
| ENDING CASH AFTER ADMIN | 807,867 | 14,880 | 207,788 | 254,133 | 169,641 | 62,623 | 233,925 | 751,069 | 981,921 | 1,012,473 | 537,147 | 958,667 | 907,417 | 1,148,471 |

1. This includes 293,000 of deposit required to operate at the Miami Airport that will reduce costs by approximately $2500 / flight.
2. IRS payments are based on Dynamic estimates of IRS liability calculated 10/29/17. The interest rate through the payment period is assumed to be 4.00%. This calculation is for the purposes of this forecast only, will be modified to reflect actual rate and liability amount agreed upon.
3. Opening cash for week ending 11/4/17 is estimated based on actuals through 10/27/17.

Note: both costs and revenues have been adjusted for 2% inflation starting in 2019.

UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DYNAMIC INTERNATIONAL | ) | Case No. 17-10814 |
| AIRWAYS, LLC | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

CERTIFICATE OF SERVICE

I hereby certify that the foregoing **EMERGENCY MOTION SEEKING FOURTH INTERIM ORDER: (1) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING, AND (2) GRANTING LENDER AN ALLOWED SUPERPRIORITY ADMINISTRATIVE EXPENSE** was served upon the following parties via this Court's ECF noticing service or by mailing a copy of same by first-class postage prepaid mail addressed as follows:

Via ECF:

William P. Miller
U.S. Bankruptcy Administrator
101 South Edgeworth Street
Greensboro, NC 27401

Andrea Horowitz Handel
US Dept. of Justice
Civil Division
PO Box 875
Ben Franklin Station
Washington, DC 20044

Scott Griffin
Griffin Hamersky LLP
420 Lexington Avenue, Suite 400
New York, NY 10170

William E. Burton
Smith Moore Leatherwood LLP
300 N. Greene Street, Suite 1400
Greensboro, NC 27401

Rich H. Silerberg
Dorsey & Whitney, LLP
51 West 52nd Street
New York, NY 10019

Christine L. Myatt
Brian R. Anderson
Nexen Pruet, PLLC
PO Box 3463
Greensboro, NC 27402

Holmes P. Harden
Williams Mullen
PO Box 1000
Raleigh, NC 27602

Clint S. Morse
Brooks Pierce McLendon Humphrey & Leonard, LLP
PO Box 26000
Greensboro, NC 27420

Stephen C. Stapleton
Cowles & Thompson, PC
901 Main Street, Suite 3900
Dallas, TX 75202

D. Erik Albright
Smith Moore Leatherwood LLP
300 N. Greene Street, Suite 1400
Greensboro, NC 27401

Jennifer P. Himes
Tuggle Duggins PA
PO Box 2888
Greensboro, NC 27402

Todd M. Goren
Morrison & Foerster, LLP
250 West 55th Street
New York, NY 10019-9601

Amos U. Priester, IV
Smith Anderson Blount Dorsett, Mitchell & Jernigan, LLP
PO Box 2611
Raleigh, NC 27602-2611

Charles A. Stanziale, Jr.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

Sharon L. Levine
Saul Ewing LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 07012-5426

Jill C. Walters
Poyner Spruill LLP
301 Fayetteville Street, Suite 1900
Raleigh, NC 27601

John Northen
Northen Blue
PO Box 2208
Chapel Hill, NC 27517

Daniel M. Eliades
Joseph M. Cerra
LeClairRyan, PC
One Riverfront Plaza
1037 Raymond Blvd., 16th Floor
Newark, NJ 07102

Todd Allen Jones
Anderson Jones, PLLC
PO Box 20248
Raleigh, NC 27619

Ashley Rusher
Blanco Tackabery & Matamoros, PA
PO Drawer 25008
Winston-Salem, NC 27114-5008

Terri Gardner
Nelson Mullins Riley & Scarborough LLP
4140 Parklake Avenue
GlenLake One, Suite 200
Raleigh, NC 27612

Joshua Bennett
Erik Harvey
Bennett & Guthrie, PLLC
1560 Westbrook Plaza Dr.
Winston-Salem, NC 27103

Joseph M. Cerra, Esq.
LeClair Ryan, PC
1037 Raymond Blvd., 16th Floor
Newark, NC 07102

This the 30th day of October, 2017.

_____
Daniel C. Bruton