UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE: )
)
DYNAMIC INTERNATIONAL ) Case No. 17-10814
AIRWAYS, LLC ) Chapter 11
)
Debtor. )
_____)

**DISCLOSURE STATEMENT TO ACCOMPANY DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION**

4848-9862-1523, v. 5

TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................... 4
II. INFORMATION REGARDING THE PLAN AND THIS DISCLOSURE STATEMENT ..... 5
    1.      What is Chapter 11? ................................................................................... 5
    2.      What is the objective of a Chapter 11 bankruptcy case? ........................... 5
    3.      What is a plan of reorganization? ............................................................. 5
    4.      What happens after a plan is filed? .......................................................... 5
    5.      What is a disclosure statement and its purpose? ...................................... 6
    6.      What will happen after the Bankruptcy Court approves this Disclosure Statement?
          6
    7.      Who may vote to accept or reject a plan? ................................................. 6
    8.      Do I have an Allowed Claim? .................................................................... 6
    9.      Is my Claim or Equity Security Impaired? ................................................ 7
    10.    How generally is a plan approved? ........................................................... 7
    11.    What is the general construct of Debtor's Plan? ........................................ 8
    12.    Will Reorganized Debtor be able to meet the financial terms of the Plan? ........... 8
    13.    What happens at the Confirmation Hearing? ............................................. 8
    14.    What is the effect of Plan Confirmation? .................................................. 8
    15.    Has the Securities Exchange Commission reviewed and approved this Disclosure
    Statement? ............................................................................................................ 8
    16.    Can I rely upon the statements and financial information contained in this
    Disclosure Statement? ......................................................................................... 9
    17.    Can I rely upon the Disclosure Statement for other purposes? ............................ 9
    18.    Who provided the information contained in this Disclosure Statement? ............ 10
    19.    Should I consult with my own financial and legal advisors? ............................. 10
    20.    I have heard statements from outside sources regarding the Plan.  Can I rely on
    these statements? ............................................................................................... 10
    21.    What if there is an inconsistency between this Disclosure Statement and the Plan?
          10
III. GENERAL OVERVIEW OF THE PLAN ........................................................... 10
    A.     Classification of Claims. ......................................................................... 12
    B.     Non-Classified Claims. ........................................................................... 14
        1.    Allowed Administrative Claims. ....................................................... 14
        2.    Allowed Priority Tax Claims. ........................................................... 16
    C.     Treatment of Classified Claims. ............................................................. 16
        1.    Class 1 – Secured Claims. ................................................................ 16
        2.    Class 2 – U.S. Department of Agriculture Secured Claim ................ 16
        3.    Class 3 – Priority Unsecured Claims. ............................................... 17
        4.    Class 4 – Convenience Claims. ........................................................ 17
        5.    Class 5 – General Unsecured Claims. ............................................... 17
        6.    Class 6 – Governmental Unit Residual Claims. ................................ 18
        7.    Class 7– Equity Securities.. .............................................................. 18
IV. DISCLAIMER ................................................................................................... 18
V. SUMMARY OF Debtor's business, AND KEY EVENTS LEADING TO AND OF THE
CHAPTER 11 CASE .............................................................................................. 19
    1.      Significant Early Motions in the Main Case. ............................................ 27
V. ADDITIONAL PLAN PROVISIONS .................................................................. 29
    A.     Plan Implementation Occurring on the Effective Date. ............................ 29
    B.     Executory Contracts and Unexpired Leases. ........................................... 29
        1.    Executory Contracts. ........................................................................ 29
        2.    Approval of Assumption or Rejection. .............................................. 30
        3.    Cure of Defaults. .............................................................................. 30
        4.    Objection to Cure Amounts. ............................................................. 31
        5.    Confirmation Order. .......................................................................... 31

i

6.      Bar Date. ................................................................................................ 31
C.    Manner of Distribution of Property Under the Plan. .................................... 31
1.      Distribution. ......................................................................................... 31
2.      Reserves.. ............................................................................................. 32
3.      Statements.. .......................................................................................... 32
4.      Further Authorization ......................................................................... 32
D.    Conditions Precedent to Confirmation and the Effective Date. ................... 32
E.    Objections to Claims or Equity Securities. ................................................. 33
1. Filing of Objections to Claims. ............................................................. 33
2.      Resolution of Objections After Effective Date. ................................ 33
3.      Distributions and Disputed Claims Reserve.. .................................... 34
4.      Late-Filed Claims. .............................................................................. 34
F.     Miscellaneous Plan Provisions. ................................................................... 34
VII. POST-EFFECTIVE DATE OPERATIONS ....................................................... 40
VIII. RETENTION OF JURISDICTION ................................................................... 44
IX. LIMITATIONS AND RISK FACTORS ............................................................. 46
X. FEDERAL INCOME TAX CONSEQUENCE ..................................................... 49
XI. CONFIRMATION OF THE PLAN ...................................................................... 50
A.    Confirmation of the Plan. ............................................................................. 50
B.    Objections to Confirmation of the Plan. ...................................................... 50
C.    The Best Interest Test and Feasibility of the Plan. ...................................... 51
2.      Liquidation Analysis. ......................................................................... 51
3.      Feasibility. ........................................................................................... 52
4.      Confirmation of the Plan Without Acceptance By All Impaired Classes:   the "Cramdown" Alternative. .............................................................. 53
5.      Accepting Impaired Class. ................................................................. 54
XII. ALTERNATIVES TO THE PLAN ...................................................................... 54
XIII. PREFERENCE AND OTHER AVOIDANCE ACTIONS ................................. 55
XIV. RECOMMENDATION AND CONCLUSION. ................................................. 57

ii

**APPENDIX**

EXHIBIT "1":  DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION

EXHIBIT "2":  LIQUIDATION ANALYSIS

EXHIBIT "3": PLAN FINANCIAL PROJECTIONS

4848-9862-1523, v. 5

# I.
## INTRODUCTION

On July 19, 2017 (the "Petition Date"), Dynamic International Airlines, LLC ("Debtor") filed its voluntary petition under title 11, chapter 11 of the United States Code (the "Bankruptcy Code")[1] with the United States Bankruptcy Court for the Middle District of North Carolina (the "Bankruptcy Court") to commence the above-captioned case (the "Chapter 11 Case").

Debtor has prepared this Disclosure Statement in connection with the solicitation of votes on *Debtor's Third Amended Plan of Reorganization* (the "Plan") filed December 14, 2017, proposed by Debtor to treat the Claims of Creditors and Equity Securities in the Chapter 11 Case.

**CAPITALIZED TERMS USED BUT NOT DEFINED IN THIS DISCLOSURE STATEMENT HAVE THE MEANINGS ASCRIBED TO SUCH TERMS IN THE PLAN. IN THE EVENT OF A CONFLICT OR DIFFERENCE BETWEEN THE DEFINITIONS USED IN THIS DISCLOSURE STATEMENT AND IN THE PLAN, THE DEFINITIONS CONTAINED IN THE PLAN SHALL CONTROL.**

The Exhibits to this Disclosure Statement included in the Appendix are incorporated into, and are a part of, this Disclosure Statement.  The Plan is attached hereto as **Exhibit "1."**  Any interested party desiring further information should contact:

Garman Turner Gordon LLP
Gerald M. Gordon, Esq.
Teresa Pilatowicz, Esq.
650 White Drive, Ste. 100
Las Vegas, Nevada 89119
Telephone: (725) 777-3000
Email: ggordon@gtg.legal
Email: tpilatowicz@gtg.legal

Bell, Davis & Pitt, P.A.
Walter W. Pitt, Jr., Esq.
100 N Cherry Street
Winston Salem, North Carolina 27101
Telephone: (336) 722-3700
Email: wpitt@belldavispitt.com

---

[1] All references to "Chapter" and "Section" hereinafter shall be to the Bankruptcy Code; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local Rules of  Practice for the United States Bankruptcy Court, Middle District of North Carolina.

4848-9862-1523, v. 5

Interested parties may also obtain further information from the Bankruptcy Court at the following website: http://www.ncmb.uscourts.gov. Each Holder of a Claim entitled to vote on the Plan should read this Disclosure Statement, the Exhibits hereto including the Plan, and the instructions accompanying the Ballots in their entirety before voting on the Plan. These documents contain important information concerning the classification of Claims and Equity Securities for voting purposes and the tabulation of votes.

## II.
## INFORMATION REGARDING THE PLAN AND THIS DISCLOSURE STATEMENT

The following are answers to common questions about a Chapter 11 reorganization:

**1. What is Chapter 11?**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor is authorized to reorganize its business for the benefit of itself, its creditors, and equity interest holders. The commencement of a Chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the filing date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor-in-possession."

**2. What is the objective of a Chapter 11 bankruptcy case?**

The objective of a Chapter 11 case is the confirmation (*i.e.* approval by the Bankruptcy Court) of a plan of reorganization. Here, Debtor commenced its Chapter 11 Case in order to complete a reorganization of its liabilities through a plan of reorganization, with a goal of providing the best prospects for a distribution to the Holders of Allowed Claims.

**3. What is a plan of reorganization?**

A plan describes in detail (and in language appropriate for a legal contract) the means for satisfying claims against, and equity interests in, a debtor.

**4. What happens after a plan is filed?**

After a plan has been filed, the holders of claims and equity interests that are impaired (as defined in Section 1124 of the Bankruptcy Code) and receiving some cash and/or property on account of such claims or equity interests are permitted to vote to accept or reject the plan.

5

**5.  What is a disclosure statement and its purpose?**

Before a debtor or other plan proponent can solicit acceptances of a plan, Section 1125 of the Bankruptcy Code requires the debtor or other plan proponent to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable those parties entitled to vote on the plan to make an informed voting decision about whether to accept or reject the plan.

The purpose of this Disclosure Statement is to provide sufficient information about the debtor and the plan to enable holders of impaired claims to make an informed voting decision about whether to accept or reject the plan.

**6.  What will happen after the Bankruptcy Court approves this Disclosure Statement?**

This Disclosure Statement will be used to solicit acceptances of the Plan only after the Bankruptcy Court has found that this Disclosure Statement provides adequate information in accordance with Section 1125 of the Bankruptcy Code and has entered an order approving this Disclosure Statement.  Approval of the Disclosure Statement by the Bankruptcy Court is not an opinion or ruling on the merits of the Plan and it does not mean that the Plan has been or will be approved by the Bankruptcy Court.

**7.  Who may vote to accept or reject a plan?**

A claim is defined by the Bankruptcy Code to include a right to payment from a debtor. In order to vote on the Plan, a Creditor must have an Allowed Claim.  The solicitation of votes on the Plan will be sought only from Holders of Allowed Claims whose Claims are Impaired and who will receive property or rights under the Plan.  As explained further below, to be entitled to vote, a Person must be a Holder of a Claim that is both an Allowed Claim and Impaired.

**8.  Do I have an Allowed Claim?**

You have an Allowed Claim if: (i) you or your representative timely files a proof of Claim and no objection has been filed to your Claim within the time period set for the filing of such objections; (ii) you or your representative timely files a proof of Claim and an objection is filed to your Claim upon which the Bankruptcy Court has ruled and allowed your Claim; (iii) your Claim is listed by the Debtor in its Schedules or any amendments thereto (which are on file

6

with the Bankruptcy Court as a public record) as liquidated in amount and undisputed and no objection has been filed to your Claim; or (iv) your Claim is listed by the Debtor in its Schedules as liquidated in amount and undisputed and an objection was filed to your Claim upon which the Bankruptcy Court has ruled to allow your Claim.   Under the Plan, the deadline for filing objections to Claims is thirty (30) calendar days following the Effective Date.  If your Claim is not an Allowed Claim, it is a Disputed Claim and you will *not* be entitled to vote on the Plan unless the Bankruptcy Court temporarily or provisionally allows your Claim for voting purposes pursuant to Bankruptcy Rule 3018.  If you are uncertain as to the status of your Claim or if you have a dispute with Debtor, you should check the Bankruptcy Court record carefully, including Debtor's Schedules, and seek appropriate legal advice.  Neither Debtor nor its professionals can advise you about such matters.

**9.   Is my Claim or Equity Security Impaired?**

Impaired Claims include those whose legal, equitable, or contractual rights are altered by the Plan, even if the alteration is beneficial to the Creditor, or if the full amount of the Allowed Claim will not be paid under the Plan.  Holders of Claims that are not Impaired under the Plan will be deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code, and Debtor need not solicit acceptance of the Plan by Holders of such Unimpaired Claims. Holders of Claims that are to receive nothing under the Plan will be deemed to have voted to reject the Plan pursuant to Section 1126(g) of the Bankruptcy Code, and Debtor need not solicit votes from such Holders.

Classes 1 and 3 are Unimpaired and deemed to accept the Plan, and therefore, will not vote on the Plan.

Classes 2, 4, 5 and 6 are Impaired, and therefore, will vote on the Plan.

Class 7 will not receive anything under the Plan.  Class 7 is thus Impaired and deemed to reject the Plan, and therefore, will not vote on the Plan.

**10. How generally is a plan approved?**

In order for a plan to be confirmed, it must be accepted by at least one impaired class of claims, excluding the affirmative votes of any insiders within that class.  A class of claims is

7

deemed to have accepted the plan if and when allowed votes representing at least two-thirds in amount and a majority in number of the claims of the class actually voting cast votes in favor of the plan.

**11. What is the general construct of Debtor's Plan?**

The primary objective of the Plan is to maximize returns to those Creditors entitled to recoveries from the Estate. Debtor desires to achieve this objective through reorganizing its business operations, settling its governmental obligations, settling alleged claims against the Released Parties, and obtaining exit financing to assist in the payment of Allowed Claims.

**12. Will Reorganized Debtor be able to meet the financial terms of the Plan?**

If the Plan is confirmed, Debtor will continue operations and, together with the proposed settlement with the Released Parties and the exit financing that provides, in part, the funding of the Plan, will ensure that Reorganized Debtor can meet the financial terms of the Plan.

**13. What happens at the Confirmation Hearing?**

At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the requirements of the Bankruptcy Code.

**14. What is the effect of Plan Confirmation?**

Confirmation of a plan of reorganization by the bankruptcy court makes the plan binding upon Debtor, any issuer of securities under the Plan, any person acquiring property under the Plan, and *every Creditor of Debtor*, regardless of whether such creditor receives or retains any property under the Plan. Subject to certain limited exceptions, and other than as provided in the Plan itself or the Confirmation Order, the Confirmation Order discharges Debtor from any debt that arose prior to the date of confirmation of the Plan and substitutes the obligations specified under the Plan.

**15. Has the Securities Exchange Commission reviewed and approved this Disclosure Statement?**

This Disclosure Statement has been prepared in accordance with Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016(b) and not necessarily in accordance with federal or state securities laws or other non-bankruptcy laws. This Disclosure Statement has not been

4848-9862-1523, v. 5

approved or disapproved by the United States Securities and Exchange Commission (the

"SEC"), nor has the SEC passed upon the accuracy or adequacy of the statements contained

herein.

**16.** **Can I rely upon the statements and financial information contained in this Disclosure**
   **Statement?**

   DEBTOR MAKES THE STATEMENTS AND PROVIDES THE FINANCIAL
INFORMATION CONTAINED HEREIN AS OF THE DATE HEREOF. UNLESS
OTHERWISE SPECIFIED, PERSONS REVIEWING THIS DISCLOSURE
STATEMENT SHOULD NOT INFER THAT THE FACTS SET FORTH HEREIN HAVE
NOT CHANGED SINCE THE DATE THIS DISCLOSURE STATEMENT WAS
INITIALLY PREPARED.

   DEBTOR'S MANAGEMENT HAS REVIEWED THE FINANCIAL
INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT. ALTHOUGH
DEBTOR HAS ENDEAVORED TO ENSURE THE ACCURACY OF THIS FINANCIAL
INFORMATION, THE FINANCIAL INFORMATION CONTAINED IN, OR
INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT HAS
NOT BEEN AUDITED, UNLESS OTHERWISE STATED HEREIN.

**17.** **Can I rely upon the Disclosure Statement for other purposes?**

   THE INFORMATION IN THIS DISCLOSURE STATEMENT IS INCLUDED
HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND
MAY *NOT* BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE
HOW TO VOTE ON THE PLAN. THIS DISCLOSURE STATEMENT THEREFORE
DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF
FACT OR LIABILITY, A STIPULATION, OR A WAIVER IN ANY PROCEEDING
OTHER THAN THE SOLICITATION OF ACCEPTANCES OF THE PLAN AND
CONFIRMATION OF THE PLAN. FOR ALL PURPOSES OTHER THAN THE
SOLICITATION OF ACCEPTANCES OF THE PLAN, THIS DISCLOSURE
STATEMENT SHOULD BE CONSTRUED AS A STATEMENT MADE IN

4848-9862-1523, v. 5

SETTLEMENT NEGOTIATIONS RELATED TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.

**18. <u>Who provided the information contained in this Disclosure Statement?</u>**

This Disclosure Statement was prepared by Debtor's management in conjunction with Debtor's bankruptcy counsel, the law firms of Garman Turner Gordon LLP and Bell, Davis & Pitt, P.A.

**19. <u>Should I consult with my own financial and legal advisors?</u>**

This Disclosure Statement does not constitute legal, business, financial, or tax advice. All persons desiring such advice or any other advice should consult with their own advisors.

**20. <u>I have heard statements from outside sources regarding the Plan. Can I rely on these statements?</u>**

Debtor has not authorized any representations about the Plan, itself, or the value of its assets other than those set forth in this Disclosure Statement. Holders of Claims proceed at their own risk to the extent that they rely on any information, representations, or inducements made or given about the Plan that differ from, or are inconsistent with, the information contained herein and in the Plan.

**21. <u>What if there is an inconsistency between this Disclosure Statement and the Plan?</u>**

This Disclosure Statement summarizes certain provisions of the Plan and certain other documents and financial information that are incorporated by reference herein (collectively, the "<u>Incorporated Documents</u>"). The summaries contained herein are qualified in their entirety by reference to the Incorporated Documents. In the event of any inconsistency or discrepancy between a description in this Disclosure Statement and the actual content of any of the Incorporated Documents, the Incorporated Documents shall govern for all purposes.

**III.**
**GENERAL OVERVIEW OF THE PLAN**

The Plan generally provides for the repayment of Claims against Debtor as follows: (1) Debtor will continue operations post-Effective Date to generate income to pay certain Allowed Claims; (2) Debtor is seeking approval of exit financing that will provide sufficient funds to pay

10

certain Allowed Claims; (3) Debtor is seeking approval of a settlement agreement with the DOJ regarding the claims of the Agencies (defined in the Plan to include Transportation Security Agency, U.S. Department of Agriculture, and U.S. Customs and Border Protection) (the "Class 2 and Class 6 Settlement Agreement"); and (4) Debtor is resolving any possible claims against the Released Parties (the "Settlement and Restructuring Agreement") as defined in the Plan to generally include (i) Kenneth Woolley; (ii) Paul Kraus; (iii) KMW (as defined in the Plan); (iv) Jet Midwest (as defined in the Plan), and (v) the Released Parties' current and former Affiliates, estates, heirs, managed accounts or funds, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals, in each case in their capacity as such.

As it relates to the settlement of claims, the Class 2 and Class 6 Settlement Agreement provides that (i) the Claim of the U.S. Department of Agriculture regarding the APHIS Claim shall be bifurcated between an Allowed Secured Claim in the amount of $150,000 being treated in Class 2 and the remainder as an Allowed General Unsecured Claim being treated in Class 5; (ii) the Agencies' Residual Governmental Unit Claims shall be treated in Class 6; and (iii) the Agencies' Governmental Unit Penalty Claims shall be included as Allowed General Unsecured Claims in Class 5. The Settlement and Restructuring Agreement provides for 100% of the Equity Securities of the Reorganized Debtor to be issued to Solitude as provided in Section 5.1.6 of the Plan and the Releases of the Released Parties as provided for in Section 9.6 of the Plan, on the Effective Date in exchange for: (a) the Exit Loan Lender entering into the Exit Loan and Exit Loan Documents and commencing funding as provided for therein;  (b) the Discharge of Woolley's Pre-Petition Date Claims without receiving a Distribution related thereto; (c) the treatment of the Woolley's Secured Claim as an Allowed General Unsecured Claim to be Discharged without a Distribution related thereto; (d) Solitude Strategies, LLC ("Solitude") exchanging all Claims related to the Solitude DIP Loans for the Equity Securities of Reorganized Debtor; (e) KMW consenting to the assumption of the KMW Leases in accordance with Article 6 of the Plan; and (f) Kraus and Jet Midwest agreeing to the Discharge of  all pre-Petition Date Claims without receiving a Distribution related thereto.

11

Through either the Exit Loan or continued operations, Debtor and/or Reorganized Debtor (as applicable) will provide for payments of (1) the Allowed Class 2 U.S. Department of Agriculture Secured Claim through payment on the 10th business day after the Effective Date; (2) the Allowed Class 3 Priority Unsecured Claims through payment on the Initial Distribution Date; (3) the Allowed Class 4 Convenience Claims through payment over six months commencing on the Initial Distribution Date; (4) the Allowed Class 5 General Unsecured Claims through pro rata distributions from the Class 5 Distribution Amount to be distributed to the Disbursing Agent on the Effective Date; and (5) the Allowed Class 6 Residual Governmental Unit Claims through payment of $800,000 on the 10th business day after the Effective Date.

The following is a general overview of the provisions of the Plan, which Plan treatment is discussed more fully herein and is qualified in its entirety by reference to the provisions of the Plan itself.

**A.    <u>Classification of Claims.</u>**

Section 1123 of the Bankruptcy Code provides that a plan of reorganization shall classify the claims of a debtor's creditors and equity interest holders.  In compliance therewith, the Plan divides Claims into various Classes and sets forth the treatment for each Class.  Debtor is also required under Section 1122 of the Bankruptcy Code to place a Claim into a particular Class only if such Claim is substantially similar to the other Claims in such Class.  Debtor believes that the Plan has classified all Claims in compliance with the provisions of Section 1122 of the Bankruptcy Code, but it is possible that a Holder of a Claim will challenge the Plan's classifications and that the Bankruptcy Court will find that different classifications are required in order for the Plan to be confirmed.  In such event, Debtor reserves the right, to the extent permitted by the Bankruptcy Code, to make reasonable modifications of the classifications under the Plan to permit Confirmation of the Plan and to use the Plan acceptances received in this solicitation for the purpose of obtaining the approval of the reconstituted Class or Classes of which the accepting Holders are ultimately deemed members.

The Plan's treatment of each classified Class of Claims is summarized in the following table:

12

4848-9862-1523, v. 5

| Class | Description | Summary of Treatment | Estimated Claim[2] |
|---|---|---|---|
| Class 1 | Secured Claims | Each Holder of a Secured Claim shall be left Unimpaired by Reorganized Debtor. | $0.00[3] |
| Class 2 | U.S. Department of Agriculture Secured Claim | In accordance with the Class 2 and Class 6 Settlement Agreement, the U.S. Department of Agriculture shall receive in full and complete satisfaction of its Allowed Secured Claim $150,000 in Cash of the First Business Date following the tenth day after the Effective Date. | $150,000 |
| Class 3 | Priority Unsecured Claims | Each Holder of an Allowed Priority Unsecured Claim shall be paid in full in Cash on the Initial Distribution Date. | $100,000 |
| Class 4 | Convenience Claims[4] | Each Holder of an Allowed Convenience Claim, shall be paid in six equal monthly installments, commencing on the Initial Distribution Date, the lesser of the Allowed amount of such Claim or $2,000. | $1,365,000[5] $430,000[6] |

[2] The *estimated* Claim amounts were compiled by combining the undisputed, liquidated, and non-contingent Claims included in Debtor's Schedules, as amended, and the proofs of Claim on file on or about December 11, 2017. Debtor may file objections to certain of the filed Proofs of Claim, as may other parties-in-interest. The allowance or disallowance of such Claims will alter the aggregate amount of Allowed Claims. *Nothing herein shall be deemed an acknowledgment of the amount or allowance of any asserted Claim; rather, Debtor hereby expressly reserves its right to object to any and all asserted or scheduled Claims.*

[3] This total amount assumes approval of the Settlement and Restructuring Agreement, and therefore, no amount is listed for Woolley's secured claim.

[4] As provided for in Section 1122(b) of the Bankruptcy Code, a General Unsecured Claim for which the Allowed amount of such General Unsecured Claim is less than or equal to $2000 or an Allowed General Unsecured Claim for which the Holder thereof makes the Convenience Class Election.

[5] This amount represents the total value of estimated Holders electing treatment under Class 4.

[6] This amount represents the total estimated pay-out when Creditors electing treatment as convenience claims are reduced to $2,000.

13

| Class 5 | General Unsecured Claims[7] | Each Holder of an Allowed General Unsecured Claim shall receive its pro rata share of the Class 5 Distribution Amount, $2,750,000 less all costs and expenses of the Committee professional fees and expenses and the fees and expenses of the Disbursing Agent, to be distributed to the Disbursing Agent. | $40,000,000 |
|---|---|---|---|
| Class 6 | Residual Governmental Unit Claims[8] | In accordance with the Class 2 and Class 6 Settlement Agreement, the Agencies shall receive in full and complete satisfaction of their Allowed Governmental Unit Residual Claims the sum of $800,000 in Cash in the first Business Day following the tenth day after the Effective Date. | $800.000[9] |
| Class 7 | Pre-Effective Date Equity Securities | The Equity Securities shall be cancelled and Holders of Class 7 Equity Securities shall not receive any distribution on account of such Equity Interests | N/A |

**B.    Non-Classified Claims.**

    **1.    Allowed Administrative Claims.**

        Pursuant to Section 1123(a)(1), Allowed Administrative Claims are not designated as a Class.  The Holders of such unclassified Claims shall be *paid in full* under the Plan consistent with the requirements of Section 1129(a)(9)(A) and are not entitled to vote on the Plan.  Pursuant to Section 331 of the Bankruptcy Code, Debtor's duly-retained professionals are able to seek the

---

[7] A Claim that is not secured by a Lien or other charge against or interest in property in which the Estate has an interest and is not (i) a Section 507(a)(2) or 507(a)(3) Claim, (ii) an Administrative Claim, (iii) a Priority Tax Claim, (iv) a Priority Unsecured Claim, or (v) a Residual Governmental Unit Claim. General Unsecured Claims shall also include all Claims arising under Section 502(g) of the Bankruptcy Code and Governmental Unit Penalty Claims. Pursuant to the Settlement and Restructuring Agreement the Woolley Secured Claim will be a General Unsecured Claim and the Claims of Woolley (including the Woolley Secured Claim), Kraus and Jet Midwest will be General Unsecured Claims and treated as provided for in Section 4.5.3. of this Plan.

[8] All pre-Petition Date Claims of Governmental Units which are neither Priority Tax Claims nor Governmental Unit Penalty Claims but are subject to the Class 2 and Class 6 Settlement Agreement.

[9] This amount represents the agreed amount to be paid for Residual Governmental Unit Claims.

14

allowance and payment of their incurred fees and costs and may do so prior to the Confirmation Hearing.

Each Allowed Administrative Claim shall be paid by Reorganized Debtor or the Disbursing Agent, as applicable, upon the latest of: (i) the Effective Date or as soon thereafter as is practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable, (iii) the fourteenth (14th) Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the Holder of such Claim and Reorganized Debtor shall agree upon. With respect to payment of the Allowed Professional Fees of the Committee, (i) the Debtor shall pay the fees approved prior to the Effective Date, and (ii) the Disbursing Agent shall pay the fees approved after the Effective Date.

Debtor anticipates that Garman Turner Gordon LLP ("GTG"), Debtor's bankruptcy counsel, will seek the final approval and payment of approximately $450,000 in fees and expenses on or around the Effective Date of the Plan.  Debtor further anticipates that Debtor's local counsel, Bell, Davis & Pitt, P.A. will seek the final approval of approximately $100,000 in fees, expenses on or around the Effective Date. In addition to Debtor's counsel fees, Debtor retained MJAC, LLC as financial advisor, and various special counsel and tax advisors. Debtor has been paying these fees as due, with interim approval, and does not anticipate significant balances due as of the Effective Date

The Unsecured Creditors Committee ("Committee") is expected to seek approval of the fees and expenses of its Professionals, including counsel, Saul Ewing and Poyner Spruill, in the total amount of $400,000, and fees and expenses for its financial advisor, Alix Partners, in the total amount of $200,000, for total Committee professional expenses of $600,000. These fees will ultimately be paid from the Class 5 Distribution Amount.

The foregoing are only estimates and may increase or decrease depending on the timing of the Plan's Effective Date and the number and extent of the contested matters arising in the Chapter 11 Case.  All requests for payment of Administrative Claims against Debtor and all final applications for allowance and disbursement of Professional Fees must be filed by the Administrative Claims Bar Date or the Holders thereof shall be forever barred from asserting

such Administrative Claims against Debtor and Reorganized Debtor.  All Professional Fees applications must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order, and all other orders governing payment of Professional Fees.  Unless otherwise ordered by the Bankruptcy Court, from and after the Effective Date, no Professional shall be required to file fee applications with the Bankruptcy Court and Reorganized Debtor may pay all Professionals in the ordinary course for fees and expenses incurred after the Effective Date.

**2.  Allowed Priority Tax Claims.**

Each Allowed Priority Tax Claim shall be paid in full in Cash by the Reorganized Debtor in equal monthly installments beginning the latest of:  (i) the Effective Date or as soon thereafter as is practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable, (iii) the fourteenth (14th) Business Day after such  Priority Tax Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the Holder of such Priority Tax Claim and Reorganized Debtor shall agree upon and on the same day of each successive month for a period ending not later than five (5) years after the Petition Date. Until the Allowed Priority Tax Claim is paid in full, the unpaid balance shall accrue statutory interest from the Effective Date fixed at the applicable federal or state statutory rate in effect with respect to such Priority Tax Claim on the Petition Date.  Debtor estimates Priority Tax Claims will total approximately $6,250,000.

**C.      Treatment of Classified Claims.**

**1.  Class 1 – Secured Claims.**  Each Allowed Secured Claim, if any, shall, in full and final satisfaction of such Claim, be paid in accordance with its terms, or if none, then in full in cash by Reorganized Debtor upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first Business Day following the fourteenth (14th) day after such Claim is Allowed; and (iv) such date as agreed upon by the Holder of such Claim and the Debtor, and after the Effective Date, by Reorganized Debtor.

**2.  Class 2 – U.S. Department of Agriculture Secured Claim**.  In accordance with the Class 2 and Class 6 Settlement Agreement, the U.S. Department of Agriculture shall receive in full and complete satisfaction of its Allowed Secured Claim One Hundred and Fifty Thousand

16

(150,000) Dollars in Cash of the First (1st) Business Date following the tenth (10th) day after the Effective Date.

**3.    Class 3 – Priority Unsecured Claims**.  Each Allowed Priority Unsecured Claim, if any, shall, in full and final satisfaction of such Claims, be paid in full in Cash on the latest of: (i) the Initial Distribution Date, or as soon thereafter as is practical; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as is practicable; (iii) the fourteenth (14th) Business Day after such Claim is Allowed, or as soon thereafter as is practicable; or (iv) such date as the Holder of such Claim and Debtor or Reorganized Debtor, as applicable, have agreed or shall agree, plus pre-Petition Date interest due under applicable bankruptcy or non-bankruptcy law and claimed in a Proof of Claim by such Holder to the extent approved by the Bankruptcy Court or as included in the Schedules by the Debtor.

**4.    Class 4 – Convenience Claims**.  Except to the extent that a Holder of an Allowed Convenience Claim agrees to less favorable treatment, each Holder of an Allowed Convenience Claim shall, in full and final satisfaction of such Allowed Convenience Claim be paid in 6 equal monthly installments commencing on the Initial Distribution Date, the lesser of (i) the Allowed amount of such Claim, or (ii) Two Thousand Dollars ($2,000).

**5.    Class 5 – General Unsecured Claims**.  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment:

1.    Each Holder of an Allowed General Unsecured Claim, shall, in full and final satisfaction of such Claim, be paid in Cash its Pro Rata share of the Class 5 Distribution Amount.

2.    Deducted from the Class 5 Distribution Amount shall be (i) all costs and expenses of the Disbursing Agent and the Disbursing Agent Account, and (ii) the Allowed Professional Fees of the Creditor Committee approved after the Effective Date.

3.    On the Effective Date, provided that the Settlement and Restructuring Agreement is approved and the Plan as confirmed is consistent with the relief provided for in the Settlement and Restructuring Agreement, the Claims of Woolley, Kraus and Jet Midwest and the KMW Cure payments shall be subordinated to the payment of all other Allowed General Unsecured Claims and unclassified Allowed Claims and shall not receive any Distribution under the Plan.

17

4848-9862-1523, v. 5

**6.** **Class 6 – Governmental Unit Residual Claims**.  In accordance with the Class 2 and Class 6 Settlement Agreement, the Agencies shall receive in full and complete satisfaction of their Allowed Governmental Unit Residual Claims the sum of Eight Hundred Thousand (800,000) Dollars in Cash in the first (1st) Business Day following the tenth (10th) day after the Effective Date.

**7.** **Class 7– Equity Securities**.  On the Effective Date the Equity Securities of the Debtor shall be cancelled and Holders of Class 7 Equity Securities shall not receive any Distribution on account of such Equity Interests.

## IV.
## DISCLAIMER

In formulating the Plan, Debtor relied on financial data derived from their books and records.  Debtor represents that as of the date of this Disclosure Statement, everything stated in this Disclosure Statement is true to the best of their knowledge and belief.  However, Debtor cannot and does not confirm the current accuracy of the statements appearing in this Disclosure Statement.

The discussion in this Disclosure Statement regarding Debtor may contain "forward-looking statements," as that term is used in the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than one of historical fact, and can be identified by the use of forward-looking terminology such as "may," "expect," "believe," "anticipate," "estimate," "likely," "probable," or "continue" or the negative thereof or other variations thereof or comparable terminology.  All such forward-looking statements are speculative, and there are risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements.  The liquidation analysis and distribution projections are estimates only, and the timing and amounts of actual distributions may be affected by many factors that cannot be predicted.  Therefore, any analysis, estimates, or recovery projections may not turn out to be accurate.

NOTHING IN THIS DISCLOSURE STATEMENT IS, OR SHALL BE DEEMED, AN ADMISSION OR STATEMENT AGAINST INTEREST BY DEBTOR FOR

18

PURPOSES OF ANY PENDING OR FUTURE LITIGATION MATTER OR PROCEEDING.

ALTHOUGH THE ATTORNEYS AND OTHER PROFESSIONALS EMPLOYED BY DEBTOR HAVE ASSISTED IN PREPARING THIS DISCLOSURE STATEMENT BASED UPON FACTUAL INFORMATION AND ASSUMPTIONS RESPECTING FINANCIAL, BUSINESS, AND ACCOUNTING DATA FOUND IN THE BOOKS AND RECORDS OF DEBTOR, THEY HAVE NOT INDEPENDENTLY VERIFIED SUCH INFORMATION AND MAKE NO REPRESENTATIONS AS TO THE ACCURACY THEREOF.  THE ATTORNEYS AND OTHER PROFESSIONALS EMPLOYED BY DEBTOR SHALL HAVE NO LIABILITY FOR INFORMATION CONTAINED IN, OR OMITTED FROM, THIS DISCLOSURE STATEMENT.

DEBTOR AND ITS PROFESSIONALS HAVE MADE A DILIGENT EFFORT TO IDENTIFY IN THIS DISCLOSURE STATEMENT AND IN THE PLAN PENDING LITIGATION CLAIMS, PROJECTED CAUSES OF ACTION, AND OBJECTIONS TO CLAIMS.  HOWEVER, NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM, PROJECTED CAUSE OF ACTION, OR OBJECTION TO A CLAIM IS OR IS NOT IDENTIFIED IN THIS DISCLOSURE STATEMENT OR THE PLAN.  DEBTOR AND/OR REORGANIZED DEBTOR MAY SEEK TO INVESTIGATE, FILE, AND PROSECUTE LITIGATION CLAIMS, PROJECTED CAUSES OF ACTION, AND OBJECTIONS TO CLAIMS AFTER THE CONFIRMATION DATE, EFFECTIVE DATE, OR SUBSTANTIAL CONSUMMATION DATE, IRRESPECTIVE OF WHETHER THIS DISCLOSURE STATEMENT OR THE PLAN IDENTIFIES SUCH CLAIMS, CAUSES OF ACTION, OR OBJECTIONS TO CLAIMS.

## V.
## SUMMARY OF DEBTOR'S BUSINESS, AND KEY EVENTS LEADING TO AND OF THE CHAPTER 11 CASE

A.    **Debtor's Operations**

1.   Debtor is a Virginia limited liability company formed in 2010 that operates in High Point,

19

North Carolina.  Debtor is owned by members Commercial Aircraft Services Holdings, LLC, NVLV Management LLC, and the F. Paul Ohadi Trust u/t/d 12/15/99.

2.  Debtor's ultimate principals are Paul Kraus, through his ownership of Commercial Aircraft Services Holdings, LLC, and Kenneth M. Woolley, through his ownership of NVLV Management, LLC. The business was acquired in 2013.

3.  Debtor owns and operates a full-service aviation enterprise, and is a licensed and certificated air carrier authorized by the U.S. Department of Transportation (the "<u>DOT</u>") and the U.S. Federal Aviation Administration (the "<u>FAA</u>").  Debtor holds a Part 121 Certificate (large aircraft) and operates as a supplemental air carrier, providing charter and contract commercial passenger air travel services to the general public.

4.  Debtor's fleet of aircraft includes the following six Boeing 767s (the "<u>Leased Aircraft</u>"), which complete international flights between United States cities and territories and foreign countries:

> **A.**  A Boeing 767-23B bearing serial number 23974 and U.S. Registration Mark N253MY leased from KMW Leasing IV, LLC;
>
> **B.**  A Boeing 767-246 bearing serial number 23213 and U.S. Registration Mark N767DA leased from KMW Leasing IX, LLC;
>
> **C.**  A Boeing 767-336 bearing serial number 24339 and U.S. Registration Mark N796MY leased from KMW Leasing N796JM, LLC;
>
> **D.**  A Boeing 767-336 bearing serial number 25443 and U.S. Registration Mark N254MY leased from KMW Leasing VII, LLC;
>
> **E.**  A Boeing 767-336 bearing serial number 24343 and U.S. Registration Mark N740JM leased from KMW Leasing X, LLC
>
> **F.**  A Boeing 767-300ER bearing serial number 24342 and U.S. Registration Mark N793JM leased from KMW Leasing X, LLC

5.  As of the Petition Date, Debtor operated scheduled charter service between the United States and locations such as China, Guyana, Saipan, and Ecuador.  Following the Petition Date, Debtor changed its operations to focus on what are generally known as ACMI (Aircraft Charter Maintenance Insurance) Contracts.  Since on or about October 5, 2017, Debtor has operated exclusively using ACMI contracts.

4848-9862-1523, v. 5

**B.     Debtor's Financial Condition as of the Petition Date.**

6.     Debtor's debt as of the Petition Date, other than vendor payables and arbitration awards and judgments, was primary limited to loan obligations owed to Kraus and Woolley. Debtor has no secured debt other that in favor of Woolley mentioned below.

7.     As of the Petition Date, Debtor had approximately $12.1 Million in obligations to Woolley for moneys loaned, secured by an assignment of Debtor's accounts receivable, perfected pursuant to a UCC-1 financing statement filed in Virginia in August 2016.

8.     Woolley is also the manager and member of KMW which were collectively owed more than $10,500,000 in unpaid rent for the Leased Aircraft accruing since December 2015.

**C.     The Events Necessitating the Bankruptcy Filing.**

9.     Debtor has consistently sought to retain high quality and experienced individuals to control the operations and finances of Debtor. However, over the past several years, Debtor has encountered significant challenges in finding and retaining qualified employees.

10.     For example, since 2013, Debtor has had three chief executive officers, four chief operating officers, and three chief financial officers.  While such actions have not impacted the ultimate financial stability or safety of Debtor's operations, it has led to significant cash losses. These management changes also resulted in different accounting and operations tracking systems which has caused some confusion and some items to be overlooked and not properly handled.

11.     Despite these losses and changes, Debtor's principals have remained committed to funding Debtor and pursuing the Plan so that operations can continue, employees can retain their jobs, and creditors can be paid.

12.     Immediately prior to the Petition Date, Debtor retained MJAC L.L.C. d/b/a Allison Consulting ("MJAC"), A North Carolina Limited Liability Company.  MJAC provides financial and operations counseling to national and local businesses (specializing in turnarounds and performance improvement).  MJAC was subsequently retained in the Chapter 11 Case to assist the company in evaluating its long-term viability and to advise management as to short-term issues relating to cash flow, profitability, operations and finance.

21

4848-9862-1523, v. 5

13.    MJAC's review revealed a series of challenges that required Debtor to seek the protections afforded by the Bankruptcy Code to allow Debtor a chance to take control of and reorganize its existing financings and operations.

14.    These challenges include:

a.    Debtor is involved in a series of arbitrations and litigation related to its 2014 contract with Air India, Ltd. ("Air India") concerning a charter service for the 2014 Haj Pilgrimage to Mecca.  While Debtor performed under the contract, full payment was not provided resulting in several disputes.

   1.    Initially, Debtor filed a lawsuit in the United States District Court for the Southern District of New York against Air India.  Over Debtor's objection, Debtor was forced to engage in arbitration in India, which resulted in an approximately $11 million arbitration award against Debtor.  Debtor is in the process of appealing the arbitration award in India to the High Court of Delhi.

   2.    The lack of payment by Air India to Debtor resulted in arbitration demands being filed by three parties to whom Debtor was allegedly required to make payments: BKP Enterprise ("BKP"), Expim International ("Expim"), and Worldwide Charter Group ("Worldwide," and together with BKP and Expim, the "Arbitration Creditors").

   3.    BKP and Expim obtained a combined arbitration award in Canada in a combined approximate amount of $3.5 million (the "BKP and Expim Award").  While Debtor has filed a notice of appeal and intent to challenge the BKP and Expim Award, it was nonetheless confirmed and judgment entered by the United States District Court for the Middle District of North Carolina on May 31, 2017.

   4.    Worldwide obtained an arbitration award in Canada in the approximate amount of $900,000 (the "Worldwide Award").

b.    PMC Aviation 2012-1 LLC ("PMC") obtained a judgment against Debtor in the amount of $1,190,807.24 entered in the Circuit Court of Rockingham County in Virginia on or about June 26, 2017 (the "PMC Judgment").  PMC commenced aggressive collection efforts on the PMC Judgment and, on July 18, 2017, garnished certain of Debtor's bank accounts.

c.    Pas Consulting Group, LLC ("Pas") obtained a judgment against Debtor in the amount of $151,743.50 entered in the United States District Court for the Southern District of Florida on or about May 25, 2017 (the "Pas Judgment").

d.    Debtor has other vendors that have, in the past, gone unpaid which has resulted in, among other things, garnishments against Debtor's bank accounts.  Although Debtor has worked through these garnishments, Debtor needed

22

additional time to review any other outstanding liabilities and determine a plan for repayment.

**D.      Debtor's Post-Petition Date Operations**

15.      Debtor has continued operations as a debtor in possession following the Petition Date.  Debtor has continued to fly aircraft, though has changed its business model from ticketed passenger flights, which caused significant drain on Debtor's resources, to ACMI contracts, as discussed above. While Debtor's post-Petition Date operations have not been without challenge, Debtor's principals have remained committed to funding operations to ensure a successful operation.

16.      As a result. as of the date of this Disclosure Statement, Debtor is continuing operations and has generally remained current on post-Petition Date obligations.

17.      Furthermore, as part of its pre-Petition Date services, Debtor collected revenue for tickets for flights that were to be flown at a future date.  As of the Petition Date, the amount of the outstanding obligation pre-Petition Date customer obligations was $7,984,493.06.  This amount was approximately $3,000,000 more than the amount that Debtor held in escrow accounts.  Through its post-Petition Date operations, Debtor successfully reduced its pre-Petition Date customer obligations significantly, thereby reducing priority obligations of the Estate therefore increasing potential distributions for remaining creditors.

**E.      Debtor's Assets and Liabilities.**

**1.      Assets**

18.      As of the Petition Date, Debtor's assets consisted mainly of approximately $1,500,810 in accounts receivable, approximately $150,000 in miscellaneous airplane inventory, approximately $3,900,000 in escrow balance funds and reserves, and a litigation claim against Air India valued at approximately $8,000,000 (the "Air India Claim"). Although Debtor is confident it could ultimately be successful if the Air India Claim were pursued, the matter involves costly and likely protracted litigation that would cause a significantly less net recovery.

**2.      Liabilities**

19.      As of the Petition Date, Debtor's liabilities consisted of four categories: (1)

23

4848-9862-1523, v. 5

judgments and arbitration awards; (2) trade debt; (3) tax debt and governmental claims; and (4) debt generally obtained through loans or services by insiders to include Woolley, KMW, and Jet Midwest.

20.    Debtor's three largest judgments and arbitration awards include an approximately $10,500,000 arbitration award in favor of Air India; an approximately $3,500,000 arbitration award in favor of B.K.P. and Expim, and an approximately $1,203,000 judgment in favor of PMC.

21.    Debtor's trade debt amounts to approximately $22,000,000 and is generally for operations including various airport fees, fuel and flight services, and various other operational expenses.

22.    Debtor also has incurred unpaid pre-Petition Date taxes and governmental claims owed to the IRS, North Carolina Department of Revenue, NYS Department of Financing, US Department of Agriculture, Transportation Security Administration, and Customs and Border Protection collectively in excess of $11,000,000.

23.    Finally, Debtor owes approximately $12,047,918.67 to Woolley on a secured basis for monies loaned; $10,535,749.18 to KMW for unpaid lease payments; $6,657,997.14 to Jet Midwest Entities for goods and services provided (collectively, the "Insider Claims").

**F.    The Settlement Agreements**

**1.    The Class 2 and Class 6 Settlement Agreement**

24.    The Agencies have asserted various non-priority tax claims against Debtor related to operations since 2015. Generally, these claims fall into three categories: (1) a secured APHIS Claim of $150,000 and an unsecured APHIS Claim of approximately $175,000; (2) Governmental Penalty Claims; and (3) Residual Governmental Unit Claims, which are claims that do not fall into the two prior categories nor are priority Claims.

25.    These claims total approximately $4,289,000. In order to resolve these claims, Debtor, Woolley, and the DOJ have entered into the Class 2 and Class 6 Settlement Agreement, subject to the requisite DOJ approval, which provides for (1) an allowed secured APHIS Claim in the amount of $150,000, which will be paid in full on the 10th business days after the Effective

24

Date; (2) for the governmental penalty claims and the APHIS unsecured Claim to be included in the Class 5 General Unsecured Claims, entitled to its pro rata Distribution from the Class 5 Distribution Fund; and (3) for the Residual Governmental Unit Claims in Class 6, which shall be paid through a $800,000 payment on the 10th business day after the Effective Date.

### 2.  The Settlement and Restructuring Agreement

26.    Although not formally filed, the Committee asserts that potential claims (the "Committee Claims") exist against the Released Parties.  The Committee Claims generally assert mismanagement and breaches of fiduciary duties in connection with Debtor's operations since 2015, and avoidance of payments and security interests obtained by the Released Parties during that same time period.  For example, through the Committee Claims, the Committee could seek: (1) to avoid Woolley's approximately $12,000,000 secured claim based on an alleged lack of security agreement or, in the alternatively as preference payments; (2) for avoidance of approximately $775,000 in payments to Woolley, approximately $1,000,000 in payments to Jet Midwest, approximately $200,000 to Swift Air, and approximately $40,000 to Kraus as avoidable transfers; (3) to subordinate KMW, Woolley, Kraus, and Jet Midwest's claims based on contract or alleged inequitable conduct that purportedly led to Debtor's insolvency; (4) recharacterization of  Woolley's and Kraus' loans to Debtor as capital contributions; (5) for a judgment for breach of fiduciary duty based on their alleged mismanagement of Debtor; and (6) avoidance of a $522,923 payment to Wells Fargo allegedly on Woolley's behalf, $681,239 payment to Bank of America allegedly on Woolley's behalf, and an approximately $3,100,000 payments to World Fuel and Mercury allegedly on Jet Midwest's behalf.

27.    The Released Parties have asserted defenses to all Claims including, among other things, that Woolley's security interest was properly recorded and valid; the payments to Woolley, Kraus, and their related entities during the preference period are not avoidance as not being transfers of Debtor's property and/or new value having been provided; there has been no inequitable conduct on behalf of the Released parties and managerial decisions made by Kraus were made with proper business judgment; the loans to Debtor were properly documents and commercially reasonable, and any alleged payments on Woolley's and Jet Midwest's behalf

were not transfers of Debtor's property and/or made in the ordinary course.

28.    Generally, through the Committee Claims, the Committee believes it can (1) seek to recover approximately $6 million paid to or on behalf of the Insiders; (2) disallow, subordinate, and/or recharacterize approximately $30 million in Insider Claims; and (3) obtain an unknown amount of damages against Woolley and/or Kraus for alleged breach of fiduciary duty. Notwithstanding, the Committee also acknowledges that any amounts ultimately recovered through litigation will be first used to pay litigation costs, then will be applied to any remaining administrative costs and then to the Priority Tax Claim, leaving little if any moneys available for General Unsecured Claims and Convenience Claims.

29.    While the Released Parties deny any wrongdoing and, as set forth above, dispute the validity of the Committee Claims against them, the Released Parties nonetheless understand that the Committee Claims are assets of the Estate and may be asserted.  In order to fully and finally resolve the Committee Claims, Debtor, on the one hand, and the Released Parties, on the other hand, have agreed to the terms of the Settlement and Restructuring Agreement which provides that, in exchange for:

a.  the Exit Loan Lender entering into the Exit Loan and Exit Loan Documents and commencing funding as provided for therein;

b.  the subordination and Discharge of Woolley's pre-Petition Date Claims without receiving a Distribution related thereto;

c.  the treatment of the Woolley's Secured Claim as an Allowed General Unsecured Claim, to be subordinated and Discharged without a Distribution related thereto;

d.  Solitude exchanging all Claims related to the Solitude DIP Loans for the Equity Securities of Reorganized Debtor;

e.  KMW consenting to the assumption of the KMW Leases in accordance with Article 6 of the Plan; and

f.  Kraus and Jet Midwest agreeing to the subordination and Discharge of all pre-Petition Date Claims without receiving a Distribution related thereto,

26

100% of the Equity Securities of the Reorganized Debtor will be vested in Solitude and Released Parties will be released from all claims which could be asserted by or on behalf of the Debtor as set forth in Section 9.6 of the Plan.

30.    The Committee has reviewed the proposed terms of the Settlement and Restructuring Agreement and agrees that the Settlement and Restructuring Agreement provides a greater recovery for Creditors than what is likely to be obtained in the Committee further pursues the Committee Claims.

**G.    Significant Events During the Chapter 11 Case.**

**1.    Significant Early Motions in the Main Case.**

31.    At the outset of the Chapter 11 Case, Debtor filed numerous motions, subsequently approved, to facilitate the Chapter 11 Case, including regarding administrative procedures, employment of professionals, and DIP financing.  Among these motions, Debtor requested relief including:

(1) the employment of Garman Turner Gordon LLP as Debtor's' lead bankruptcy counsel;

(2) the employment of Bell, Davis & Pitt, P.A. as Debtor's local bankruptcy counsel;

(3) the approval of initial post-petition financing in the amount of $800,000;

(4) the use of pre-petition bank accounts;

(5) authority to pay its employees;

(6) authority to honor its pre-petition obligations; and

(7) an order determining that adequate assurances had been paid to utility companies.

32.    Consistent therewith, concurrently with the filing of the Voluntary Petition, the Debtor filed its (1) *Application By Debtor in Possession to Employ Attorneys*; (2) *Emergency Motion for Order Authorizing Maintenance of Prepetition Cash Management System and Maintenance of Prepetition Bank Accounts*; (3) *Emergency Motion for Order: (I) Authorizing Debtor to Pay Wages, Salaries, Benefits, and Other Employee Obligations; and (II) Authorizing and Directing Financial Institutions to Honor and Process Checks and Transfers Related to*

27

4848-9862-1523, v. 5

*Such Obligations;* (4) *Emergency Motion Pursuant to 11 U.S.C. §§ 105(a) and 366 For and Order Determining that Adequate Assurance has been Provided to the Utility Companies*; (5) *Motion for Order (I) Authorizing the Debtor to Pay and Honor Prepetition Obligations to Customers and (II) Authorizing and Directing the Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations;* (6) *Debtor's Emergency Motion Seeking Interim and Final Orders: (1) Authorizing Debtor to Obtain Post-Petition Financing, (2) Granting Liens and Superpriority Administrative Expense, and (3) Setting and Prescribing the Form and Manner of Notice for a Final Hearing* (the "Initial DIP Motion").  See ECF Nos. 5, 11, 12, 13, 14, and 16. Each of these motions were subsequently granted by the Court.  See ECF Nos. 92, 93, 99, 102, 105 and 182.

### 2. Debtor's Post-Petition Date Challenges.

33.    On July 21, 2017, within days of the Petition Date, PMC filed a *Motion to Convert The Case from Chapter 11 to Chapter 7*. See ECF No. 35.  The Motion has been continued on the Court's docket, but PMC offered to withdraw the Motion without prejudice.

34.    Following the Motion to Convert, on July 28, 2017, the Bankruptcy Administrator filed a *Motion for Appointment of Chapter 11 Trustee* (the "Motion to Appoint"). See ECF No. 80. While the Motion to Appoint has been continued on the Court's docket, the BA has not actively pursued the Motion to Appoint.

35.    On August 3, 2017, the Committee was appointed, and is comprised of Air India, BKP, AEGFUELS, Gulf Regents, LLC, McCarter & English, Worldwide Charter Group, and Jet Midwest International Co, Ltd. See ECF No. 98.  Later, PMC was added as an *ex officio* member of the Committee. See ECF No. 121.

36.    The Committee has pursued various discovery of the Debtor and Woolley and has been actively engaged in the Chapter 11 Case.

37.    In addition to its administrative challenges, Debtor has encountered various operational issues that have required additional funding. As a result, Debtor has sought, and obtained approval of, three additional debtor-in-possession financing requests in the amount of

28

$2,355,369, plus an increase of up to $160,000; $500,00; and $2,500,000, respectively. <u>See</u> ECF Nos. 185, 258, 344.

## V.
## ADDITIONAL PLAN PROVISIONS

**A.      Plan Implementation Occurring on the Effective Date.**  On the Effective Date, except as otherwise provided, without any further action by Debtor or Reorganized Debtor, all of Debtor's assets shall vest in Reorganized Debtor and the following events shall occur in the following sequence:

1.      The Settlement Agreements shall be executed.

2.      The Exit Loan Documents shall be executed by the Reorganized Debtor and the Exit Loan Lender, as applicable, and the Exit Loan Note shall be delivered to the Exit Loan Lender.  The initial funding shall be funded.

3.      All Litigation Claims shall be assigned and transferred to Reorganized Debtor.

4.      The Class 5 Distribution shall be made to the Disbursing Agent for deposit into the Disbursing Agent Account.

5.      Any Initial Distributions required to be made to the Holders of Allowed Claims on the Effective Date shall be made.

**B.      Executory Contracts and Unexpired Leases.**

**1.      Executory Contracts.**

Except for Executory Contracts and Unexpired Leases specifically addressed in the Plan, assumed pursuant to prior order of the Bankruptcy Court, including but not limited to the Sale Order, or set forth on the schedule of Assumed Executed Contracts and Unexpired Leases attached to the Plan as <u>Schedule 6.1</u> (which may be supplemented and amended up to the date the Bankruptcy Court enters the Confirmation Order), all Executory Contracts and Unexpired Leases that exist on the Confirmation Date shall be deemed rejected by Debtor on the Effective Date.

Debtor seeks to assume the leases with KMW for its six Boeing 767 aircraft, all of which are necessary for the continued operations of Reorganized Debtor.

29

2. **Approval of Assumption or Rejection.**

Entry of the Confirmation Order shall constitute as of the Effective Date: (i) approval, pursuant to Bankruptcy Code Section 365, of the rejection by Reorganized Debtor of each Executory Contract and Unexpired Lease to which Debtor is a party that is not listed on <u>Schedule 6.1</u> to the Plan, not otherwise provided for in the Plan, and neither assigned, assumed and assigned, nor rejected by separate order of the Bankruptcy Court prior to the Effective Date; and (ii) assumption by Debtor of each Executory Contract and Unexpired Lease to which Debtor is a party that is listed on Schedule 6.1.  Upon the Effective Date, each counter party to an assumed Executory Contract or Unexpired Lease listed shall be deemed to have consented to an assumption contemplated by Section 365(c)(1)(B) of the Bankruptcy Code, to the extent such consent is necessary for such assumption.  To the extent applicable, all Executory Contracts or Unexpired Leases of Reorganized Debtor assumed pursuant to this Article 6 shall be deemed modified such that the transactions contemplated by the Plan shall not be a "change of control," regardless of how such term may be defined in the relevant Executory Contract or Unexpired Lease and any required consent under any such Executory Contract or Unexpired Lease shall be deemed satisfied by confirmation of the Plan.

3. **Cure of Defaults.**

Reorganized Debtor shall Cure any defaults respecting each Executory Contract or Unexpired Lease assumed pursuant to Section 6.1 of the Plan upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such dates as may be fixed by the Bankruptcy Court or agreed upon by Debtor, and after the Effective Date, Reorganized Debtor; or (iii) the fourteenth (14th) Business Day after the entry of a Final Order resolving any dispute regarding: (a) a Cure amount; (b) the ability of Debtor or Reorganized Debtor to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease assumed pursuant to the Plan in accordance with Section 365(b)(1) of the Bankruptcy Code; or (c) any matter pertaining to assumption, assignment, or the Cure of a particular Executory Contract or an Unexpired Lease.

Debtor owes for pre-petition amounts and post-petition amounts due on the KMW

Leases.  Debtor anticipates that it will be able to negotiate a resolution of the cure amounts that will not interrupt post-Effective Date operations.

**4.  <u>Objection to Cure Amounts.</u>**

Any party to an Executory Contract or Unexpired Lease who objects to the Cure amount determined by Debtor to be due and owing must file and serve an objection on Debtor's counsel no later than thirty (30) days after the Effective Date.  Failure to file and serve a timely objection shall be deemed consent to the Cure amounts paid by Debtor in accordance with <u>Section 6.3</u> of the Plan.  If there is a dispute regarding: (i) the amount of any Cure payment; (ii) the ability of Reorganized Debtor to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease to be assumed or assigned; or (iii) any other matter pertaining to assumption, the Cure payments required by Section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving the assumption.

**5.  <u>Confirmation Order.</u>**

The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumptions described in this Article 6 pursuant to Section 365 of the Bankruptcy Code as of the Effective Date.  Notwithstanding the forgoing, if, as of the date the Bankruptcy Court enters the Confirmation Order, there is pending before the Bankruptcy Court a dispute concerning the Cure amount or adequate assurance for any particular Executory Contract or Unexpired Lease, the assumption of such Executory Contract or Unexpired Lease shall be effective as of the date the Bankruptcy Court enters an order resolving any such dispute and authorizing assumption by Debtor.

**6.  <u>Bar Date.</u>**

All proofs of Claims with respect to Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be filed no later than thirty (30) calendar days after the Effective Date.  Any Claim not filed within such time shall be forever barred.

**C.  <u>Manner of Distribution of Property Under the Plan.</u>**

**1.  <u>Distribution.</u>**  Distributions to Holders of Class 5 Allowed Claims shall be the responsibility of the Disbursing Agent, and Reorganized Debtor shall be responsible for

31

making the balance of Distributions described in the Plan.  Reorganized Debtor and Disbursing Agent, as applicable, may make such Distributions before the allowance of each Claim has been resolved if Reorganized Debtor has a good faith belief that the Disputed Claims Reserve is sufficient for all Disputed Claims.  Except as otherwise provided in the Plan or the Confirmation Order, the Cash necessary for Reorganized Debtor to make payments pursuant to the Plan may be obtained from existing Cash balances or the Exit Loan, and the Cash necessary for Disbursing Agent to make payments pursuant to the Plan shall be obtained from the Disbursing Agent Account

2. **Reserves.** Disbursing Agent shall establish and maintain the Disputed Claim Reserve with respect to Class 5 General Unsecured Claims, and Reorganized Debtor shall establish and maintain the Disputed Claim Reserve for the balance of the Claims.

3. **Statements.** Reorganized Debtor shall maintain a record of the names and addresses of all Holders of Allowed Claims as of the Effective Date for purposes of mailing Distributions to them, and shall provide a copy to the Disbursing Agent. Reorganized Debtor and the Disbursing Agent may rely on the name and address set forth in Debtor's Schedules and/or Proofs of Claim and the ledger and records regarding Holders of Equity Securities as of the Record Date as being true and correct unless and until notified otherwise in writing.  Reorganized Debtor shall file all tax returns and other filings with governmental authorities on behalf of Reorganized Debtor and the Assets it holds. The Disbursing Agent shall be responsible for any tax returns and other filings with governmental authorities with regard to the Assets it holds.

4. **Further Authorization.** Debtor and Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions of the Plan.

D. **Conditions Precedent to Confirmation and the Effective Date.**

1. **Condition Precedent to Confirmation.**  The Confirmation Order shall have been entered and be in form and substance reasonable acceptable to Debtor.

2. **Conditions Precedent to Effectiveness.**  The following are conditions precedent to the

4848-9862-1523, v. 5

occurrence of the Effective Date:

    a. The Confirmation Order shall be a Final Order, except that Debtor reserves the right to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order;

    b. All documents necessary to implement the transactions contemplated by the Plan shall be in form and substance reasonable acceptable to Debtor;

    c. The Settlement and Restructuring Agreement shall be in form and substance reasonably acceptable to Solitude, Woolley and the Debtor, and the Settlement and Restructuring Agreement shall have been executed;

    d. The Class 2 and Class 6 Settlement and Agreement shall be in form and substance reasonably acceptable to the DOJ, Woolley, and the Debtor, and the Class 2 and Class 6 Settlement Agreement shall have been executed;

    e. The Exit Loan Documents shall be in form and substance reasonably acceptable to Woolley and the Debtor, and the Exit Loan Documents shall have been executed;

    f. The initial advance under the Exit Loan shall have been funded; and

    g. The Class 5 Distribution Amount shall have been distributed to the Disbursing Agent for deposit into the Disbursing Agent Account.

**E.**     **Objections to Claims or Equity Securities.**

1. **Filing of Objections to Claims**.  After the Effective Date, objections to Claims shall be made and objections to Claims made previous thereto shall be pursued by Reorganized Debtor or any other party properly entitled to do so under the Bankruptcy Code.  Any objections to Claims made after the Effective Date shall be filed and served not later than the first Business Day that is thirty (30) calendar days after the Effective Date; provided, however, that such period may be extended by order of the Bankruptcy Court.

2. **Resolution of Objections After Effective Date**.  From and after the Effective Date, Reorganized Debtor may litigate to judgment, propose settlements of, or withdraw objections to, all pending or filed Disputed Claims and may settle or compromise any Disputed Claim without notice and a hearing and without approval of the Bankruptcy Court.

33

3.    **Distributions and Disputed Claims Reserve**.  In order to facilitate Distributions to Holders of Allowed Claims, and if and to the extent there are Disputed Claims or Disputed Equity Securities in any Class, Reorganized Debtor or the Disbursing Agent, as applicable, shall set aside in a designated reserve account the payments or Distributions applicable to such Disputed Claims as if such Disputed Claims were Allowed Claims, pending the allowance or disallowance of such Disputed Claims.  In the event Reorganized Debtor or the Disbursing Agent, as applicable, wishes to deposit or hold a lesser amount than required herein and is unable to reach an agreement with the Holder of the Disputed Claim on the amount to be deposited or held, the Bankruptcy Court shall fix the amount after notice and hearing.  Upon Final Order with respect to a Disputed Claim, the Holder of such Disputed Claim, to the extent it has been determined to be an Allowed Claim, shall receive as soon as reasonably practical that payment or Distribution to which it would have been entitled if the portion of the Claim so allowed had been allowed as of the Effective Date.

4.    **Late-Filed Claims**.  No Proof of Claim filed after the Bar Date or, as applicable, the Administrative Claim Bar Date, shall be allowed, and all such Proofs of Claim are hereby disallowed in full.  After the Bar Date or the Administrative Bar Date, as applicable, no Creditor shall be permitted to amend any Claim or Proof of Claim to increase the claimed amount and any such amendment shall be disallowed to the extent of the late-filed increase in the claimed amount.  Notwithstanding the above, the United States reserves the right to amend or file a Claim or Proof of Claim after the applicable Bar Date consistent with applicable law and the Class 2 and Class 6 Settlement Agreement.

F.    **Miscellaneous Plan Provisions.**

1.    **Post-Effective Date Treatment of Taxes Due United States. From and after the Effective Date:**

a. The Reorganized Debtor shall (i) segregate and hold separate and apart all moneys withheld from employees or collected from others for Taxes under any internal revenue laws of the United States, (ii) deposit the moneys so withheld or collected in a separate

34

bank account in trust for the United States not later than within the calendar week next after such collecting and withholding, (iii) pay from the separate bank account to the Internal Revenue Service Insolvency Manager or a delegate as identified in writing by the Internal Revenue Service, the proper amounts at the time and in the manner prescribed by applicable internal revenue laws; (iv) timely file all state and federal tax returns required of the Reorganized Debtor under non-Bankruptcy Code law and regulations; and (v) not grant a Lien nor create a priority as to payment in the moneys collected for Taxes due the United States.

b. Any refunds or other credits to which the Reorganized Debtor may become entitled for any reason before payment in full of the Allowed Priority Tax Claims to be paid pursuant to Section 2.3 of the Plan may be credited or applied to the last payment required to be made on the Allowed Priority Tax Claims.

c. If the Reorganized Debtor fails to make any payment required pursuant to Section 2.3 of the Plan, fails to comply with Section 5.5.1(i), (ii), (iii) or (iv) of the Plan within 21 days of the due date for such action, or if the Reorganized Debtor violates Section 5.5.1(v) of the Plan, then the IRS Insolvency Manager or delegate may, in his or her sole discretion, declare in writing the Reorganized Debtor in default of the provisions of Sections 2.3 and 5.5 of the Plan. In the event that the Reorganized Debtor fails to cure the default within 21 days of receipt of the writing, the IRS Insolvency Manager or delegate may, in his or her sole discretion, accelerate and declare as immediately due and owing the remaining balance of the Allowed Priority Tax Claim together with any unpaid post-Effective Date Taxes. The Internal Revenue Service may collect any amounts due and owing through the administrative collection provisions of the Internal Revenue Code or by any other procedure authorized by law.

2. **Effectuating Documents; Further Transactions; Timing.** Debtor and Reorganized Debtor are each authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of

35

4848-9862-1523, v. 5

the Plan and any securities issued, transferred, or canceled pursuant to the Plan.  All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously.  Debtor and Reorganized Debtor are authorized and directed to do such acts and execute such documents as are necessary to implement the Plan.

3. **Exemption From Transfer Taxes.**  Pursuant to Section 1146 of the Bankruptcy Code: (i) the issuance, distribution, transfer, or exchange of Estate property; (ii) the creation, modification, consolidation, or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of, or connection with the Plan or the Confirmation Order; (iii) the making, assignment, modification, or recording of any lease or sublease; or (iv) the making, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment and the appropriate state of local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

4. **Revocation or Withdrawal of the Plan.**  Debtor reserves the right to revoke or withdraw the Plan at any time prior to its substantial consummation.  If the Plan is withdrawn or revoked, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against Debtor or any other Person nor shall the withdrawal or revocation of the Plan prejudice in any manner the rights of Debtor or any Person in any further proceedings involving Debtor.  In the event the Plan is withdrawn or revoked, nothing set forth herein shall be

36

deemed an admission of any sort and the Plan and any transaction contemplated thereby shall be inadmissible into evidence in any proceeding.

5. **Binding Effect.**  The Plan shall be binding upon, and shall inure to the benefit of Debtor, Reorganized Debtor, and the Holders of all Claims and Equity Securities and their respective successors and assigns.

6. **Governing Law.**  Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any contract, instrument, release, or other agreement entered into in connection with the Plan or in any document which remains unaltered by the Plan, the rights, duties, and obligations of Debtor, Reorganized Debtor, and any other Person arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of North Carolina without giving effect to North Carolina's choice of law provisions.

7. **Modification of Payment Terms.**  Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the Holder of such Allowed Claim at any time after the Effective Date upon the prior written consent of the Holder whose Allowed Claim treatment is being adversely affected.

8. **Providing for Claims Payments.**  Distributions to Holders of Allowed Claims shall be made by Reorganized Debtor or the Disbursing Agent, as applicable: (i) at the addresses set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such Holders if no proof of Claim is filed or if Debtor has been notified of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to Reorganized Debtor after the date of any related proof of Claim; or (iii) at the addresses reflected in the Schedules if no proof of Claim has been filed and Reorganized Debtor has not received a written notice of a change of address.  If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until Reorganized Debtor or the Disbursing Agent, as applicable, is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest.  Amounts in respect of undeliverable

37

Distributions made through Reorganized Debtor or the Disbursing Agent, as applicable, shall be returned to Reorganized Debtor or the Disbursing Agent, as applicable, until such Distributions are claimed.  Amounts in respect of undeliverable Distributions made through Reorganized Debtor or the Disbursing Agent, as applicable, shall be paid to the Clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 3011, as in the case of a Chapter 7 liquidation.   Nothing contained in this Plan shall require Debtor or Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

9. **Set Offs.**  Debtor and Reorganized Debtor may, but shall not be required to, set off or recoup against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim (before any distribution is made on account of such Claim or Equity Security), claims of any nature whatsoever that the applicable Debtor or Reorganized Debtor may have against the Holder of such Claim to the extent such Claims may be set off or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim  hereunder shall constitute a waiver or release by Debtor or Reorganized Debtor of any such Claim that it may have against such Holder.

10. **Notices.**   Any notice required or permitted to be provided under the Plan shall be in writing and served by either: (i) certified mail, return receipt requested, postage prepaid; (ii) hand delivery; or (iii) reputable overnight courier service, freight prepaid, to be addressed as follows:

If to Debtor:                             Dynamic International Airways, LLC
                                          Attn: Raymond Lawlor
                                          4310 Regency Drive, Suite 100
                                          High Point, NC  27265
                                          Tel:    (262) 521-1100
                                          Email:  rlawlor@flydya.com

38

4848-9862-1523, v. 5

With a copy to:

Garman Turner Gordon
Attn: Gerald M. Gordon, Esq.
650 White Drive, Suite 100
Las Vegas, NV 89119
Tel:    (725) 777-3000
Email:  ggordon@gtg.legal

and

Bell, Davis & Pitt, P.A.
Attn: Walter W. Pitt, Jr., Esq.
PO Box 21029
Winston-Salem, NC 27120-1029
Tel:  (336) 714-4110
Email:  WPitt@belldavispitt.com

and

Northen Blue, LLP
Attn: John A. Northen, Esq.
1414 Raleigh Road, Suite 435
Chapel Hill, NC 27517
Tel: (919) 968-4441
Email:  jan@nbfirm.com

11. **Severability.**  If any provision of the Plan is determined by the Bankruptcy Court to be invalid, illegal, or unenforceable or the Plan is determined to be not confirmable pursuant to Section 1129 of the Bankruptcy Code, the Bankruptcy Court, at the request of Debtor shall have the power to alter and interpret such term to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12. **Withholding and Reporting Requirements.**    In connection with the Plan and all

39

instruments and securities issued in connection therewith and Distributions thereon, Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements. Reorganized Debtor shall be authorized to take any and all action that may be necessary to comply with such withholding and recording requirements. Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim that has received a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding, and other tax obligation on account of such distribution.

13. **Modification and Amendment.**  Prior to Confirmation, Debtor may alter, amend, or modify the Plan under Section 1127(a) of the Bankruptcy Code at any time.  After the Confirmation Date and prior to substantial consummation of the Plan as defined in Section 1101(2) of the Bankruptcy Code, Debtor may, under Section 1127(b), (c), and (d) of the Bankruptcy Code, alter, amend, or modify the Plan or institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, to make appropriate adjustments and modifications to the Plan or the Confirmation Order as may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do not materially adversely affect the treatment of Holders of Claims under the Plan.

## VII.
## POST-EFFECTIVE DATE OPERATIONS

A.    **Vesting of Assets.** Subject to the provisions of the Plan and as permitted by Section 1123(a)(5)(B) of the Bankruptcy Code, the Assets, including the Litigation Claims and right, title, and interest being assumed by Reorganized Debtor in the assumed Executory Contracts, shall be transferred to Reorganized Debtor on the Effective Date.  As of the Effective Date, all such property shall be free and clear of all Liens, Claims, and Equity Securities except as otherwise provided herein.  On and after the Effective Date, Reorganized Debtor may operate

40

its business and may use, acquire, and dispose of property and compromise or settle any Claim without the supervision of or approval of the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by the Plan or the Confirmation Order.

**B.**       **Preservation and Settlement of Litigation Claims.**   In accordance with Section 1123(b)(3) of the Bankruptcy Code, and except as otherwise expressly provided herein, all Litigation Claims shall be assigned and transferred to Reorganized Debtor pursuant to <u>Section 5.1</u> of the Plan.  Reorganized Debtor, as the successor in interest to Debtor and the Estate, may and shall have the exclusive right to sue on, settle, or compromise any and all Litigation Claims, including derivative actions existing against Debtor on the Effective Date. Notwithstanding, however, all Avoidance Actions are waived and extinguished as of the Effective Date.

**C.**       **Discharge.**   On the Effective Date, except as otherwise provided in the Plan, the Debtor shall be discharged from any and all unclassified Claims and Claims in Classes 1, 2, 3, 4, 5,  and 6, and Equity Securities in Class 7 to the fullest extent provided in sections 524 and 1141 of the Bankruptcy Code.  The Discharge shall be to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, and, except as otherwise expressly provided by the Plan or the Confirmation Order, all consideration distributed under the Plan and shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims  and Equity Securities of any kind or nature whatsoever against the Debtor or any of its assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Securities.  Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date as to unclassified Claims and Claims in Classes 1, 2, 3, 4, 5, and 6, and Equity Securities in Class 7, the Debtor shall be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims and Equity Securities of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.  Nothing in the Plan or Confirmation Order shall

operate to expand the Debtor's discharge as provided for in Section 9.3 of the Plan beyond those allowed by the Bankruptcy Code. Nothing in the Plan or Confirmation Order shall discharge any Claims of the United States arising after the Confirmation Date.

**D.** **Compromise and Settlement.** The allowance, classification, and treatment of all Allowed Claims and their respective Distributions under the Plan take into account and/or conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(c) of the Bankruptcy Code, or otherwise. As of the Effective Date, any and all such rights described in the preceding sentence will be settled, compromised, and released pursuant to the Plan and any and all such Causes of Action related thereto are settled, compromised, and released pursuant hereto.

**E.** **Injunction**. **From and after the Effective Date, and except as provided in the Plan and the Confirmation Order, all entities that have held, currently hold, or may hold a Claim or an Equity Security or other right of an Equity Security Holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions on account of any such Claims or terminated Equity Securities or rights: (i) commencing or continuing in any manner any action or other proceeding against Reorganized Debtor or its property; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Reorganized Debtor or its property; (iii) creating, perfecting, or enforcing any Lien or encumbrance against Reorganized Debtor or its property; (iv) asserting a right of subrogation of any kind against any debt, liability, or obligation due to Reorganized Debtor or its property; and (v) commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code. Nothing in the Plan or the Confirmation Order will enjoin, impair or otherwise preclude the United States (1) from pursuing any criminal action or any police or regulatory actions; (ii) from pursuing any liability to the United States that is not a Claim; (iii) from exercising any rights of setoff or recoupment; and (v) from pursuing any claim of the United States arising**

42

after the Confirmation Date.

**F.    Releases By Debtor.  Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the release of Claims by and treatment of the KMW Leases, the Released Parties' facilitation of the expeditious reorganization of Debtor and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by Debtor, the Reorganized Debtor, and the Estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or which could be asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, the Reorganized Debtor, or and the Estate would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, Debtor, Debtor's restructuring, Debtor's Chapter 11 Case, the purchase, sale or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Security that is treated in the Plan, the business or contractual arrangements between Debtor and any Released Party, the restructuring of Claims and Equity Securities before or during the Chapter 11 Case, the negotiation, formulation or preparation of the Plan, the Disclosure Statement or related agreements, instruments or other documents, or any other act or omission, transaction, agreement, event or other occurrence relating to the Debtor taking place on or before the Confirmation Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party.**

**G.    Exculpation.  Except as provided in this Plan, from and after the Effective Date, neither the Debtor, Reorganized Debtor, Committee, KMW, Solitude, the professionals employed on behalf of the Estate or the Creditor Committee, nor any of their respective present or former members, directors, officers, managers, employees, advisors, attorneys, or agents, shall have or incur any liability, including derivative claims, but**

43

**excluding direct claims, to any Holder of a Claim or Equity Security or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of (from the Petition Date through the Effective Date), the Chapter 11 Case, the pursuit of confirmation of the Plan, or the consummation of the Plan, except for gross negligence and willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan or in the context of the Chapter 11 Case**

H.    **Post-Confirmation Reporting and Quarterly Fees to the UST.**  Until the entry of the final decree closing the Chapter 11 Case, Reorganized Debtor shall comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rule's post-confirmation reporting requirements.  Additionally, Reorganized Debtor shall file post-confirmation quarterly operating reports detailing receipts and disbursements (along with ending cash balance) for each calendar quarter from the date of confirmation until dismissal, conversion, or entry of a final decree closing the case no later than 20 days after the expiration of the reported quarter.

**VIII.**
**RETENTION OF JURISDICTION**

A.    **Jurisdiction.**  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and Reorganized Debtor after the Effective Date as is legally permissible, including jurisdiction to:

1.    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Disputed Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Disputed Claims;

2.    Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for periods ending on or before the Effective Date;

44

3.      Resolve any matters related to the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease to which Debtor or Reorganized Debtor are party and to hear, determine, and, if necessary, liquidate any Claims arising there from or Cure amounts related thereto;

4.      Insure that distributions to Holders of Allowed Claims and Equities Securities are accomplished pursuant to the provisions of the Plan;

5.      Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications or motions involving Debtor or Reorganized Debtor that may be pending on the Effective Date or commenced thereafter as provided for by the Plan;

6.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement or the Confirmation Order, except as otherwise provided herein;

7.      Decide or resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of any Final Order, the Plan, the Confirmation Order, or any Person's obligations incurred in connection with the Plan or the Confirmation Order;

8.      Modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code and Section 11.1 of the Plan or modify any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order or the Reorganized Debtor; or remedy any defect or omission or reconcile any inconsistency in any Final Order, the Plan, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

9.      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person with consummation,

45

implementation, or enforcement of any Final Order, the Plan, or the Confirmation Order, except as otherwise provided herein;

10.    Enter and implement such orders as are necessary or appropriate if a Final Order or the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

11.    Determine any other matters that may arise in connection with or relate to the Plan, any Final Order, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, any Final Order, or Confirmation Order, except as otherwise provided herein;

12.    Enter an order closing the Chapter 11 Case;

13.    Hear and decide Litigation Claims and continue to hear and decide pending Litigation Claims and any other claim or cause of action of Debtor and Reorganized Debtor; and

14.    Decide or resolve any matter over which the Bankruptcy Court has jurisdiction pursuant to Section 505 of the Bankruptcy Code.

Nothing in Article 10 of the Plan shall constitute a waiver by any Person of the right to assert that the Bankruptcy Court lacks jurisdiction over any matter set forth in Article 10 of the Plan.

## IX.

## LIMITATIONS AND RISK FACTORS

In addition to risks discussed elsewhere in this Disclosure Statement, the Plan and the transactions contemplated by the Plan involve the following limitations and risks, which should be taken into consideration.

A.    **Debtor Has No Duty to Update.**  The statements in this Disclosure Statement are made by Debtor as of the date hereof, unless otherwise specified herein.  The delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date.  Debtor has no duty to update this Disclosure Statement unless ordered to do so by the Bankruptcy Court.

46

**B.      Information Presented Is Based on Debtor's Books and Records and Is Unaudited.** While Debtor has endeavored to present information fairly in this Disclosure Statement, there is no assurance that Debtor's books and records upon which this Disclosure Statement is based are complete and accurate. Certain of the financial information contained herein has not been audited.

**C.      Projections and Other Forward-Looking Statements Are Not Assured and Actual Results Will Vary.** Certain information in this Disclosure Statement is forward-looking, and contains estimates and assumptions that might ultimately prove to be incorrect, and projections that may differ materially from actual future results. Debtor believes that the projections of future performance upon which the treatments under the Plan are based are reasonable and fairly represent the future performance of Debtor's business operations. However, there are uncertainties associated with all assumptions, projections, and estimates, and they should not be considered assurances or guarantees of the amount of funds that will be distributed, the amount of Claims in the various Classes that will be allowed, or the success or results of Reorganized Debtor's business operations.

**D.      No Legal or Tax Advice Is Provided to You by This Disclosure Statement.** The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each Creditor or Holder of an Equity Interest should consult his, her, or its own legal counsel and accountant as to legal, tax, and other matters concerning his, her or its Claim or Equity Securities.

**E.      No Admissions Made.** Nothing contained herein shall constitute an admission of any fact or liability by Debtor or any other party nor shall it be deemed evidence of the tax or other legal effects of the Plan on Debtor or on Holders of Claims.

**F.      No Waiver of Right to Object or Right to Recover Transfers and Estate Assets.** Unless specifically provided in the Plan, a Creditor's vote for or against the Plan does not constitute a waiver or release of any claims or rights of Debtor (or any other party-in-interest) to object to that Creditor's Claim, or recover any preferential, fraudulent, or other voidable transfer of Estate assets, regardless of whether any claims or cause of action of Debtor or the Estate are

47

specifically or generally identified herein.

**Bankruptcy Law Risks and Considerations.**

**G.     Confirmation of the Plan Is Not Assured.**  Although Debtor believes the Plan will satisfy all requirements for Confirmation, the Bankruptcy Court might not reach that conclusion.  It is also possible that modifications to the Plan will be required for Confirmation and that such modifications would necessitate a resolicitation of votes.  Confirmation requires, among other things, a finding by the Bankruptcy Court that it is not likely that there will be a need for further financial reorganization and that the value of distributions to dissenting members of Impaired Classes of Creditors and Holders of Equity Securities would not be less than the value of distributions such Creditors and Holders of Equity Securities would receive if Debtor was liquidated under Chapter 7 of the Bankruptcy Code ("Chapter 7").  Although Debtor believes that the Plan will not be followed by a need for further financial reorganization and that dissenting members of Impaired Classes of Creditors and Holders of Equity Securities will receive Distributions at least as great as they would receive in a liquidation under Chapter 7, there can be no assurance that the Bankruptcy Court will conclude that these tests have been met.

**H.     No Assurance of Approval of the Settlement Agreements.**  There is no assurance that the Settlement Agreements will be approved, which is a condition precedent to Plan confirmation. If the Settlement Agreements are not approved, there will be no Plan confirmation and no Distributions as set forth in the Plan.

**I.     The Effective Date or Substantial Consummation Date Might Be Delayed or Never Occur.**  There is no assurance as to the timing of the Effective Date, Substantial Confirmation Date, or that it will occur.  If the respective conditions precedent to the Effective Date and Substantial Consummation Date do not occur, the Confirmation Order will be vacated. In that event, the Holders of Claims and Equity Securities would be restored to their respective positions as of the day immediately preceding the Confirmation Date, and Debtor's obligations for Claims and Equity Securities would remain unchanged as of such day (except to the extent of

48

any post-Effective Date payments).

**J.      The Projected Value of Estate Assets in the Event of Liquidation Might Not Be Realized.**  In the Best Interests Analysis, Debtor has projected the value of the Estate's Assets that would be available for payment of expenses and Distributions to Holders of Allowed Claims as set forth in the Plan.  Debtor has made certain assumptions, as described in the Liquidation Analysis that should be read carefully.

**K.      Allowed Claims in Various Classes May Exceed Projections.** Debtor has also projected the amount of Allowed Claims in each Class in the Best Interests Analysis and in Section III(A).  Certain Classes, and the Classes below them in priority, could be significantly affected by the allowance of Claims in an amount that is greater than projected.

**L.      No Representations Outside of this Disclosure Statement Are Authorized.** No representations concerning or related to Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement should not be relied upon by you in arriving at your decision.

## X. FEDERAL INCOME TAX CONSEQUENCE

The Debtor as a limited liability company is a reporting entity with all U.S. federal income tax consequences of the Plan being passed-through to Holders of Equity Securities. However, with regard to Creditors, the consequences of the Plan may be complex and are subject to substantial uncertainties due to the lack of definitive judicial and administrative authority in a number of areas Debtor has not requested a ruling from the IRS or an opinion of counsel with respect to any tax aspects of the Plan.  Therefore, no assurance can be given as to the position the IRS will take on the tax consequences of the transactions that are to occur in connection with the Plan both as to Creditors and Holders of Equity Securities.

EACH HOLDER OF A CLAIM OR EQUITY SECURITY AFFECTED BY THE PLAN SHOULD CONSULT ITS OWN TAX ADVISOR REGARDING THE SPECIFIC TAX

CONSEQUENCES OF THE PLAN WITH RESPECT TO THAT HOLDER'S CLAIM OR EQUITY SECURITY, INCLUDING UNDER ANY APPLICABLE STATE, LOCAL, OR FOREIGN LAW.

## XI.
## CONFIRMATION OF THE PLAN

**A. Confirmation of the Plan.**

Pursuant to Section 1128(a) of the Bankruptcy Code, the Bankruptcy Court will hold a hearing regarding confirmation of the Plan at the United States Bankruptcy Court for the Middle District of North Carolina, at the time and place specified in the Order approving the adequacy of information contained in this Disclosure Statement and providing notice of certain deadlines and the confirmation hearing

**B. Objections to Confirmation of the Plan.**

Section 1128(b) provides that any party-in-interest may object to confirmation of a plan. Any objections to confirmation of the Plan must be in writing, must state with specificity the grounds for any such objections, and must be timely filed with the Bankruptcy Court and served upon counsel for Debtor at the following address:

Garman Turner Gordon LLP
Teresa M. Pilatowicz, Esq.
650 White Drive, Ste. 100
Las Vegas, Nevada 89119
Telephone: (725) 777-3000
Email: tpilatowicz@gtg.legal

-and-

Bell, Davis & Pitt, P.A.
Walter W. Pitt, Jr., Esq.
PO Box 21029
Winston-Salem, NC 27120-1029
Telephone 336-714-4110
Email: WPitt@belldavispitt.com

For the Plan to be confirmed, the Plan must satisfy the requirements stated in Section 1129. In this regard, the Plan must satisfy, among other things, the following requirements.

50

C. **The Best Interest Test and Feasibility of the Plan.**

For the Plan to be confirmed, it must satisfy the requirements discussed below:

1. **Best Interest Test**.

Pursuant to Section 1129(a)(7) of the Bankruptcy Code, for the Plan to be confirmed, it must provide Holders of Allowed Claims or Allowed Equity Securities with at least as much under the Plan as they would receive in a liquidation of Debtor under Chapter 7 of the Bankruptcy Code (the "Best Interest Test"). The Best Interest Test with respect to each Impaired Class requires that each Holder of an Allowed Claim or Allowed Equity Interest in such Class either: (i) accepts the Plan; or (ii) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive or retain if Debtor were liquidated under Chapter 7. The Bankruptcy Court will determine whether the value to be received under the Plan by the Holders of Allowed Claims in each Class of Creditors or Holders of Allowed Equity Securities equals or exceeds the value that would be allocated to such Holders in a liquidation under Chapter 7. Debtor believes that the Plan meets the Best Interest Test and provides value which is not less than what would be recovered by each Holder of an Impaired Claim or Impaired Equity Interest in a Chapter 7 proceeding for Debtor.

2. **Liquidation Analysis.**

The Liquidation Analysis attached as **Exhibit "2"** hereto summarizes Debtor's best estimate of recoveries by Creditors and Holders of Allowed Equity Securities in the event of liquidation of Debtor as of November 8, 2017.

Generally, to determine what Holders of Allowed Claims and Allowed Equity Securities in each Impaired Class would receive if Debtor was liquidated, the Bankruptcy Court must determine what funds would be generated from the liquidation of Debtor's Assets and properties in a Chapter 7 liquidation case for Debtor, which for unsecured Creditors would consist of the proceeds from the disposition of the Assets of Debtor, augmented by the unencumbered Cash held by Debtor upon the completion of the liquidation. Such Cash amounts would be reduced by the costs and expenses of the liquidation and by such additional Administrative Claims and Other

51

Priority Claims as may result from the Chapter 7 case and the use of Chapter 7 for the purpose of liquidation.

In a Chapter 7 liquidation, holders of allowed claims receive distributions based on the liquidation of the non-exempt assets of a debtor.  However, there are no exempt assets in the Chapter 11 Case, and, as such, the distributions would include the same Assets being collected and liquidated under the Plan, namely the interests of Debtor in the Assets.  In this case, the Assets consists largely of the Debtor's Claims against Debtor's managers, which are being settled through the Plan.  In a liquidation scenario, it is unclear whether a Chapter 7 Trustee would pursue the Debtor's Claims or, if such claims were pursued, how much estate funds would be spent in such pursuit.

Furthermore, the proceeds from the collection and sale of property of the Estate available for distribution to Creditors would be first reduced by the satisfaction of any liens and security interests in the Assets, costs of sale and litigation, any commission payable to the Chapter 7 trustee, the trustee's attorneys' and accounting fees, as well as the administrative costs of the Chapter 7 estate.  In a Chapter 7 case, the Chapter 7 trustee would be entitled to seek a sliding-scale commission based upon the funds distributed by such trustee to secured creditors.

The distributions from the liquidation proceeds would be paid Pro Rata according to the amount of the aggregate Claims held by each Creditor in each Chapter 7 case in accordance with the distribution scheme of the Bankruptcy Code.  Debtor believes that the most likely outcome under Chapter 7 would be the application of the "absolute priority rule."  Under that rule, no junior Creditor in a Chapter 7 case may receive any distribution until all senior Creditors are paid in full, with interest, and no Holder of an Equity Security may receive any distribution until all Creditors are paid in full.

**3.    Feasibility.**

The Bankruptcy Code requires that in order to confirm the Plan, the Bankruptcy Court must find that Confirmation is not likely to be followed by liquidation or the need for further financial reorganization of Debtor (the "Feasibility Test").  For the Plan to meet the Feasibility Test, the Bankruptcy Court must find that Reorganized Debtor will possess the resources and

52

working capital necessary to meet their obligations under the Plan. In this case, the Plan requires approval of a Settlement and Restructuring Agreement that will provide for, among other things, Exit Financing sufficient to pay the Administration Class, Class 3 Allowed Priority Class, and Class 5 Distribution Amount. The Settlement and Restructuring Agreement will be approved as part of Confirmation, making feasibility, at least with respect to that certain Initial Distributions certain. The remaining Initial Distributions and payments following the Initial Distributions will be paid by post-Effective Date Operations. The three-year Projections, attached hereto as **Exhibit "3,"** demonstrate sufficient funds to complete all subsequent distributions.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the statutory requirements for Confirmation.

**4.**    **Confirmation of the Plan Without Acceptance By All Impaired Classes:  the "Cramdown" Alternative.**

Section 1129(b) of the Bankruptcy Code provides that a plan of reorganization may be confirmed even if it has not been accepted by all impaired classes, as long as at least one impaired class of claims has accepted it. Consequently, the Bankruptcy Court may confirm the Plan at Debtor's request notwithstanding the Plan's rejection by Impaired Classes, as long as at least one Impaired Class has accepted the Plan and the Plan "does not discriminate unfairly" and is "fair and equitable" as to each Impaired Class that has not accepted it.

A plan will be deemed fair and equitable as to a class of secured claims that rejects the plan if the plan provides: (i)(a) that the holders of claims in the rejecting class retain the lien securing those claims, whether the property subject to those liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims, and (b) that each holder of a claim in such class receives on account of that claim deferred cash payments totaling at least the allowed amount of that claim of a value, as of the effective date of the plan, at least equal to the value of the holder's interest in the estate's interest in such property; (ii) for the sale, subject to Section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing the claims included in the rejecting class, free and clear of the liens, with the liens to attach to the proceeds of the sale, and the treatment of the liens on such proceeds as described

53

under clause (i) or (ii) of this paragraph; or (iii) for the realization by such holders of the indubitable equivalent of such claims.

A plan is fair and equitable as to a class of unsecured claims that rejects the plan if the plan provides: (i) for each holder of a claim included in the rejecting class to receive or retain on account of such claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) that the holder of any claim or interest that is junior to the claims of such rejecting class will not receive or retain on account of such junior claim or interest any property at all.

5.    **Accepting Impaired Class.**

Since at least one Class of Claims is Impaired under the Plan, in order for the Plan to be confirmed, the Plan must be accepted by at least one Impaired Class of Claims (not including the acceptance votes of Insiders of Debtor).  For an Impaired Class of Claims to accept the Plan, those representing at least two-thirds in amount and a majority in number of the Allowed Claims voted in that Class must be cast for acceptance of the Plan.

## XII.
## ALTERNATIVES TO THE PLAN

Debtor believes that the Plan provides Creditors the best and most complete form of recovery available.  As a result, Debtor believes that the Plan serves the best interests of all Creditors and parties-in-interest in the Chapter 11 Case.

In formulating and developing the Plan, Debtor explored numerous alternatives.  Debtor believes not only that the Plan fairly adjusts the rights of various Classes of Creditors and enables the Creditors to realize the greatest sum possible under the circumstances, but also that rejection of the Plan in favor of some theoretical alternative method of reconciling the Claims of the various Classes would require, at the very least, an extensive and time-consuming negotiation process and would not result in a better recovery for any Class.

Under the Bankruptcy Code, a debtor has an exclusive period of one hundred twenty (120) days and an additional vote solicitation period of sixty (60) days from the entry of the order for relief during which time, assuming that no trustee has been appointed by the

54

Bankruptcy Court, only a debtor may propose a plan of reorganization.  After the expiration of the initial 180-day period and any extensions thereof, the debtor or any other party-in-interest may propose a different plan, unless the Bankruptcy Court has extended the exclusivity periods.

If a plan of reorganization cannot be confirmed, a Chapter 11 case may be converted to a Chapter 7 case, in which a trustee would be elected or appointed to liquidate the assets of the debtor for distribution to creditors in accordance with the priorities established by the Bankruptcy Code.  For a discussion of the effect that a Chapter 7 liquidation in the Chapter 11 Case would have on recovery by Creditors, see <u>Section XI.C.2.</u> and **Exhibit "2."**

As previously stated, Debtor believes that liquidation under Chapter 7 would result in a substantially reduced recovery of funds by the Creditors of the Estate because of: (i) additional administrative expenses involved in the appointment of a trustee for Debtor and attorneys and other professionals to assist such trustee; and (ii) additional expenses and Claims, some of which would be entitled to priority, which would be generated during the liquidation.  Accordingly, Debtor believes that Holders of all Classes of Claims will receive substantially smaller distributions in Chapter 7 liquidation than under the Plan and therefore encourage all Holders of Impaired Claims that are entitled to vote on the Plan to cast ballots accepting the Plan.

**XIII.**
**PREFERENCE AND OTHER AVOIDANCE ACTIONS**

A bankruptcy trustee (or the debtor as a debtor-in-possession) may avoid as a preference a transfer of property made by a debtor to a creditor on account of an antecedent debt while a debtor was insolvent, where that creditor receives more than it would have received in a liquidation of the entity under Chapter 7 had the payment not been made, if: (i) the payment was made within ninety (90) days before the date the bankruptcy case was commenced; or (ii) the creditor is found to have been an "insider," as defined in the Bankruptcy Code, within one year before the commencement of the bankruptcy case.  A debtor is presumed to have been insolvent during the ninety (90) days preceding the commencement of the case.

A bankruptcy trustee (or the debtor as a debtor-in-possession) may avoid as a fraudulent transfer a transfer of property made by a debtor within two years (and under applicable

55

California law, four years) before the date the bankruptcy case was commenced if the debtor: (i) received less than reasonably equivalent value in exchange for such transfer; and (ii) was insolvent on the date of such transfer or became insolvent as a result of such transfer, such transfer left the debtor with an unreasonably small capital, or the debtor intended to incur debts that would be beyond the debtor's ability to pay as such debts matured.

Debtor does not believe any such viable actions with likely recovery exist and does not intend to pursue any such actions as part of the Plan.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

56

1

2

3

## XIV.
## RECOMMENDATION AND CONCLUSION

The Plan provides the best possible recovery for all parties-in-interest.   Accordingly, Debtor recommends that all Creditors who are entitled to vote on the Plan timely submit their votes to accept the Plan.

DATED this 15th day of December 2017

DYNAMIC INTERNATIONAL AIRWAYS, LLC
A Virginia limited liability company,


_____

By:  Ray Lawlor
Its:   Chief Executive Officer

**Prepared and Submitted:**

GARMAN TURNER GORDON

By:*/s/ Teresa Pilatowicz*
          GERALD M. GORDON, ESQ.
          NV Bar No. 229
          TERESA PILATOWICZ, ESQ
          NV Bar No.
          650 White Drive, Suite 100
          Las Vegas, NV 89119

          and

          BELL, DAVIS & PITT, PA
          WALTER W. PITT, JR., ESQ.
          NC Bar No. 3467
          DANIEL C. BRUTON, ESQ.
          NC Bar No. 22440
          PO Box 21029
          Winston-Salem, NC 27120-1029
          Telephone 336-714-4110

57

4848-9862-1523, v. 5

# Exhibit 1

# Exhibit 1

UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                                    )
                                          )
DYNAMIC INTERNATIONAL                     )        Case No. 17-10814
AIRWAYS, LLC                              )        Chapter 11
                                          )
              Debtor.                     )
_____)

## **DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION**

**Table of Contents**

1.    DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF
       TIME .............................................................................................................. 1
       1.1.    Definitions. ........................................................................................... 1
              1.1.1.    Administrative Claim. . .......................................................... 1
              1.1.2.    Administrative Claim Bar Date. ............................................ 1
              1.1.3.    Affiliate. . .............................................................................. 1
              1.1.4.    Agencies. . ............................................................................. 1
              1.1.5.    Allowed Administrative Claim. . ............................................ 2
              1.1.6.    Allowed Claim. ...................................................................... 2
              1.1.7.    Allowed Equity Security. . ..................................................... 2
              1.1.8.    APHIS. . .................................................................................. 2
              1.1.9.    Assets. .................................................................................... 2
              1.1.10.   Avoidance Actions. . .............................................................. 2
              1.1.11.   Ballot. .................................................................................... 2
              1.1.12.   Bankruptcy Code. . ................................................................ 2
              1.1.13.   Bankruptcy Court. . ............................................................... 2
              1.1.14.   Bankruptcy Rules. . ............................................................... 3
              1.1.15.   Bar Date. ................................................................................ 3
              1.1.16.   Business Day. . ....................................................................... 3
              1.1.17.   Cash. . ..................................................................................... 3
              1.1.18.   Causes of Action. . ................................................................. 3
              1.1.19.   Chapter 11 Case. .................................................................... 3
              1.1.20.   Claim. . ................................................................................... 3
              1.1.21.   Class. . .................................................................................... 3
              1.1.22.   Class 5 Distribution Amount. . .............................................. 3
              1.1.23.   Class 2 and Class 6 Settlement Agreement. . ........................ 4
              1.1.24.   Collateral. .............................................................................. 4
              1.1.25.   Confirmation. . ....................................................................... 4
              1.1.26.   Confirmation Date. ................................................................ 4
              1.1.27.   Confirmation Hearing. .......................................................... 4
              1.1.28.   Confirmation Order. . ............................................................ 4
              1.1.29.   Contingent Claim. . ................................................................ 4
              1.1.30.   Convenience Claim. ............................................................... 4
              1.1.31.   Convenience Class Election. . ................................................ 4
              1.1.32.   Creditor. ................................................................................. 4
              1.1.33.   Creditor Committee. . ............................................................ 4
              1.1.34.   Cure. . ..................................................................................... 4
              1.1.35.   Debtor. ................................................................................... 5
              1.1.36.   DIP Loan Orders. . ................................................................. 5
              1.1.37.   Disbursing Agent. .................................................................. 5
              1.1.38.   Disbursing Agent Account. . .................................................. 5
              1.1.39.   Disclosure Statement. ........................................................... 5
              1.1.40.   Disputed Claim or Disputed Equity Security. . .................... 5
              1.1.41.   Disputed Claim Reserve. ....................................................... 5
              1.1.42.   Distributable Assets. .............................................................. 6
              1.1.43.   Distribution. ........................................................................... 6
              1.1.44.   DOJ. ....................................................................................... 6
              1.1.45.   Effective Date. ....................................................................... 6
              1.1.46.   Equity Security. . .................................................................... 6
              1.1.47.   Estate. ..................................................................................... 6

|   |   |   |
|---|---|---|
| 1.1.48. | Executory Contract. | 6 |
| 1.1.49. | Exit Loan. | 6 |
| 1.1.50. | Exit Loan Documents. | 7 |
| 1.1.51. | Exit Loan Interest Rate. | 7 |
| 1.1.52. | Exit Loan Lender. | 7 |
| 1.1.53. | Exit Loan Note. | 7 |
| 1.1.54. | Exit Loan Maturity Date. | 7 |
| 1.1.55. | Final Order. | 7 |
| 1.1.56. | General Unsecured Claim. | 7 |
| 1.1.57. | Governmental Unit. | 8 |
| 1.1.58. | Governmental Unit Claims. | 8 |
| 1.1.59. | Governmental Unit Penalty Claims. | 8 |
| 1.1.60. | Holder | 8 |
| 1.1.61. | Impaired. | 8 |
| 1.1.62. | Initial Distribution Date. | 8 |
| 1.1.63. | Jet Midwest. | 8 |
| 1.1.64. | KMW. | 8 |
| 1.1.65. | KMW Leases. | 8 |
| 1.1.66. | Kraus. | 8 |
| 1.1.67. | Lien. | 8 |
| 1.1.68. | Litigation Claims. | 8 |
| 1.1.69. | Other Secured Claim. | 9 |
| 1.1.70. | Person. | 9 |
| 1.1.71. | Petition Date. | 9 |
| 1.1.72. | Plan. | 9 |
| 1.1.73. | Plan Rate. | 9 |
| 1.1.74. | Plan Supplement. | 9 |
| 1.1.75. | Priority Tax Claims. | 9 |
| 1.1.76. | Priority Unsecured Claims. | 9 |
| 1.1.77. | Professional Fees. | 9 |
| 1.1.78. | Proof of Claim. | 9 |
| 1.1.79. | Pro Rata. | 9 |
| 1.1.80. | Record Date. | 9 |
| 1.1.81. | Reinstated or Reinstatement. | 9 |
| 1.1.82. | Released Claims. | 10 |
| 1.1.83. | Released Parties. | 10 |
| 1.1.84. | Reorganized Debtor. | 10 |
| 1.1.85. | Residual Governmental Unit Claims. | 10 |
| 1.1.86. | Schedules. | 10 |
| 1.1.87. | Secured Claim. | 10 |
| 1.1.88. | Settlement and Restructuring Agreement. | 10 |
| 1.1.89. | Solitude. | 11 |
| 1.1.90. | Solitude DIP Loans. | 11 |
| 1.1.91. | Taxes. | 11 |
| 1.1.92. | Unexpired Lease. | 11 |
| 1.1.93. | Unimpaired. | 11 |
| 1.1.94. | Virginia Code. | 11 |
| 1.1.95. | Virginia SOS. | 11 |
| 1.1.96. | Woolley. | 11 |
| 1.2. | Computation of Time. | 11 |
| 1.3. | Rules of Interpretation. | 11 |
| 1.4. | Exhibits and Plan Schedules. | 12 |
| **2.** | **TREATMENT OF UNCLASSIFIED CLAIMS** | **12** |
| 2.1. | General. | 12 |

2.2. Treatment of Administrative Claims. ................................................................. 12
2.3. Treatment of Priority Tax Claims. ..................................................................... 12
2.4. Solitude DIP Loans. ........................................................................................... 12
2.5. Requests for Payment........................................................................................ 12

**3. DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS ............. 13**
3.1. Summary of Classification.................................................................................. 13
3.2. Specific Classification. ....................................................................................... 13
   3.2.1. Class 1: Other Secured Claims................................................................... 13
   3.2.2. Class 2: U.S. Department of Agriculture Secured Claim........................... 14
   3.2.3. Class 3: Priority Unsecured Claims. .......................................................... 14
   3.2.4. Class 4: Convenience Claims. .................................................................... 14
   3.2.5. Class 5: General Unsecured Claims. .......................................................... 14
   3.2.6. Class 6: Residual Governmental Unit Claims............................................ 14
   3.2.7. Class 7: Pre-Effective Date Equity Securities............................................ 14

**4. DESIGNATION OF AND PROVISIONS FOR TREATMENT OF CLASSES
OF CLAIMS UNDER THIS PLAN ............................................................................ 14**
4.1. Class 1 – Other Secured Claims. ....................................................................... 14
4.2. Class 2 – U.S. Department of Agriculture Secured Claim. ............................... 14
4.3. Class 3 – Priority Unsecured Claims.................................................................. 14
4.4. Class 4 – Convenience Claims. .......................................................................... 15
4.5. Class 5 – General Unsecured Claims. ................................................................ 15
4.6. Class 6 – Governmental Unit Residual Claims. ................................................ 15
4.7. Class 7 – Equity Securities................................................................................. 15

**5. MEANS FOR IMPLEMENTATION OF PLAN ...................................................... 16**
5.1. Plan Implementation Occurring on the Effective Date. .................................... 16
5.2. Reorganized Debtor. .......................................................................................... 16
5.3. Articles of Organization, By-laws, Operating Agreement................................ 16
5.4. Post-Effective Date Management of Reorganized Debtor. ............................... 16
5.5. Post-Effective Date Treatment of Taxes Due United States ............................. 17
5.6. Effectuation of Transactions. ............................................................................ 17
5.7. Notice of Effectiveness. ..................................................................................... 17
5.8. No Governance Action Required. ...................................................................... 17
5.9. Filing with Virginia SOS.................................................................................... 18
5.10. Creditor Committee. ........................................................................................ 18

**6. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................... 18**
6.1. Executory Contracts. ......................................................................................... 18
6.2. Approval of Assumption or Rejection................................................................ 18
6.3. Cure of Defaults. Reorganized Debtor shall Cure any defaults respecting each Executory Contract or Unexpired Lease assumed pursuant to Section 6.1 of this Plan upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such dates as may be fixed by the Bankruptcy Court or agreed upon by Debtor, and after the Effective Date, Reorganized Debtor; or (iii) the fourteenth (14th) Business Day after the entry of a Final Order resolving any dispute regarding: (a) a Cure amount; (b) the ability of Debtor or Reorganized Debtor to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease assumed pursuant to this Plan in accordance with Section 365(b)(1) of the Bankruptcy Code; or (c) any matter pertaining to assumption, assignment, or the Cure of a particular Executory Contract or an Unexpired Lease. Notwithstanding, the Cure of the KMW Leases shall be treated in accordance with the Settlement and Restructuring Agreement. ....... 18
6.4. Objection to Cure Amounts. .............................................................................. 19
6.5. Confirmation Order............................................................................................ 19
6.6. Bar Date.............................................................................................................. 19

4636-5613-2945, v.28

**7. MANNER OF DISTRIBUTION OF PROPERTY UNDER THIS PLAN .................. 19**
7.1.    Distributions.    ............................................................................................... 19
7.2.    Reserves. ........................................................................................................... 19
7.3.    Statements. . ..................................................................................................... 19
7.4.    Further Authorization............................................................................................. 20

**8. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE .................................................................................................................. 20**
8.1.    Conditions to Confirmation. ............................................................................ 20
8.2.    Conditions to Effectiveness.............................................................................. 20

**9. TITLE TO PROPERTY; DISCHARGE; INJUNCTION ................................. 20**
9.1.    Vesting of Assets. ............................................................................................ 20
9.2.    Preservation of Litigation Claims.................................................................... 21
9.3     Discharge.......................................................................................................... 21
9.4.    Compromise and Settlement. ........................................................................... 21
9.5.    Injunction. . ...................................................................................................... 21
9.6.    Releases by Debtor. ......................................................................................... 22
9.7.    Exculpation. ..................................................................................................... 22

**10. RETENTION OF JURISDICTION...................................................................... 23**
10.1.    Jurisdiction. .................................................................................................... 23

**11. MODIFICATION AND AMENDMENT OF PLAN ............................................ 24**
11.1.    Modification and Amendment. ...................................................................... 24

**12. MISCELLANEOUS ............................................................................................... 24**
12.1.    Filing of Objections to Claims. ..................................................................... 24
12.1.1.    Resolution of Objections After Effective Date.. ....................................... 24
12.1.2.    Distributions and Disputed Claims Reserve................................................ 25
12.1.3.    Late-Filed Claims.  .................................................................................... 25
12.2.    Effectuating Documents; Further Transactions; Timing.  ............................. 25
12.3.    Exemption from Transfer Taxes. ................................................................... 25
12.4.    Revocation or Withdrawal of this Plan.......................................................... 26
12.5.    Binding Effect. ............................................................................................... 26
12.6.    Governing Law................................................................................................ 26
12.7.    Modification of Payment Terms. ................................................................... 26
12.8.    Providing for Claims Payments. .................................................................... 26
12.9.    Set Offs. .......................................................................................................... 26
12.10.    Notices. ......................................................................................................... 27
12.11.    Severability. .................................................................................................. 27
12.12.    Withholding and Reporting Requirements. .................................................. 28
12.13.    Post-Confirmation Reporting.  .................................................................... 28
12.14.    Cramdown.. .................................................................................................. 28
12.15.    Quarterly Fees. ............................................................................................. 29

Dynamic International Airways, LLC, a Virginia limited liability company ("<u>Debtor</u>"), debtor and debtor-in-possession, proposes this plan of reorganization (the "<u>Plan</u>") for the resolution of Debtor's outstanding Claims and Equity Securities (as these terms are defined herein). All Creditors, Equity Security Holders (as both terms are defined herein), and other parties-in-interest should refer to the Disclosure Statement (as this term is defined herein) for a discussion of Debtor's history, assets, historical financial data, and for a summary and analysis of this Plan and certain related matters. All Holders of Claims against and Equity Securities in Debtor are encouraged to read this Plan, the Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject this Plan.

Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article 11 to this Plan, Debtor expressly reserves the right to alter, amend, strike, withdraw, or modify this Plan one or more times before its substantial consummation.

## 1. DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**1.1.** **Definitions.** For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article 1. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, in that order of priority. Whenever the context requires, such terms shall include the plural as well as the singular, the masculine gender shall include the feminine, and the feminine gender shall include the masculine. As used in this Plan, the following

**1.1.1.** **Administrative Claim.** A Claim for any cost or expense of administration of the Chapter 11 Case allowed under Sections 503(b) or 507(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including, but not limited to: (i) fees payable pursuant to 28 U.S.C. § 1930; (ii) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (iii) all Taxes arising between the Petition Date and the Effective Date, including those Taxes for which returns are not yet due, and (iv) all Professional Fees approved by the Bankruptcy Court pursuant to interim and final allowances. To the extent that a Claim is allowed pursuant to Sections 365(d)(3) and (d)(5) of the Bankruptcy Code, such Claim shall also be deemed an "Administrative Claim" under this paragraph.

**1.1.2.** **Administrative Claim Bar Date.** The end of the first Business Day occurring on or after the Thirtieth (30th) calendar day after the Effective Date.

**1.1.3.** **Affiliate.** This term has the meaning set forth in Section 101(2) of the Bankruptcy Code.

**1.1.4.** **Agencies.** Collectively, the Transportation Security Agency, U.S. Department of Agriculture, and U.S. Customs and Border Protection.

**1.1.5. Allowed Administrative Claim.** An Administrative Claim as to which no objection has been filed or, if an objection has been filed, has been resolved by the allowance of such Administrative Claim by a Final Order of the Bankruptcy Court; or which requires payment in the ordinary course and as to which there is no Final Order of the Bankruptcy Court in effect which prohibits any such payment.

**1.1.6. Allowed Claim.** A Claim or any portion thereof that is not a Disputed Claim: (i) that is allowed pursuant: (w) to this Plan or Final Order of the Bankruptcy Court, (x) to any stipulation executed prior to the Confirmation Date and approved by the Bankruptcy Court, (y) to any stipulation with Debtor or Reorganized Debtor, as applicable, executed on or after the Confirmation Date and approved by the Bankruptcy Court, or (z) to any contract, instrument, or other agreement entered into or assumed in connection herewith; (ii) proof of which, requests for payment of which, or application for allowance of which, was filed or deemed to be filed on or before the Bar Date for filing proofs of Claim or requests for payment of Claims of such type against Debtor; or (iii) if no proof of Claim is filed, which has been or hereafter is listed by Debtor in the Schedules as liquidated in amount and not disputed or contingent; and in the case of (ii) or (iii), no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or the Bankruptcy Court has entered a Final Order Allowing all or a portion of such Claim.

**1.1.7. Allowed Equity Security.** An Equity Security as of the Record Date that: (i) is allowed pursuant to this Plan; (ii) is not disputed by Debtor or Reorganized Debtor, as the case may be; or (iii) if a Disputed Equity Security, which Equity Security has been allowed in whole or in part by Final Order of the Bankruptcy Court.

**1.1.8. APHIS.** The Animal Plant Health Inspection Service.

**1.1.9. Assets.** All of the assets, property, interests, and effects, real and personal, tangible and intangible, wherever situated, of Debtor, as they exist on the Effective Date.

**1.1.10. Avoidance Actions.** All avoidance, recovery, subordination, and other similar actions preserved for the Estate under the Bankruptcy Code, including but not limited to those set forth in Sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, regardless of whether or not such action has been commenced prior to the Effective Date.

**1.1.11. Ballot.** The form of ballot or ballots that will be distributed with the Disclosure Statement to Holders of Claims entitled to vote under this Plan in connection with the solicitation of acceptances of this Plan.

**1.1.12. Bankruptcy Code.** The Bankruptcy Reform Act of 1978, Title 11, United States Code, as applicable to the Chapter 11 Case, as now in effect or hereafter amended, 11 U.S.C. §§ 101, et seq.

**1.1.13. Bankruptcy Court.** The United States Bankruptcy Court for the Middle District of North Carolina having jurisdiction over the Chapter 11 Case and, to the extent of the withdrawal of any reference under Section 157 of Title 28 of the United States Code and/or the

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

General Order of the United States District Court for the Middle District of North Carolina, pursuant to Section 151 of Title 28 of the United States Code.

**1.1.14. Bankruptcy Rules.** Collectively, the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the general, local, and chamber rules of the Bankruptcy Court as applicable to the Chapter 11 Case, as now in effect or hereinafter amended.

**1.1.15. Bar Date.** The date or dates established by the Bankruptcy Court, the Bankruptcy Code, and/or the Bankruptcy Rules for the filing of proofs of Claim for all Creditors, excepting therefrom, Administrative Claims.

**1.1.16. Business Day.** Any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.1.17. Cash.** The legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, negotiable instruments, wire transfers of immediately available funds, or other cash equivalents.

**1.1.18. Causes of Action.** All actions, causes of action, Litigation Claims, claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims and any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case.

**1.1.19. Chapter 11 Case.** The case under Chapter 11 of the Bankruptcy Code involving Debtor, having case number 17-10814, including all adversary proceedings pending in connection therewith.

**1.1.20. Claim.** Any right to payment from Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date or relating to any event that occurred before the Effective Date, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.1.21. Class.** A category of Holders of Claims or Equity Securities as classified in this Plan.

**1.1.22. Class 5 Distribution Amount.** Cash in an amount equal to Two Million and Seven Hundred and Fifty y Thousand (2,750,000.00) Dollars, less the aggregate amount of Allowed Professional Fees of the Creditor Committee approved and paid prior to the Effective Date, to be distributed to the Disbursing Agent on the Effective Date to be deposited into the Disbursing Agent Account.

Garman Turner Gordon LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

**1.1.23. Class 2 and Class 6 Settlement Agreement.** The Class 2 and Class 6 Settlement Agreement by and between the Debtor, [Kenneth Woolley] and DOJ regarding the Claims of the Agencies. Pursuant to the Class 2 and Class 6 Settlement Agreement, (i) the Claim of the U.S. Department of Agriculture regarding the APHIS Claim shall be bifurcated between an Allowed Secured Claim being treated in Class 2 and an Allowed General Unsecured Claim being treated in Class 5, (ii) the Agencies' Residual Governmental Unit Claims shall be treated solely in Class 6, and (iii) the Agencies' Governmental Unit Penalty Claims shall be included as Allowed General Unsecured Claims in Class 5. A copy of the Class 2 and Class 6 Settlement Agreement will be attached to Plan Supplement.

**1.1.24. Collateral.** All the collateral as described in the Loan Documents.

**1.1.25. Confirmation.** The entry by the Bankruptcy Court of the Confirmation Order on the docket of the Chapter 11 Case.

**1.1.26. Confirmation Date.** The date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

**1.1.27. Confirmation Hearing.** The duly-noticed initial hearing held by the Bankruptcy Court to confirm this Plan pursuant to Section 1128 of the Bankruptcy Code, and any subsequent hearing held by the Bankruptcy Court from time to time to which the initial hearing is adjourned without further notice other than the announcement of the adjourned dates at the Confirmation Hearing or by a subsequent order of the Bankruptcy Court.

**1.1.28. Confirmation Order.** The order entered by the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

**1.1.29. Contingent Claim.** A Claim which is contingent, unmatured, or unliquidated on or immediately before the Confirmation Date.

**1.1.30. Convenience Claim.** As provided for in Section 1122(b) of the Bankruptcy Code, a General Unsecured Claim for which the Allowed amount of such General Unsecured Claim is less than or equal to $2000 or an Allowed General Unsecured Claim for which the Holder thereof makes the Convenience Class Election.

**1.1.31. Convenience Class Election.** The election on the Ballot by a Holder of a Allowed General Unsecured Claim greater than $2000 to participate in the Convenience Class in full satisfaction of the Holder's Allowed General Unsecured Claim.

**1.1.32. Creditor.** Any Holder of a Claim, whether or not such Claim is an Allowed Claim.

**1.1.33. Creditor Committee.** The Official Committee of Unsecured Creditors appointed pursuant to Section 1102(a)(1) of the Bankruptcy Code on August 3, 2017 [ECF 98].

**1.1.34. Cure.** The distribution on the Effective Date or as soon thereafter as practicable of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an Executory Contract or Unexpired Lease pursuant to Section 365(b) of the Bankruptcy Code, or with respect to any other debt instrument,

Garman Turner Gordon LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

in an amount equal to: (i) all unpaid monetary obligations due under such executory contract or unexpired lease or required to pay to bring current the debt instrument and thereby reinstate the debt and return to the pre-default conditions to the extent such obligations are enforceable under the Bankruptcy Code or applicable non-bankruptcy law; and (ii) with respect to any debt instrument, if a claim arises from a debtor's failure to perform any non-monetary obligation as set forth in Sections 1124(2)(C) and 1124(2)(D) of the Bankruptcy Code, payment of the dollar amount which compensates the Holder of such a claim for any actual pecuniary loss incurred by such Holder as a result of any such failure and the dollar amount of the Claim that is established by the Holder's sworn declaration and accompanying admissible evidence filed with the Bankruptcy Court and served upon Debtor's counsel on or before such date ordered by the Bankruptcy Court for the filing of objections to the disclosure statement.

**1.1.35. Debtor.  Dynamic International Airways, LLC.**, the debtor and debtor-in-possession in the Chapter 11 Case pursuant to Section 1108 of the Bankruptcy Code.

**1.1.36. DIP Loan Orders.**  Collectively, the (i) *Interim Order (1) Authorizing Debtor to Obtain Post-Petition Financing, (2) Granting Administrative Expense, and (3) Setting and Prescribing the Form and Manner of Notice for a Further Hearing* [ECF No. 99], (ii) *Second Interim Order (1) Authorizing Debtor to Obtain Post-Petition Financing, (2) Granting Administrative Expense, and (3) Setting and Prescribing the Form and Manner of Notice for a Further Hearing* [ECF No. 185], (iii) *Third Interim Order (1) Authorizing Debtor to Obtain Post-Petition Financing, (2) Granting Administrative Expense, and (3) Setting and Prescribing the Form and Manner of Notice for a Further Hearing* [ECF No. 258], and (iv) *Fourth Interim Order (1) Authorizing Debtor to Obtain Post-Petition Financing, (2) Granting Administrative Expense, and (3) Setting and Prescribing the Form and Manner of Notice for a Further Hearing* [ECF No. 344].

**1.1.37. Disbursing Agent.**  A Person designated by the Creditor Committee to serve as disbursing agent under this Plan with regard to Disbursements to Holders of Class 4 Allowed General Unsecured Claims.

**1.1.38. Disbursing Agent Account.**  The bank account established prior to the Effective Date by the Disbursing Agent into which the Class 5 Distribution Amount is deposited.  The Disbursing Agent Account shall be under the sole authority of the Disbursing Agent.

**1.1.39. Disclosure Statement.**  The disclosure statement that relates to this Plan, as amended, supplemented, or modified from time to time, describing this Plan that is prepared and distributed in accordance with, among others, Sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

**1.1.40. Disputed Claim or Disputed Equity Security.**  A Claim or Equity Interest or any portion thereof that is:  (i) subject to timely objection interposed by a Debtor, Reorganized Debtor, or any party-in-interest entitled to file and prosecute such objection in a Debtor's Chapter 11 Case, if at such time such objection has not been withdrawn or determined by Final Order; or (ii) a Claim that is listed by a Debtor as disputed, unliquidated or contingent in the Schedules, with respect to which no proof of claim has been timely filed; provided, however, that the Bankruptcy Court may estimate a Disputed Claim for purposes of allowance pursuant to Section 502(c) of the Bankruptcy Code.  The term "Disputed," when used to modify a reference

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

5

in this Plan to any Claim or Equity Interest (or Class of Claims or Equity Interest), shall mean a Claim or Equity Interest (or any Claim or Equity Interest in such Class) that is a Disputed Claim or Disputed Equity Interest.  In the event there is a dispute as to classification or priority of a Claim or Equity Interest, it shall be considered a Disputed Claim or Disputed Equity Interest in its entirety.  Until such time as a Contingent Claim becomes fixed and absolute, such Claim shall be treated as a Disputed Claim and not an Allowed Claim for purposes related to allocations and distributions under this Plan.

**1.1.41. Disputed Claim Reserve.**  A reserve established by the Disbursing Agent or the Reorganized Debtor, as applicable, to hold in one or more accounts Cash or other Assets equal to the aggregate amount thereof that would have been distributed in accordance with the terms of this Plan on account of a Disputed Claim.

**1.1.42. Distributable Assets.**  Shall mean the Assets distributable to Allowed Claims and unclassified Claims in accordance with this Plan by Reorganized Debtor and the Disbursing Agent, as applicable.

**1.1.43. Distribution.**  Any distribution by Debtor, Reorganized Debtor or the Disbursing Agent of Distributable Assets to the Holders of Allowed Claims or Equity Securities as of the Record Date.

**1.1.44. DOJ.**  The United States Department of Justice.

**1.1.45. Effective Date.**  The latest to occur of: (i) the first Business Day that is at least fourteen (14) days after the Confirmation Date and on which no stay of the Confirmation Order is in effect; and (ii) the first (1st) Business Day on which all of the conditions set forth in Article 8 to this Plan have been satisfied or waived.

**1.1.46. Equity Security.**  An equity security as the term is defined in Section 101(16) of the Bankruptcy Code and includes the membership interests in Debtor and any warrants, options, redemption rights, dividend rights, liquidation preferences, rights to purchase any such Equity Security, or any other rights related thereto**.**

**1.1.47. Estate.**  The estate created for Debtor in the Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code.

**1.1.48. Executory Contract.**  A contract to which Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.1.49. Exit Loan.**  The advances from time to time by the Exit Loan Lender to Reorganized Debtor in accordance with and pursuant to this Plan in the amount necessary to pay all Allowed Administrative Claims (except to the extent the Creditor Committee's Professional Fees are being paid from the Disbursing Agent Account) and Allowed Claims as provided for in Class 4 or such additional amount as agreed to by Reorganized Debtor and the Exit Loan Lender. On the Effective Date the Exit Loan Lender shall advance to the Reorganized Debtor the amount necessary to pay the Allowed Administrative Claims, Allowed Claims in Class 2 and the Class 5 Distribution Amount.  Subsequent to the Effective Date, the Exit Loan Lender shall make additional advances to the Reorganized Debtor sufficient in amount for the Reorganized Debtor to make all payments required on Allowed Administrative Claims (except the Creditor

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

6

Committee's Professional Fees which will be paid from the Disbursing Agent Account), Class 2, Class 6 and Allowed Claims in Class 3 which become Allowed Claims subsequent to the Effective Date. Commencing on the first (1st) Business Day of the first (1st) full calendar month following the Effective Date, and on the first (1st) Business Day of each subsequent month up to and through the Exit Loan Maturity Date, Reorganized Debtor shall pay to the Exit Loan Lender monthly interest payments on the outstanding balance of the Exit Loan Note at the Exit Loan Interest Rate. The unpaid balance of the Exit Loan Promissory Note shall be due and payable on the Exit Loan Maturity Date.

**1.1.50. Exit Loan Documents**. The Exit Loan Agreement, Exit Loan Promissory Note, Exit Loan Security Documents and any related documents to be dated as of the Effective Date. The Exit Loan Documents shall be substantially in the form to be filed in the Plan Supplement no later than ten (10) days prior to the commencement of the Confirmation Hearing.

**1.1.51. Exit Loan Interest Rate**. The rate of six (6) percent per annum.

**1.1.52. Exit Loan Lender**. Woolley and/or each other Person as designated by Woolley having a right of participation in, under, or to the Exit Loan or any rights, title, or interest to or under the Exit Loan Documents.

**1.1.53. Exit Loan Note**. The Promissory Note to be executed by Reorganized Debtor on the Effective Date to evidence the Exit Loan.

**1.1.54. Exit Loan Maturity Date.** Five (5) years from the Effective Date.

**1.1.55. Final Order.** An order, judgment, or other decree of the Bankruptcy Court, or other court of competent jurisdiction, entered on the docket of such court, that has not been reversed, reconsidered, stayed, modified, or amended, that is in full force and effect, and as to which order or judgment: (i) the time to appeal, seek review or rehearing, or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand, or certiorari is pending; (ii) any appeal taken or petition for certiorari or request for reconsideration or further review or rehearing filed: (a) has been resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, or certiorari was sought; or (b) has not yet been resolved by such highest court, but such order has not been stayed pending appeal. Notwithstanding the foregoing, the Confirmation Order shall specifically become a Final Order on the first Business Day that is fourteen (14) days after the entry of such Confirmation Order unless any appeal of such Confirmation Order was accompanied by a stay pending appeal.

**1.1.56. General Unsecured Claim.** A Claim that is not secured by a Lien or other charge against or interest in property in which the Estate has an interest and is not (i) a Section 507(a)(2) or 507(a)(3) Claim, (ii) an Administrative Claim, (iii) a Priority Tax Claim, (iv) a Priority Unsecured Claim, or (v) a Residual Governmental Unit Claim. General Unsecured Claims shall also include all Claims arising under Section 502(g) of the Bankruptcy Code and Governmental Unit Penalty Claims. Pursuant to the Settlement and Restructuring Agreement the Woolley Secured Claim will be a General Unsecured Claim and the Claims of Woolley (including the Woolley Secured Claim), Kraus and Jet Midwest will be General Unsecured Claims and treated as provided for in Section 4.5.3. of this Plan.

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

7

**1.1.57. Governmental Unit.** The term shall have the meaning set forth in Section 101(27) of the Bankruptcy Code.

**1.1.58. Governmental Unit Claims**. Any and all Claims of a Governmental Unit which is (i) a tax on or measured by income or gross receipts, (ii) a property tax, (iii) an employment tax on a wage, salary or commission of a kind as specified in Section 507(a)(4) of the Bankruptcy Code, (iv) an excise tax, (v) a customs duty arising out if the importation of merchandise and (vi) a penalty related to (i) through (v) provided it is in compensation for an actual pecuniary loss.

**1.1.59. Governmental Unit Penalty Claims.** Any and all Claims of a Governmental Unit for penalties and similar assessments not in compensation for an actual pecuniary loss.

**1.1.60. Holder.** An entity holding an Equity Security or Claim.

**1.1.61. Impaired.** Impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.1.62. Initial Distribution Date.** The first Business Day following the date that is thirty (30) days after the Effective Date.

**1.1.63. Jet Midwest.** Collectively, Jet Midwest, Inc., Jet Midwest Group and Jet Midwest Technik, each an affiliate of Kraus, but does not include Jet Midwest International.

**1.1.64. KMW.** Collectively, KMW Leasing IV, LLC, KMW Leasing IX, LLC, KMW Leasing N796JM, LLC, KMW Leasing VII, LLC, and KMW Leasing X, LLC, each a lessor under the KMW Leases.

**1.1.65. KMW Leases.** The leased Boeing 767 aircraft from KMW, being a (i) Boeing 767-23B bearing serial number 23974 and U.S. Registration Mark N253MY leased from KMW Leasing IV, LLC; (ii) Boeing 767-246 bearing serial number 23213 and U.S. Registration Mark N767DA leased from KMW Leasing IX, LLC; (iii) Boeing 767-336 bearing serial number 24339 and U.S. Registration Mark N796MY leased from KMW Leasing N796JM, LLC; (iv) Boeing 767-336 bearing serial number 25443 and U.S. Registration Mark N254MY leased from KMW Leasing VII, LLC; (v) Boeing 767-336 bearing serial number 24343 and U.S. Registration Mark N740JM leased from KMW Leasing X, LLC; and (vi) Boeing 767-300ER bearing serial number 24342 and U.S. Registration Mark N793JM leased from KMW Leasing X, LLC.

**1.1.66. Kraus.** Paul Kraus, an individual.

**1.1.67. Lien.** This term shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

**1.1.68. Litigation Claims.** All rights, claims, torts, liens, liabilities, obligations, actions, causes of action, Avoidance Actions except as otherwise provided for in this Plan, derivative actions, proceedings, debts, contracts, judgments, damages and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise, that Debtor or the Estate may have against any Person, including but not limited to, those listed on <u>Schedule 1.1.68</u> hereto. Failure to list a Litigation Claim on <u>Schedule 1.1.68</u> shall not constitute a waiver or release by Debtor or Reorganized Debtor of such Litigation Claim.

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

8

**1.1.69. Other Secured Claim**. A Secured Claim other than a Secured Claim held by Woolley or the U.S. Department of Agriculture.

**1.1.70. Person.** An individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization or government, governmental unit, or any subdivision thereof or any other entity.

**1.1.71. Petition Date.** July 19, 2017, the date on which a voluntary Chapter 11 petition was filed by Debtor, thereby commencing the Chapter 11 Case.

**1.1.72. Plan.** This first amended plan of reorganization, either in its present form or as it may be amended, supplemented, or modified from time to time, including all exhibits and schedules annexed hereto or referenced herein.

**1.1.73. Plan Rate.** The Federal judgment rate of interest as of the Petition Date.

**1.1.74. Plan Supplement**. The supplement to this Plan to be filed no later than 20 days prior to the commencement of the Confirmation Hearing, which shall include post-Effective Date operative documents, the Settlement and Restructuring Agreement, the Class 2 and Class 6 Settlement Agreement, and Exit Loan Documents.

**1.1.75. Priority Tax Claims**. Any and all Governmental Unit Claims accorded priority in right of payment under Section 507(a)(8) of the Bankruptcy Code.

**1.1.76. Priority Unsecured Claims.** Any and all Claims accorded priority in right of payment under Section 507(a) of the Bankruptcy Code except for Section 507(a)(8).

**1.1.77. Professional Fees.** The Administrative Claims for compensation and reimbursement submitted pursuant to Sections 327, 328, 330, 331, or 503(b) of the Bankruptcy Code of Persons: (i) employed pursuant to an order of the Bankruptcy Court under Sections 327, 328 or 1102 of the Bankruptcy Code; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b) of the Bankruptcy Code or by other Final Order.

**1.1.78. Proof of Claim.** A proof of Claim filed by a Creditor in accordance with Section 501 of the Bankruptcy Code and Bankruptcy Rule 3001.

**1.1.79. Pro Rata.** The ratio of an Allowed Claim or Allowed Equity Security in a particular class to the aggregate amount of all such Allowed Claims or Allowed Equity Securities in any such Class.

**1.1.80. Record Date.** The Confirmation Date for the purpose of determining the Holders of Equity Securities.

**1.1.81. Reinstated or Reinstatement.** These terms shall mean: (i) leaving unaltered the legal, equitable, and contractual rights of the Holder of a Claim so as to leave such Claim Unimpaired in accordance with Section 1124 of the Bankruptcy Code; or (ii) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (a) Curing any such

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

9

default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code; (b) reinstating the maturity of such Claim as such maturity existed before such default; (c) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (d) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants, or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required in order to accomplish Reinstatement.

**1.1.82. Released Claims.**   The Claims of Woolley, Kraus and Jet Midwest released as provided for in the Settlement and Restructuring Agreement.

**1.1.83. Released Parties.**  The Released Parties include, (i)  Woolley; (ii) Kraus; (iii) KMW; (iv) Jet Midwest, and (v) the Released Parties' current and former Affiliates, estates, heirs, managed accounts or funds, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals, in each case in their capacity as such.

**1.1.84. Reorganized Debtor.**   Debtor as reorganized pursuant to this Plan after the Effective Date by merger, consolidation, or otherwise.

**1.1.85. Residual Governmental Unit Claims**.   All pre-Petition Date Claims of Governmental Units which are neither Priority Tax Claims nor Governmental Unit Penalty Claims but are subject to the Class 2 and Class 6 Settlement Agreement.

**1.1.86. Schedules.**  The schedules of assets and liabilities and any amendments thereto filed by Debtor with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code.

**1.1.87. Secured Claim.**  A Claim that is secured by a Lien against property of the Estate to the extent of the value of any interest in such property of the Estate securing such Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with Section 553 of the Bankruptcy Code, in either case as determined pursuant to Section 506(a) of the Bankruptcy Code.

**1.1.88. Settlement and Restructuring Agreement.** The Settlement and Restructuring Agreement between Debtor, Solitude and the Released Parties, a copy of which will be included in the Plan Supplement, which agreement provides for One Hundred (100) percent of the Equity Securities of the Reorganized Debtor to be issued to Solitude as provided for in <u>Section 5.1.6</u> and the Releases of the Released Parties as provided for in <u>Section 9.6</u> below, on the Effective Date in exchange for; (a) the Exit Loan Lender  entering into the Exit Loan and Exit Loan Documents and commencing funding as provided for therein,; (b) the Discharge of  Woolley's Pre-Petition Date Claims without receiving a Distribution related thereto; (c)  the treatment of the Woolley's Secured Claim as an Allowed General Unsecured Claim to be Discharged without a Distribution

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

10

related thereto; (d) Solitude exchanging all Claims related to the Solitude DIP Loans for the Equity Securities of Reorganized Debtor; (e) KMW consenting to the assumption of the KMW Leases in accordance with Article 6 of this Plan; and (f) Kraus and Jet Midwest agreeing to the Discharge of all pre-Petition Date Claims without receiving a Distribution related thereto.

**1.1.89. Solitude.** Solitude Strategies, LLC, a Nevada limited liability company, of which Woolley is the sole member and manager.

**1.1.90. Solitude DIP Loans.** The administrative loans from Solitude to the Debtor subject to Section 364(c)(1) of the Bankruptcy Court and approved pursuant to the DIP Loan Orders.

**1.1.91. Taxes.** All income, gaming, franchise, excise, sales, use, employment, withholding, property, payroll, or other taxes, assessments of governmental charges, together with any interest penalties, additions to tax, fines, and similar amounts relating thereto, whether or not yet assessed or imposed, collected by, or due to any federal, state, local or foreign governmental authority.

**1.1.92. Unexpired Lease.** A lease of real property or personal property to which Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.1.93. Unimpaired.** This term has the meaning as set forth in Section 1124 of the Bankruptcy Code.

**1.1.94. Virginia Code.** The Commonwealth of Virginia Code.

**1.1.95. Virginia SOS.** The Secretary of State of the Commonwealth of Virginia.

**1.1.96. Woolley.** Kenneth Woolley, an individual.

**1.2. Computation of Time.** In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

**1.3. Rules of Interpretation.** For purposes of this Plan only; (i) any reference in this Plan to a contract, instrument, release, or other agreement or documents being in particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (iii) unless otherwise specified, all references in this Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to this Plan; (iv) the words "herein," "hereof," "hereto," and "hereunder" refer to this Plan in its entirety rather than to a particular portion of this Plan; (v) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and (vi) the rules of construction and definitions set forth in Sections 101 and 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply unless otherwise expressly provided.

**1.4.** **Exhibits and Plan Schedules.** All exhibits and schedules attached to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

**2.** **TREATMENT OF UNCLASSIFIED CLAIMS**

**2.1.** **General.** Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Claims against Debtor set forth in this Article 2 are not classified within any Classes. The Holders of such Claims are not entitled to vote on this Plan. The treatment of the Claims set forth below is consistent with the requirements of Section 1129(a)(9)(A) of the Bankruptcy Code.

**2.2.** **Treatment of Administrative Claims.** Each Allowed Administrative Claim shall be paid by Reorganized Debtor or the Disbursing Agent, as applicable, upon the latest of: (i) the Effective Date or as soon thereafter as is practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable, (iii) the fourteenth (14th) Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the Holder of such Claim and Reorganized Debtor shall agree upon. With respect to payment of the Allowed Professional Fees of the Creditor Committee, (i) the Debtor shall pay the fees approved prior to the Effective Date, and (ii) the Disbursing Agent shall pay the fees approved after the Effective Date.

**2.3.** **Treatment of Priority Tax Claims.** Each Allowed Priority Tax Claim shall be paid in full in Cash by the Reorganized Debtor in equal monthly installments beginning the latest of: (i) the Effective Date or as soon thereafter as is practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable, (iii) the fourteenth (14th) Business Day after such  Priority Tax Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the Holder of such Priority Tax Claim and Reorganized Debtor shall agree upon and on the same day of each successive month for a period ending not later than five (5) years after the Petition Date. Until the Allowed Priority Tax Claim is paid in full, the unpaid balance shall accrue statutory interest from the Effective Date faxed at the applicable federal or state statutory rate in effect with respect to such Priority Tax Claim on the Petition Date.

**2.4.** **Solitude DIP Loans.** On the Effective Date, the aggregate of the Solitude DIP Loans shall be converted into the right to receive one hundred (100) percent of the Equity Security in the Reorganized Debtor, calculated on a fully diluted basis.

**2.5.** **Requests for Payment.** All requests for payment of Administrative Claims against Debtor and all final applications for allowance and disbursement of Professional Fees must be filed by the Administrative Claims Bar Date or the Holders thereof shall be forever barred from asserting such Administrative Claims against Debtor and the Reorganized Debtor. All Professional Fees applications must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order, and all other orders governing payment of Professional Fees. Unless otherwise ordered by the Bankruptcy Court, from and after the Effective Date, no professional shall be required to file fee applications with the Bankruptcy Court and Reorganized Debtor may pay all professionals in the ordinary course for fees and expenses incurred after the Effective Date.

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

12

**3.     DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS**

        Pursuant to this Plan and in accordance with Section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors and the Holders of Equity Securities (except unclassified Claims) are placed in the Classes described below.  A Claim or Equity Security is classified in a particular Class only to the extent that the Claim or Equity Security qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim or Equity Security qualifies within the description of such other Classes.  A Claim or Equity Security is also classified in a particular Class only to the extent that such Claim or Equity Security is an Allowed Claim or Allowed Equity Security in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.  With respect to Classes of Claims described as Unimpaired under this Plan, except as otherwise provided under this Plan, nothing shall affect the rights and legal and equitable defenses of Debtor and Reorganized Debtor regarding such Claims classified as Unimpaired under this Plan, including but not limited to, all rights in respect of legal and equitable defenses to setoff or recoupment against such Claims.

        **3.1.     Summary of Classification.**

| Class | Description | Treatment |
|-------|-------------|-----------|
| Class 1 | Other Secured Claims | Unimpaired.<br>    No Solicitation required. |
| Class 2 | U.S. Department of Agriculture Secured Claim | Impaired<br>    Solicitation required. |
| Class 3 | Priority Unsecured Claims | Unimpaired.<br>    No solicitation required. |
| Class 4 | Convenience Claims | Impaired<br>    Solicitation required. |
| Class 5 | General Unsecured Claims | Impaired.<br>    Solicitation required. |
| Class 6 | Residual Governmental Unit Claims | Impaired.<br>    Solicitation required. |
| Class 7 | Pre-Effective Date Equity Security | Impaired.<br>    No solicitation required. |

        **3.2.     Specific Classification.**

        **3.2.1.  Class 1:  Other Secured Claims.**  Class 1 consists of the Other Secured Claims. Each Holder of an Other Secured Claim shall be considered to be its own separate subclass within Class 1, and each subclass shall be deemed to be a separate class for purposes of this Plan. Debtor may add additional other Secured Creditors as an additional separate subclass.

**3.2.2.**  Class 2: U.S.  Department of Agriculture Secured Claim.  Class. 2 consists of the Secured Claim of the U.S. Department of Agriculture pursuant to 21 U.S.C.136a(c)(5) providing for a statutory Lien in certain personal property of the Debtor as of the Petition Date.

**3.2.3.**  Class 3:  Priority Unsecured Claims.  Class 3 consists of the Priority Unsecured Claims.

**3.2.4.**  Class 4: Convenience Claims.  Class 4 consists of the Convenience Claims.

**3.2.5.**  Class 5:  General Unsecured Claims.  Class 5 consists of the General Unsecured Claims but shall not include Holders of General Unsecured Claims which make the Convenience Class Election.

**3.2.6.**  Class 6:  Residual Governmental Unit Claims. Class 6 consists of the Residual Governmental Unit Claims.

**3.2.7.**  Class 7:   Pre-Effective Date Equity Securities.  Class 7 consists of the Equity Securities of Debtor prior to the Effective Date.

**4.    DESIGNATION OF AND PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS UNDER THIS PLAN**

**4.1.    Class 1 – Other Secured Claims.**   Each Allowed Other Secured Claim, if any, shall, in full and final satisfaction of such Claim, be paid in accordance with its terms, or if none, then in full in Cash by Reorganized Debtor upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first Business Day following the fourteenth (14th) day after such Claim is Allowed; and (iv) such date as agreed upon by the Holder of such Claim and the Debtor, and after the Effective Date, by Reorganized Debtor.

Creditors in Class 1 are Unimpaired under this Plan, deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote on this Plan.

**4.2.    Class 2 – U.S. Department of Agriculture Secured Claim.**  In accordance with the Class 2 and Class 6 Settlement Agreement, the US. Department of Agriculture shall receive in full and complete satisfaction of its Allowed Secured Claim One Hundred and Fifty Thousand (150,000.00) Dollars in Cash on the first (1st) Business Day following the tenth (10th) day after the Effective Date.

The U.S. Department of Agriculture is Impaired under this Plan and is entitled to vote on this Plan

**4.3.    Class 3 – Priority Unsecured Claims.**  Each Allowed Priority Unsecured Claim, if any, shall, in full and final satisfaction of such Claims, be paid in full in Cash on the latest of: (i) the Initial Distribution Date, or as soon thereafter as is practical; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as is practicable; (iii) the fourteenth (14th) Business Day after such Claim is Allowed, or as soon thereafter as is practicable; or (iv) such date as the Holder of such Claim and Debtor or Reorganized Debtor, as applicable, have agreed or shall agree, plus pre-Petition Date interest due under applicable bankruptcy or non-

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

14

bankruptcy law and claimed in a Proof of Claim by such Holder to the extent approved by the Bankruptcy Court or as included in the Schedules by the Debtor.

Class 3 is Unimpaired under this Plan, and therefore, the Holders of Class 3 Claims, if any, are deemed to have accepted this Plan and are not entitled to vote on this Plan.

**4.4.     Class 4 – Convenience Claims.**  Except to the extent that a Holder of an Allowed Convenience Claim agrees to less favorable treatment, each Holder of an Allowed Convenience Claim shall, in full and final satisfaction of such Allowed Convenience Claim be paid in 6 equal monthly installments commencing on the Initial Distribution Date, the lesser of (i) the Allowed amount of such Claim, or (ii) Two Thousand (2,000.00) Dollars.

Class 4 is impaired under this Plan, and the Holders of Allowed Convenience Claims are entitled to vote on this Plan.

**4.5.     Class 5 – General Unsecured Claims**.  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment;

**4.5.1.**  Each Holder of an Allowed General Unsecured Claim, shall, in full and final satisfaction of such Claim, be paid in Cash its Pro Rata share of the Class 5 Distribution Amount.

**4.5.2.**  Deducted from the Class 5 Distribution Amount shall be (i) all costs and expenses of the Disbursing Agent and the Disbursing Agent Account, and (ii) the Allowed Professional Fees of the Creditor Committee approved after the Effective Date.

**4.5.3.**  On the Effective Date, provided that the Settlement and Restructuring Agreement is approved and this Plan as confirmed is consistent with the relief provided for in the Settlement and Restructuring Agreement, the Claims of Woolley, Kraus and Jet Midwest and the KMW Cure payments shall be subordinated to the payment of all other Allowed General Unsecured Claims and unclassified Allowed Claims   and shall not receive any Distribution under this Plan.

Class 5 is Impaired under this Plan.  The Holders of the Class 5 Allowed General Unsecured Claims are entitled to vote on this Plan.

**4.6.     Class 6 – Governmental Unit Residual Claims. .**  In accordance with the Class 2 and Class 6 Settlement Agreement, the Agencies shall receive in full and complete satisfaction of their Allowed Governmental Unit Residual Claims the sum of Eight Hundred Thousand (800,000.00) Dollars in Cash on the first (1st) Business Day following the tenth (10th) day after the Effective Date.

Class 6 is Impaired under this Plan. The Holders of the Class 6 Allowed Governmental Unit Residual Claims are entitled to vote on this plan.

**4.7.     Class 7 – Equity Securities.**  On the Effective Date the Equity Securities of the Debtor shall be cancelled and Holders of Class 7 Equity Securities shall not receive any Distribution on account of such Equity Interests.

Class 7 is Impaired under this Plan.  The Holders of Class 7 Equity Securities are not entitled to vote on this Plan and are deemed to have voted no on this Plan.

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

15

**5.      MEANS FOR IMPLEMENTATION OF PLAN**

**5.1.      Plan Implementation Occurring on the Effective Date.**  On the Effective Date, except as otherwise provided, without any further action by Debtor or Reorganized Debtor, all of Debtor's assets shall vest in Reorganized Debtor and the following events shall occur in the following sequence:

**5.1.1.**  The Settlement and Restructuring Agreement shall be executed.

**5.1.2.**  If not already executed, the Class 2 and Class 6 Settlement Agreement shall be executed.

**5.1.3.**  The Exit Loan Documents shall be executed by the Reorganized Debtor and the Exit Loan Lender, as applicable, and the Exit Loan Note shall be delivered to the Exit Loan Lender.  The initial funding shall be funded.

**5.1.4.**  All Litigation Claims shall be assigned and transferred to Reorganized Debtor.

**5.1.5.**  On the Effective Date the Class 5 Distribution Amount shall be transferred to the Disbursing Agent for deposit into the Disbursing Agent Account.

**5.1.6.**  Any additional Distributions required to be made by the Debtor or Reorganized Debtor, as applicable, pursuant to this Plan the Holders of Allowed Claims on the Effective Date shall be made.

**5.1.7.**  One Hundred (100) Percent of the Equity Securities of Reorganized Debtor shall be issued to Solitude.

**5.2.      Reorganized Debtor.**  From and after the Effective Date shall continue to exist as a separate entity in accordance with applicable law.  Debtor's existing articles of organization, by-laws, and operating agreements (as amended, supplemented, or modified) will continue in effect for Reorganized Debtor following the Effective Date, except to the extent that such documents are amended in conformance with this Plan or by proper governance action after the Effective Date.

**5.3.      Articles of Organization, By-laws, Operating Agreement.**  The articles of organization, by-laws, and/or operating agreement, as applicable, of Debtor shall be amended as necessary to satisfy the provisions of this Plan and the Bankruptcy Code and shall include, among other things, pursuant to Section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by Section 1123(a)(6) of the Bankruptcy Code

**5.4.      Post-Effective Date Management of Reorganized Debtor.**  From and after the Effective Date, Reorganized Debtor will continue to be managed by Debtor's pre-petition managers, which management may subsequently be modified to the extent provided by Reorganized Debtor's articles of organization, by-laws, and operating agreement (as amended, supplemented, or modified).

**5.5.** **Post-Effective Date Treatment of Taxes Due United States.** From and after the Effective Date:

**5.5.1.** The Reorganized Debtor shall (i) segregate and hold separate and apart all moneys withheld from employees or collected from others for Taxes under any internal revenue laws of the United States, (ii) deposit the moneys so withheld or collected in a separate bank account in trust for the United States not later than within the calendar week next after such collecting and withholding, (iii) pay from the separate bank account to the Internal Revenue Service Insolvency Manager or a delegate as identified in writing by the Internal Revenue Service, the proper amounts at the time and in the manner prescribed by applicable internal revenue laws; (iv) timely file all state and federal tax returns required of the Reorganized Debtor under non-Bankruptcy Code law and regulations; and (v) not grant a Lien nor create a priority as to payment in the moneys collected for Taxes due the United States.

**5.5.2.** Any refunds or other credits to which the Reorganized Debtor may become entitled for any reason before payment in full of the Allowed Priority Tax Claims to be paid pursuant to Section 2.3 of this Plan may be credited or applied to the last payment required to be made on the Allowed Priority Tax Claims.

**5.5.3.** If the Reorganized Debtor fails to make any payment required pursuant to Section 2.3 of this Plan, fails to comply with Section 5.5.1(i), (ii), (iii) or (iv) of this Plan within 21 days of the due date for such action, or if the Reorganized Debtor violates Section 5.5.1(v) of this Plan, then the IRS Insolvency Manager or delegate may, in his or her sole discretion, declare in writing the Reorganized Debtor in default of the provisions of Sections 2.3 and 5.5 of this Plan. In the event that the Reorganized Debtor fails to cure the default within 21 days of receipt of the writing, the IRS Insolvency Manager or delegate may, in his or her sole discretion, accelerate and declare as immediately due and owing the remaining balance of the Allowed Priority Tax Claim together with any unpaid post-Effective Date Taxes. The Internal Revenue Service may collect any amounts due and owing through the administrative collection provisions of the Internal Revenue Code or by any other procedure authorized by law.

**5.6.** **Effectuation of Transactions.** On and after the Effective Date, the appropriate managers or members of Debtor are authorized to issue, execute, deliver, and consummate the transactions contemplated by or described in this Plan in the name of and on behalf of Reorganized Debtor without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, rule, or any requirements of further action, vote, or other approval or authorization by any Person

**5.7.** **Notice of Effectiveness.** When all of the steps contemplated by Section 8.2 have been completed or waived, Reorganized Debtor shall file with the Bankruptcy Court and serve upon all Creditors and all potential Holders of Administrative Claims known to Reorganized Debtor (whether or not disputed), a notice of Effective Date of Plan. The notice of Effective Date of Plan shall include notice of the Administrative Claim Bar Date

**5.8.** **No Governance Action Required.** As of the Effective Date: (i) the adoption, execution, delivery, and implementation or assignment of all contracts, leases, instruments, releases, and other agreements related to or contemplated by this Plan; and (ii) the other matters provided for under or in furtherance of this Plan involving corporate action to be taken by or

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

17

required of Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without further order of the Bankruptcy Court or any requirement of further action by the members or managers of Debtor

**5.9.    Filing with Virginia SOS.**  To the extent required by the Virginia Code, on or as soon as reasonably practical after the Effective Date, a certified copy of this Plan and the Confirmation Order shall be filed with the Virginia SOS. Again, to the extent applicable, Debtor, from the Confirmation Date until the Effective Date, is authorized and directed to take any action or carry out any proceeding necessary to effectuate this Plan pursuant to applicable Virginia Code provisions.

**5.10.    Creditor Committee.**  On the Effective Date the Creditor Committee shall be disbanded and all authorities granted the Creditor Committee pursuant to Sections 1102 and 1103 of the Bankruptcy Code shall be terminated without further order of the Bankruptcy Court.

## 6.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1.    Executory Contracts.**  Except for Executory Contracts and Unexpired Leases specifically addressed in this Plan, assumed pursuant to prior order of the Bankruptcy Court, or set forth on the schedule of Rejected Executed Contracts and Unexpired Leases attached as Schedule 6.1 hereto (which may be supplemented and amended up to the date the Bankruptcy Court enters the Confirmation Order), all Executory Contracts and Unexpired Leases that exist on the Confirmation Date shall be deemed rejected by Debtor on the Effective Date.

**6.2.    Approval of Assumption or Rejection.**  Entry of the Confirmation Order shall constitute as of the Effective Date: (i) approval, pursuant to Bankruptcy Code Section 365, of the rejection by Reorganized Debtor of each Executory Contract and Unexpired Lease to which Debtor is a party that is not listed on Schedule 6.1, not otherwise provided for in this Plan, and neither assigned, assumed and assigned, nor rejected by separate order of the Bankruptcy Court prior to the Effective Date; and (ii) rejection by Debtor of each Executory Contract and Unexpired Lease to which Debtor is a party that is not listed on Schedule 6.1.  Upon the Effective Date, each counter party to an assumed Executory Contract or Unexpired Lease listed shall be deemed to have consented to an assumption contemplated by Section 365(c)(1)(B) of the Bankruptcy Code, to the extent such consent is necessary for such assumption.  To the extent applicable, all Executory Contracts or Unexpired Leases of Reorganized Debtor assumed pursuant to this Article 6 shall be deemed modified such that the transactions contemplated by this Plan shall not be a "change of control," regardless of how such term may be defined in the relevant Executory Contract or Unexpired Lease and any required consent under any such Executory Contract or Unexpired Lease shall be deemed satisfied by confirmation of this Plan.

**6.3.    Cure of Defaults.**  Reorganized Debtor shall Cure any defaults respecting each Executory Contract or Unexpired Lease assumed pursuant to Section 6.1 of this Plan upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such dates as may be fixed by the Bankruptcy Court or agreed upon by Debtor, and after the Effective Date, Reorganized Debtor; or (iii) the fourteenth (14th) Business Day after the entry of a Final Order resolving any dispute regarding: (a) a Cure amount; (b) the ability of Debtor or Reorganized Debtor to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease assumed pursuant to this Plan in accordance with Section 365(b)(1) of the Bankruptcy Code; or (c) any matter pertaining to assumption, assignment, or the Cure of a particular Executory

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

18

Contract or an Unexpired Lease. Notwithstanding, the Cure of the KMW Leases shall be treated in accordance with the Settlement and Restructuring Agreement.

**6.4.** **Objection to Cure Amounts.** Any party to an Executory Contract or Unexpired Lease who objects to the Cure amount determined by Debtor to be due and owing must file and serve an objection on Debtor's counsel no later than thirty (30) days after the Effective Date. Failure to file and serve a timely objection shall be deemed consent to the Cure amounts paid by Debtor in accordance with <u>Section 6.3</u> of this Plan. If there is a dispute regarding: (i) the amount of any Cure payment; (ii) the ability of Reorganized Debtor to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease to be assumed or assigned; or (iii) any other matter pertaining to assumption, the Cure payments required by Section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving the assumption.

**6.5.** **Confirmation Order.** The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumptions described in this <u>Article 6</u> pursuant to Section 365 of the Bankruptcy Code as of the Effective Date. Notwithstanding the forgoing, if, as of the date the Bankruptcy Court enters the Confirmation Order, there is pending before the Bankruptcy Court a dispute concerning the Cure amount or adequate assurance for any particular Executory Contract or Unexpired Lease, the assumption of such Executory Contract or Unexpired Lease shall be effective as of the date the Bankruptcy Court enters an order resolving any such dispute and authorizing assumption by Debtor.

**6.6.** **Bar Date.** All proofs of Claims with respect to Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be filed no later than thirty (30) calendar days after the Effective Date. Any Claim not filed within such time shall be forever barred.

## 7. MANNER OF DISTRIBUTION OF PROPERTY UNDER THIS PLAN

**7.1.** **Distributions.** Distributions to Holders of Class 5 Allowed Claims shall be the responsibility of the Disbursing Agent, and Reorganized Debtor shall be responsible for making the balance of Distributions described in this Plan. Reorganized Debtor and Disbursing Agent, as applicable, may make such Distributions before the allowance of each Claim has been resolved if Reorganized Debtor has a good faith belief that the Disputed Claims Reserve is sufficient for all Disputed Claims. Except as otherwise provided in this Plan or the Confirmation Order, the Cash necessary for Reorganized Debtor to make payments pursuant to this Plan may be obtained from existing Cash balances or the Exit Loan, and the Cash necessary for Disbursing Agent to make payments pursuant to this Plan shall be obtained from the Disbursing Agent Account.

**7.2.** **Reserves.** Disbursing Agent shall establish and maintain the Disputed Claim Reserve with respect to Class 5 General Unsecured Claims, and Reorganized Debtor shall establish and maintain the Disputed Claim Reserve for the balance of the Claims.

**7.3.** **Statements.** Reorganized Debtor shall maintain a record of the names and addresses of all Holders of Allowed Claims as of the Effective Date for purposes of mailing Distributions to them, and shall provide a copy to the Disbursing Agent. Reorganized Debtor and the Disbursing Agent may rely on the name and address set forth in Debtor's Schedules and/or Proofs of Claim and the ledger and records regarding Holders of Equity Securities as of the

Record Date as being true and correct unless and until notified otherwise in writing. Reorganized Debtor shall file all tax returns and other filings with governmental authorities on behalf of Reorganized Debtor and the Assets it holds. The Disbursing Agent shall be responsible for any tax returns and other filings with governmental authorities with regard to the Assets it holds.

**7.4.** **Further Authorization**.  Debtor and Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions of this Plan.

**8.** **CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE**

**8.1.** **Conditions to Confirmation**.  The Confirmation Order shall have been entered and be in form and substance reasonable acceptable to Debtor.

**8.2.** **Conditions to Effectiveness**.  The following are conditions precedent to the occurrence of the Effective Date:

**8.2.1.**  The Confirmation Order shall be a Final Order, except that Debtor reserves the right to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order;

**8.2.2.**  All documents necessary to implement the transactions contemplated by this Plan shall be in form and substance reasonable acceptable to Debtor;

**8.2.3.**  The Settlement and Restructuring Agreement shall be in form and substance reasonably acceptable to Solitude, Woolley and the Debtor, and the Settlement and Restructuring Agreement shall have been executed;

**8.2.4.**  The Class 2 and Class 6 Settlement and Agreement shall be in form and substance reasonably acceptable to the DOJ, Woolley and the Debtor, and the Class 2 and Class 6 Settlement Agreement shall have been executed;

**8.2.5.**  The Exit Loan Documents shall be in form and substance reasonably acceptable to Woolley and the Debtor, and the Exit Loan Documents shall have been executed;

**8.2.6.**  The initial advance under the Exit Loan shall have been funded; and

**8.2.7.**  The Class 5 Distribution Amount shall have been distributed to the Disbursing Agent for deposit into the Disbursing Agent Account.

**9.** **TITLE TO PROPERTY; DISCHARGE; INJUNCTION**

**9.1.** **Vesting of Assets**.  Subject to the provisions of this Plan and as permitted by Section 1123(a)(5)(B) of the Bankruptcy Code, the Assets, including the Litigation Claims and right, title, and interest being assumed by Reorganized Debtor in the assumed Executory Contracts, shall be transferred to Reorganized Debtor on the Effective Date.  As of the Effective Date, all such property shall be free and clear of all Liens, Claims, and Equity Securities except as otherwise provided herein.  On and after the Effective Date, Reorganized Debtor may operate

its business and may use, acquire, and dispose of property and compromise or settle any Claim without the supervision of or approval of the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

**9.2.**      **Preservation of Litigation Claims**.  In accordance with Section 1123(b)(3) of the Bankruptcy Code, and except as otherwise expressly provided herein, all Litigation Claims shall be assigned and transferred to Reorganized Debtor pursuant to <u>Section 5.1</u> of this Plan. Reorganized Debtor, as the successor in interest to Debtor and the Estate, may and shall have the exclusive right to sue on, settle, or compromise any and all Litigation Claims, including derivative actions existing against Debtor on the Effective Date. Notwithstanding, however, all Avoidance Actions are waived and extinguished as of the Effective Date.

**9.3**      **Discharge.**  On the Effective Date, except as otherwise provided in this Plan, the Debtor shall be discharged from any and all unclassified Claims and Claims in Classes 1, 2, 3, 4, 5, 6, and 7 to the fullest extent provided in sections 524 and 1141 of the Bankruptcy Code.  The Discharge shall be to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, and, except as otherwise expressly provided by this Plan or the Confirmation Order, all consideration distributed under this Plan and shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any kind or nature whatsoever against the Debtor or any of its assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims.  Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date as to unclassified Claims and Claims in Classes 1, 2, 3, 4, 5, 6, and 7, the Debtor shall be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code. Nothing in this Plan or Confirmation Order shall operate to expand the Debtor's discharge as provided for in this <u>Section 9.3</u> beyond those allowed by the Bankruptcy Code. Nothing in this Plan or Confirmation Order shall discharge any Claims of the United States arising after the Confirmation Date.

**9.4.**      **Compromise and Settlement.**  The allowance, classification, and treatment of all Allowed Claims and their respective Distributions under this Plan take into account and/or conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(c) of the Bankruptcy Code, or otherwise.  As of the Effective Date, any and all such rights described in the preceding sentence will be settled, compromised, and released pursuant to this Plan and any and all such Causes of Action related thereto are settled, compromised, and released pursuant hereto.

**9.5.**      **Injunction**.  From and after the Effective Date, and except as provided in this Plan and the Confirmation Order, all entities that have held, currently hold, or may hold a Claim or an Equity Security or other right of an Equity Security Holder that is terminated pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such Claims or terminated Equity Securities or rights: (i) commencing or continuing in any manner any action or other proceeding against Reorganized Debtor or its

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

21

property; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Reorganized Debtor or its property; (iii) creating, perfecting, or enforcing any Lien or encumbrance against Reorganized Debtor or its property; (iv) asserting a right of subrogation of any kind against any debt, liability, or obligation due to Reorganized Debtor or its property; and (v) commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of this Plan or the Bankruptcy Code.  Nothing in this Plan or the Confirmation Order will enjoin, impair or otherwise preclude the United States (1) from pursuing any criminal action or any police or regulatory action; (ii) from pursuing any liability to the United States that is not a Claim; (iii) from exercising any rights of setoff or recoupment; and (iv) from pursuing any claim of the United States arising after the Confirmation Date.

**9.6.     Releases by Debtor.  Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the release of Claims by and treatment of the KMW Leases, the Released Parties' facilitation of the expeditious reorganization of Debtor and the implementation of the restructuring contemplated by this Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by Debtor, the Reorganized Debtor, and the Estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or which could be asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, the Reorganized Debtor, or and the Estate would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, Debtor, Debtor's restructuring, Debtor's Chapter 11 Case, the purchase, sale or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Security that is treated in this Plan, the business or contractual arrangements between Debtor and any Released Party, the restructuring of Claims and Equity Securities before or during the Chapter 11 Case, the negotiation, formulation or preparation of this Plan, the Disclosure Statement or related agreements, instruments or other documents, or any other act or omission, transaction, agreement, event or other occurrence relating to the Debtor taking place on or before the Confirmation Date of this Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party.**

**9.7.     Exculpation.**  Except as provided for in this Plan, from and after the Effective Date, neither the Debtor, Reorganized Debtor, Creditor Committee, KMW, Solitude,  the professionals employed on behalf of the Estate or the Creditor Committee, nor any of their respective present or former members, directors, officers, managers, employees, advisors, attorneys, or agents, shall have or incur any liability, including derivative claims, but excluding direct claims, to any Holder of a Claim or Equity Security or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of (from the Petition Date through the Effective Date), the Chapter 11 Case, the pursuit of confirmation of this Plan, or the consummation of this Plan, except for gross negligence and willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan or in the context of the Chapter 11 Case.

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

22

## 10. RETENTION OF JURISDICTION

**10.1. Jurisdiction.** Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and Reorganized Debtor after the Effective Date as is legally permissible, including jurisdiction to:

**10.1.1.** Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Disputed Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Disputed Claims;

**10.1.2.** Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan for periods ending on or before the Effective Date;

**10.1.3.** Resolve any matters related to the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease to which Debtor or Reorganized Debtor are party and to hear, determine, and, if necessary, liquidate any Claims arising there from or Cure amounts related thereto;

**10.1.4.** Insure that Distributions to Holders of Allowed Claims, or if applicable, Equity Securities are accomplished pursuant to the provisions of this Plan;

**10.1.5.** Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications or motions involving Debtor or Reorganized Debtor that may be pending on the Effective Date or commenced thereafter as provided for by this Plan;

**10.1.6.** Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan or the Disclosure Statement or the Confirmation Order, except as otherwise provided herein;

**10.1.7.** Decide or resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of any Final Order, this Plan, the Confirmation Order, or any Person's obligations incurred in connection with this Plan or the Confirmation Order;

**10.1.8.** Modify this Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code and Section 11.1 of this Plan or modify any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order or the Reorganized Debtor; or remedy any defect or omission or reconcile any inconsistency in any Final Order, this Plan, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code;

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

23

4836-5613-2945 v25

**10.1.9.** Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person with consummation, implementation, or enforcement of any Final Order, this Plan, or the Confirmation Order, except as otherwise provided herein;

**10.1.10.** Enter and implement such orders as are necessary or appropriate if a Final Order or the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

**10.1.11.** Determine any other matters that may arise in connection with or relate to this Plan, any Final Order, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, any Final Order, or Confirmation Order, except as otherwise provided herein;

**10.1.12.** Enter an order closing the Chapter 11 Case;

**10.1.13.** Hear and decide Litigation Claims and continue to hear and decide pending Litigation Claims and any other claim or cause of action of Debtor and Reorganized Debtor; and

**10.1.14.** Decide or resolve any matter over which the Bankruptcy Court has jurisdiction pursuant to Section 505 of the Bankruptcy Code

Nothing contained in this <u>Article 10</u> shall constitute a waiver by any Person of the right to assert that the Bankruptcy Court lacks jurisdiction over any matter set forth in this <u>Article 10</u>.

## 11.    MODIFICATION AND AMENDMENT OF PLAN

**11.1.    Modification and Amendment**.  Prior to Confirmation, Debtor may alter, amend, or modify this Plan under Section 1127(a) of the Bankruptcy Code at any time.  After the Confirmation Date and prior to substantial consummation of this Plan as defined in Section 1101(2) of the Bankruptcy Code, Debtor may, under Section 1127(b), (c), and (d) of the Bankruptcy Code, alter, amend, or modify this Plan or institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, to make appropriate adjustments and modifications to this Plan or the Confirmation Order as may be necessary to carry out the purposes and effects of this Plan so long as such proceedings do not materially adversely affect the treatment of Holders of Claims under this Plan.

## 12.    MISCELLANEOUS

**12.1.    Filing of Objections to Claims**.  After the Effective Date, objections to Claims shall be made and objections to Claims made previous thereto shall be pursued by Reorganized Debtor or any other party properly entitled to do so under the Bankruptcy Code.  Any objections to Claims made after the Effective Date shall be filed and served not later than the first Business Day that is thirty (30) calendar days after the Effective Date; provided, however, that such period may be extended by order of the Bankruptcy Court.

**12.1.1. Resolution of Objections After Effective Date**.  From and after the Effective Date, Reorganized Debtor may litigate to judgment, propose settlements of, or withdraw

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

24

objections to, all pending or filed Disputed Claims and may settle or compromise any Disputed Claim without notice and a hearing and without approval of the Bankruptcy Court.

**12.1.2. Distributions and Disputed Claims Reserve**. In order to facilitate Distributions to Holders of Allowed Claims, and if and to the extent there are Disputed Claims or Disputed Equity Securities in any Class, Reorganized Debtor or the Disbursing Agent, as applicable, shall set aside in a designated reserve account the payments or Distributions applicable to such Disputed Claims as if such Disputed Claims were Allowed Claims, pending the allowance or disallowance of such Disputed Claims. In the event Reorganized Debtor or the Disbursing Agent, as applicable, wishes to deposit or hold a lesser amount than required herein and is unable to reach an agreement with the Holder of the Disputed Claim on the amount to be deposited or held, the Bankruptcy Court shall fix the amount after notice and hearing. Upon Final Order with respect to a Disputed Claim, the Holder of such Disputed Claim, to the extent it has been determined to be an Allowed Claim, shall receive as soon as reasonably practical that payment or Distribution to which it would have been entitled if the portion of the Claim so allowed had been allowed as of the Effective Date.

**12.1.3. Late-Filed Claims**. No Proof of Claim filed after the Bar Date or, as applicable, the Administrative Claim Bar Date, shall be allowed, and all such Proofs of Claims are hereby disallowed in full. After the Bar Date or the Administrative Bar Date, as applicable, no Creditor shall be permitted to amend any Claim or Proof of Claim to increase the claimed amount and any such amendment shall be disallowed to the extent of the late-filed increase in the claimed amount. Notwithstanding the above, the United States reserves the right to amend or file a Proof of Claim after the applicable Bar Date consistent with applicable law and the Class 2 and Class 6 Settlement Agreement.

**12.2.     Effectuating Documents; Further Transactions; Timing**. Debtor and Reorganized Debtor are each authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any securities issued, transferred, or canceled pursuant to this Plan. All transactions that are required to occur on the Effective Date under the terms of this Plan shall be deemed to have occurred simultaneously. Debtor and Reorganized Debtor are authorized and directed to do such acts and execute such documents as are necessary to implement this Plan.

**12.3.     Exemption from Transfer Taxes**. Pursuant to Section 1146 of the Bankruptcy Code: (i) the issuance, distribution, transfer, or exchange of Estate property; (ii) the creation, modification, consolidation, or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of, or connection with this Plan or the Confirmation Order; (iii) the making, assignment, modification, or recording of any lease or sublease; or (iv) the making, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment and the appropriate state of local government officials or agents shall be, and hereby are, directed to

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

25

forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment

**12.4.** **Revocation or Withdrawal of this Plan.** Debtor reserves the right to revoke or withdraw this Plan at any time prior to its substantial consummation. If this Plan is withdrawn or revoked, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against Debtor or any other Person nor shall the withdrawal or revocation of this Plan prejudice in any manner the rights of Debtor or any Person in any further proceedings involving Debtor. In the event this Plan is withdrawn or revoked, nothing set forth herein shall be deemed an admission of any sort and this Plan and any transaction contemplated thereby shall be inadmissible into evidence in any proceeding

**12.5.** **Binding Effect**. This Plan shall be binding upon, and shall inure to the benefit of Debtor, Reorganized Debtor, and the Holders of all Claims and Equity Securities and their respective successors and assigns.

**12.6.** **Governing Law**. Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any contract, instrument, release, or other agreement entered into in connection with this Plan or in any document which remains unaltered by this Plan, the rights, duties, and obligations of Debtor, Reorganized Debtor, and any other Person arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of North Carolina without giving effect to North Carolina's choice of law provisions.

**12.7.** **Modification of Payment Terms**. Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the Holder of such Allowed Claim at any time after the Effective Date upon the prior written consent of the Holder whose Allowed Claim treatment is being adversely affected.

**12.8.** **Providing for Claims Payments**. Distributions to Holders of Allowed Claims shall be made by Reorganized Debtor or the Disbursing Agent, as applicable,: (i) at the addresses set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such Holders if no proof of Claim is filed or if Debtor has been notified of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to Reorganized Debtor after the date of any related proof of Claim; or (iii) at the addresses reflected in the Schedules if no proof of Claim has been filed and Reorganized Debtor has not received a written notice of a change of address. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until Reorganized Debtor or the Disbursing Agent, as applicable, is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest. Amounts in respect of undeliverable Distributions made through Reorganized Debtor or the Disbursing Agent, as applicable, shall be paid to the Clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 3011, as in the case of a Chapter 7 liquidation. Nothing contained in this Plan shall require Debtor or Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

**12.9.** **Set Offs**. Debtor and Reorganized Debtor may, but shall not be required to, set off or recoup against any Claim and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim (before any Distribution is made on account of such Claim or Equity Security), claims of any nature whatsoever that the applicable Debtor or Reorganized

Debtor may have against the Holder of such Claim to the extent such Claims may be set off or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor or Reorganized Debtor of any such Claim that it may have against such Holder.

**12.10.    Notices**.  Any notice required or permitted to be provided under this Plan shall be in writing and served by either: (i) certified mail, return receipt requested, postage prepaid; (ii) hand delivery; or (iii) reputable overnight courier service, freight prepaid, to be addressed as follows:

If to Debtor:                          Dynamic International Airways, LLC
                                       Attn: Raymond Lawlor
                                       4310 Regency Drive, Suite 100
                                       High Point, NC  27265
                                       Tel:    (262) 521-1100
                                       Email:  rlawlor@flydya.com

With a copy to:                        Garman Turner Gordon
                                       Attn:  Gerald M. Gordon, Esq.
                                       650 White Drive, Suite 100
                                       Las Vegas, NV  89119
                                       Tel:    (725) 777-3000
                                       Email:  ggordon@gtg.legal

                                       and

                                       Bell, Davis & Pitt,
                                       Attn:  Walter Pitt, Esq.
                                       PO Box 21029
                                       Winston-Salem, NC 27120-1029
                                       Tel:   (336) 714-4110
                                       Email:  WPitt@belldavispitt.com

                                       and

                                       Northen Blue, LLP
                                       Attn: John A. Northen, Esq.
                                       1414 Raleigh Road, Suite 435
                                       Chapel Hill, NC 27517
                                       Tel:  (919) 968-4441
                                       Email:  jan@nbfirm.com

**12.11.    Severability**.  If any provision of this Plan is determined by the Bankruptcy Court to be invalid, illegal, or unenforceable or this Plan is determined to be not confirmable pursuant to Section 1129 of the Bankruptcy Code, the Bankruptcy Court, at the request of Debtor shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

27

terms and provisions of this Plan shall remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.12. Withholding and Reporting Requirements**. In connection with this Plan and all instruments and securities issued in connection therewith and Distributions thereon, Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements. Reorganized Debtor shall be authorized to take any and all action that may be necessary to comply with such withholding and recording requirements. Notwithstanding any other provision of this Plan, each Holder of an Allowed Claim that has received a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding, and other tax obligation on account of such Distribution.

**12.13. Post-Confirmation Reporting**. Until the entry of the final decree closing the Chapter 11 Case, Reorganized Debtor shall comply with the Bankruptcy Code and Bankruptcy Rules post-confirmation reporting requirements. Additionally, Reorganized Debtor shall file post-confirmation quarterly operating reports detailing receipts and disbursements (along with ending cash balance) for each calendar quarter from the date of confirmation until dismissal, conversion, or entry of a final decree closing the case no later than 20 days after the expiration of the reported quarter.

**12.14. Cramdown**. In the event that any Impaired Class is determined to have rejected this Plan in accordance with Section 1126 of the Bankruptcy Code, Debtor may invoke the provisions of Section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of this Plan. Debtor reserves the right to modify this Plan to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

. . .

. . .

. . .

. . .

1   **12.15.**    **Quarterly Fees**.  Prior to the Effective Date, Debtor, and after the Effective Date,
2   Reorganized Debtor, shall pay all quarterly fees payable to the Office of the Bankruptcy
    Administrator consistent with the sliding scale set forth in 28 U.S.C. § 1930(a)(6), and the
3   applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

4           DATED this 14th day of December, 2017.

5                                               DYNAMIC INTERNATIONAL AIRWAYS, LLC
                                                A Virginia limited liability company,
6

7

8

9                               

10

11   _____    By:   Ray Lawlor
                                        Its:   Chief Executive Officer
12

13   **Prepared and Submitted:**

14   GARMAN TURNER GORDON

15

16   By: _____
         GERALD M. GORDON, ESQ
17       NV Bar No. 229
         TERESA PILATOWICZ, ESQ
18       NV Bar No.
         650 White Drive, Suite 100
19       Las Vegas, NV 89119

20   and

21   BELL, DAVIS & PITT, PA
     WALTER PITT, ESQ.
22   NC Bar No. 3467
     DANIEL C. BRUTON, ESQ.
23   NC Bar No. 22440
     PO Box 21029
24   Winston-Salem, NC 27120-1029
     Telephone 336-714-4110
25

26

27

28

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25                                              29

# SCHEDULE 1.1.68
## TO PLAN OF REORGANIZATION
### CERTAIN PRESERVED POTENTIAL CAUSES OF ACTION

All defined terms used herein shall have the meanings set forth in the Plan. The following is a non-exhaustive list of potential parties against whom Debtor and/or Reorganized Debtor may hold a claim or cause of action. Debtor and Reorganized Debtor reserve their right to modify this list to amend or add parties or causes of action, but disclaim any obligation to do so. In addition to the possible causes of action and claims listed below, Debtor and Reorganized Debtor have or may have, in the ordinary course of their business, numerous causes of action and Claims or rights against contractors, subcontractors, vendors, suppliers, and others with whom they deal in the ordinary course of their business (the "Ordinary Course Claims"). Debtor and Reorganized Debtor reserve their right to enforce, sue on, settle, or compromise (or decline to do any of the foregoing) the Ordinary Course Claims, as well as the claims and causes of action listed below and all other claims and causes of action. Debtor and Reorganized Debtor also have, or may have, and are retaining, various claims or causes of action arising under or pursuant to its insurance policies, and all rights arising under, relating to, or in connection with such policies are expressly reserved and retained.

1.      Litigation Claims arising out of or in connection with Debtor's business, property, or operations, including the pending actions against Air India Limited before the United States District Court for the District of New York, The Second Circuit Court of Appeals and the High Court of Delhi.

2.      Litigation Claims arising out of transactions involving, concerning, or related to Debtor; and

3.      All other rights, privileges, claims, actions, or remedies of Debtor and/or Reorganized Debtor existing on the Effective Date, whether arising at law or in equity.

There may also be other Litigation Claims which currently exist or may subsequently arise that are not set forth herein because the facts underlying such Litigation Claims are not currently known or sufficiently known by Debtor. The failure to list any such unknown Litigation Claim herein is not intended to limit the rights of Reorganized Debtor to pursue any unknown Litigation Claim to the extent the facts underlying such unknown Litigation Claim become more fully known in the future.

Unless Litigation Claims against any individual or entity are expressly waived, relinquished, released, compromised, or settled by the Plan or any Final Order, Debtor expressly reserves for its benefit, and the benefit of Reorganized Debtor, all Litigation Claims, including, without limitation, all unknown Litigation Claims for later adjudication and therefore no preclusion doctrine (including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches) shall apply to such Litigation Claims after the confirmation or consummation of the Plan. In addition, Debtor expressly reserves for its benefit and the benefit of Reorganized Debtor, the right to pursue or adopt any claims alleged in any lawsuit in which Debtor is a defendant or an interested party, against any individual or entity, including plaintiffs and co-defendants in such lawsuits.

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

30

# SCHEDULE 6.1
## TO
## PLAN OF REORGANIZATION
## ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

1.    The leased Boeing 767 aircraft from KMW, being;

(i)    Boeing 767-23B bearing serial number 23974 and U.S. Registration Mark N253MY leased from KMW Leasing IV, LLC;

(ii)    Boeing 767-246 bearing serial number 23213 and U.S. Registration Mark N767DA leased from KMW Leasing IX, LLC;

(iii)    Boeing 767-336 bearing serial number 24339 and U.S. Registration Mark N796MY leased from KMW Leasing N796JM, LLC;

(iv)    Boeing 767-336 bearing serial number 25443 and U.S. Registration Mark N254MY leased from KMW Leasing VII, LLC;

(v)    Boeing 767-336 bearing serial number 24343 and U.S. Registration Mark N740JM leased from KMW Leasing X, LLC; and

(vi)    Boeing 767-300ER bearing serial number 24342 and U.S. Registration Mark N793JM leased from KMW Leasing X, LLC.

Garman Turner Gordon
LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

4836-5613-2945 v25

31

# EXHIBIT 2

# EXHIBIT 2

Chapter 7 Liquidation Analysis*

| Current Assets | | | % Recovery |
|---|---|---|---|
| Cash | | | |
| Miscellaneous Airplane Inventory | | $150,000.00 | |
| Litigation Claims (See Note 1) | | $5,000,000.00 | |
| Accounts Receivable (est.) | | $500,000.00 | |
| **Total Estimated Value of Assets** | | $   5,650,000.00 | |

| Secured Claim Recovery | | | |
|---|---|---|---|
| Class 2 -Secured Claims (Note 2) | $150,000.00 | $150,000.00 | 100% |

*Net Liquidation Value After Distribution of Value to Secured Claims*     $5,500,000.00

| Payment of Claims | Est. Claim | | |
|---|---|---|---|
| **Administrative Claims** | | | |
| Theoretical Chapter 7 Trustee Fees (Est.) | $195,750.00 | $197,750.00 | 100% |
| Theoretical Chapter 7 Professional Fees and Expenses (Est.) | $750,000.00 | $750,000.00 | 100% |
| DIP Loan Claim (Note 3) | $6,308,369.00 | $346,960.30 | 5.50% |
| Chapter 11 Professional Fees and Expenses (Est.) | $1,150,000.00 | $1,150,000.00 | 100% |
| | **$8,404,119.00** | **$2,444,710.30** | |

*Net Liquidation Value After Distribution to Administrative Claims*     $3,055,289.70

| Unsecured Claims | | | |
|---|---|---|---|
| Priority Tax and Interest (Est.) | $   7,930,287.00 | $3,055,289.70 | 39% |
| Class 3 - Priority Unsecured Claims (Est.) | $100,000.00 | $0.00 | 0% |
| Class 4/5 - Convenience and General Unsecured Claims (Est.) (Note 4) | $66,000,000.00 | $0.00 | 0% |
| Class 6 - Residual Government Claims (Est.) | $4,250,000.00 | $0.00 | 0% |

| Equity Interests | | | |
|---|---|---|---|
| Class 7 - Equity Securities | | $          - | N/A |

* For purposes of this Chapter 7 Liquidation Analysis, it is assumed hypothetically that the Plan could not ultimately be confirmed at the Confirmation Hearing and, on or about  March 1, 2018 (the "Conversion Date"), the Chapter 11 Case is converted to a proceeding under Chapter 7 of the Bankruptcy Code (the "Chapter 7 Case").  In connection with the hypothetical commencement of the Chapter 7 Case, it is assumed that on or about the Conversion Date, a Chapter 7 trustee is appointed to, among other things, manage the liquidation process, complete a claims analysis, defend against causes of action and/or claims asserted against Debtor, and distribute liquidation proceeds and other assets ultimately realized in accordance with the priorities established by the Bankruptcy Code.  This Chapter 7 Liquidation Analysis should be read in conjunction with the Disclosure Statement and all undefined, capitalized terms shall have the meaning ascribed to them in the Disclosure Statement and Plan.

Note 1 - The Litigation Claims consist of the $8,000,000 claim against Air India (the "Air India Claim") and the claims asserted by the Creditor Committee against the Insiders (the "Committee Claims").  It is anticipated that, given the costs associatied with pursuing the Litigation Claims and the limited likelihood of recovery, the Litigation Claims are not likley to be pursued and generate any recovery for creditors.  However, for purposes of this liquidaton analysis, Debtor has estimated a potential recovery, as set forth by the Committee, of $5,000,000 for the Committee Claims.

Note 2 - The Secured Claims include only those secured claims of the United States Department of Agriculture - Animal and Plant Health Inspection Services ("APHIS").  While APHIS has asserTed a claim of approximately $325,000, the only available security is believed to be the Miscellaneous Airplane Inventory, valued at approximately $150,000, and thus the remainder of the APHIS claim will be in Class 5.  The Secured Claims do not include the $26,000,000+ secured claims held by Kenneth Woolley (the "Woolley Secured Claims").  For purposes of this liquidation analysis, it is assumed that, using the maximum proposed recovery set forth by the Committee for the Committee Claims, the Committee Claims will result in the Woolley Secured Claims being deemed unsecured and treated in Class 5.  If the Committee analysis regarding the Committee Claims is incorrect, there will be no recovery beyond secured claims.

Chapter 7 Liquidation Analysis*

**Note 3** - The DIP Loan was approved as an administrative expenses claim.  However, the DIP Loan may not be repaid from recovery from the Committee Claims and therefore, only the accounts recievables may be utilized.


**Note 4** - In the event of a liquidation, the Insider Subordinated claims of approximately $29,000,000 would not be subordinated and would share equally with all unsecured creditors.  No adjustment has been made with regard to reducing this Insider Subordinated Claims for any recoveries referenced in Note 2 above.

# EXHIBIT 3

# EXHIBIT 3

**DYNAMIC INTERNATIONAL AIRWAYS-DIP   STATEMENT OF CASH FLOWS**

| Time Period | Mar-18 | Apr-18 | May-18 | Jun-18 | Jul-18 | Aug-18 | Sep-18 | Oct-18 | Nov-18 | Dec-18 | Jan-19 | Feb-19 | Mar-19 | Apr-19 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Inflows from Operations** | | | | | | | | | | | | | | |
| ACMI / Charter | 4,231,000 | 4,203,500 | 4,231,000 | 4,399,000 | 4,399,000 | 4,399,000 | 4,203,500 | 4,231,000 | 4,203,500 | 4,231,000 | 3,875,000 | 3,875,000 | 3,875,000 | 3,875,000 |
| Ticket Sales | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Deposits | - | - | - | - | - | - | - | - | - | - | 180,233 | - | - | - |
| **Total Cash Inflows from Operations** | **4,231,000** | **4,203,500** | **4,231,000** | **4,399,000** | **4,399,000** | **4,399,000** | **4,203,500** | **4,231,000** | **4,203,500** | **4,231,000** | **4,055,233** | **3,875,000** | **3,875,000** | **3,875,000** |
| | | | | | | | | | | | | | | |
| **Cash Outflows from Operations** | | | | | | | | | | | | | | |
| Aircraft Rents | 524,700 | 523,600 | 524,700 | 540,100 | 540,100 | 540,100 | 523,600 | 524,700 | 523,600 | 524,700 | 687,500 | 687,500 | 687,500 | 687,500 |
| Aircraft Reserves | 509,080 | 508,040 | 509,080 | 523,640 | 523,640 | 523,640 | 508,040 | 509,080 | 508,040 | 509,080 | 663,000 | 663,000 | 663,000 | 663,000 |
| Crew | 559,267 | 559,267 | 559,267 | 579,571 | 579,571 | 579,571 | 559,267 | 559,267 | 559,267 | 559,267 | 694,711 | 694,711 | 694,711 | 694,711 |
| Fuel | 393,525 | 386,100 | 393,525 | 393,525 | 393,525 | 393,525 | 386,100 | 393,525 | 386,100 | 393,525 | - | - | - | - |
| Ground Operations & Fees | 630,992 | 620,258 | 630,992 | 630,992 | 630,992 | 595,992 | 594,258 | 604,492 | 594,258 | 604,492 | 62,125 | 62,125 | 62,125 | 62,125 |
| Hotel and Travel Expense | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 |
| Sales and Marketing | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,200 | 10,200 | 10,200 | 10,200 |
| Maintenance | 661,541 | 660,521 | 805,541 | 676,303 | 676,303 | 676,303 | 660,521 | 661,541 | 660,521 | 661,541 | 856,354 | 856,354 | 856,354 | 856,354 |
| Flight Operations Expenses | 52,392 | 52,392 | 55,392 | 52,392 | 52,392 | 55,392 | 52,392 | 159,504 | 55,392 | 52,392 | 53,440 | 56,500 | 53,440 | 53,440 |
| Wages & Professional Fees - Admin, Ops & Maintenance | 292,665 | 348,832 | 348,832 | 331,021 | 314,355 | 314,355 | 329,021 | 395,573 | 418,073 | 418,073 | 300,242 | 300,242 | 300,242 | 300,242 |
| General Facilities | 12,150 | 12,150 | 12,150 | 12,150 | 12,150 | 12,150 | 12,150 | 12,150 | 12,150 | 12,150 | 12,393 | 12,393 | 12,393 | 12,393 |
| Insurance | 177,123 | 256,963 | 177,123 | 177,123 | 256,963 | 177,123 | 177,123 | 256,963 | 177,123 | 177,123 | 296,086 | 214,664 | 214,664 | 296,086 |
| **Total Cash Outflows from Operations** | **3,883,435** | **3,998,123** | **4,086,602** | **3,986,817** | **4,049,990** | **3,938,150** | **3,872,473** | **4,146,794** | **3,964,524** | **3,982,343** | **3,696,051** | **3,617,689** | **3,614,629** | **3,696,051** |
| **Net Cash Flow from Operations** | **347,565** | **205,377** | **144,398** | **412,183** | **349,010** | **460,850** | **331,027** | **84,206** | **238,976** | **248,657** | **359,181** | **257,311** | **260,371** | **178,949** |
| | | | | | | | | | | | | | | |
| **Cash Flows from Investing Activities** | | | | | | | | | | | | | | |
| New Hire Crew Training | (24,510) | (29,510) | (29,510) | - | - | - | - | (122,550) | (147,550) | (147,550) | | | | |
| **Net Cash Flow from Investing Activities** | **(24,510)** | **(29,510)** | **(29,510)** | **-** | **-** | **-** | **-** | **(122,550)** | **(147,550)** | **(147,550)** | **-** | **-** | **-** | **-** |
| | | | | | | | | | | | | | | |
| **Cash Flows from Financing Activities** | | | | | | | | | | | | | | |
| DIP Loan Invested | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net Cash Flow from Financing Activities** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** |
| | | | | | | | | | | | | | | |
| **NET CASH FLOW BEFORE REORGANIZATION & PLAN PAYMENTS** | **323,055** | **175,867** | **114,888** | **412,183** | **349,010** | **460,850** | **331,027** | **(38,344)** | **91,426** | **101,107** | **359,181** | **257,311** | **260,371** | **178,949** |
| | | | | | | | | | | | | | | |
| **Cash Flows from Reorganization & Plan Payments** | | | | | | | | | | | | | | |
| Additional Contributed Capital | 3,401,000 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| US Bankruptcy Administrator | - | (13,000) | - | - | (13,000) | - | - | - | - | - | - | - | - | - |
| Debtor Professional Fees | (488,000) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Committee Professional Fees¹ | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Priority IRS Payments² | (151,740) | (151,740) | (151,740) | (151,740) | (151,740) | (151,740) | (151,740) | (151,740) | (151,740) | (151,740) | (151,740) | (151,740) | (151,740) | (151,740) |
| Class 2: US Department of Agriculture Payments | (150,000) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 3: Priority Unsecured Payments | (100,000) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 4: Convenience Class Payments | - | (71,667) | (71,667) | (71,667) | (71,667) | (71,667) | (71,667) | - | - | - | - | - | - | - |
| Class 5: General Unsecured Class Payments | (2,451,000) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 6: Residual Government Unit Payments | (800,000) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Cash Flow from Reorganization and Plan Payments** | **(739,740)** | **(236,407)** | **(223,407)** | **(223,407)** | **(236,407)** | **(223,407)** | **(223,407)** | **(151,740)** | **(151,740)** | **(151,740)** | **(151,740)** | **(151,740)** | **(151,740)** | **(151,740)** |
| | | | | | | | | | | | | | | |
| **NET INCREASE/(DECREASE) IN CASH** | **(416,685)** | **(60,540)** | **(108,518)** | **188,777** | **112,604** | **237,444** | **107,621** | **(190,084)** | **(60,314)** | **(50,633)** | **207,441** | **105,571** | **108,631** | **27,209** |
| **Beginning Cash** | **1,384,582** | **967,897** | **907,358** | **798,840** | **987,617** | **1,100,220** | **1,337,664** | **1,445,285** | **1,255,201** | **1,194,886** | **1,144,254** | **1,351,695** | **1,457,266** | **1,565,897** |
| **ENDING CASH AFTER ADMIN** | **967,897** | **907,358** | **798,840** | **987,617** | **1,100,220** | **1,337,664** | **1,445,285** | **1,255,201** | **1,194,886** | **1,144,254** | **1,351,695** | **1,457,266** | **1,565,897** | **1,593,106** |

1. This amount reflects the $2,670,000 Class 5 Distribution Fund less previously approved and paid Committee Professional Fees in the amount of $219,000. Any further Committee Professional Fees will be paid by the Disbursing Agent from the Class 5 Distribution Fund.
2. IRS payments are based on Dynamic estimates of IRS liability calculated 11/8/17. The interest rate through the payment period is assumed to be 4.00%. This calculation is for the purposes of this forecast only, will be modified to reflect actual rate and liability amount agreed upon.
Note: Costs have been adjusted for 2% inflation in 2019.

**DYNAMIC INTERNATIONAL AIRWAYS-DIP    STATEMENT OF CASH FLOWS**

| Time Period | May-19 | Jun-19 | Jul-19 | Aug-19 | Sep-19 | Oct-19 | Nov-19 | Dec-19 |
|---|---|---|---|---|---|---|---|---|
| **Cash Inflows from Operations** | | | | | | | | |
| ACMI / Charter | 3,875,000 | 3,875,000 | 3,875,000 | 3,875,000 | 3,875,000 | 3,875,000 | 3,875,000 | 3,875,000 |
| Ticket Sales | - | - | - | - | - | - | - | - |
| Deposits | - | - | - | - | - | - | - | - |
| **Total Cash Inflows from Operations** | 3,875,000 | 3,875,000 | 3,875,000 | 3,875,000 | 3,875,000 | 3,875,000 | 3,875,000 | 3,875,000 |
| | | | | | | | | |
| **Cash Outflows from Operations** | | | | | | | | |
| Aircraft Rents | 687,500 | 687,500 | 687,500 | 687,500 | 687,500 | 687,500 | 687,500 | 687,500 |
| Aircraft Reserves | 663,000 | 663,000 | 663,000 | 663,000 | 663,000 | 663,000 | 663,000 | 663,000 |
| Crew | 694,711 | 694,711 | 694,711 | 694,711 | 694,711 | 694,711 | 694,711 | 694,711 |
| Fuel | - | - | - | - | - | - | - | - |
| Ground Operations & Fees | 62,125 | 62,125 | 62,125 | 62,125 | 62,125 | 62,125 | 62,125 | 62,125 |
| Hotel and Travel Expense | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 |
| Sales and Marketing | 10,200 | 10,200 | 10,200 | 10,200 | 10,200 | 10,200 | 10,200 | 10,200 |
| Maintenance | 1,003,234 | 856,354 | 856,354 | 856,354 | 856,354 | 856,354 | 856,354 | 856,354 |
| Flight Operations Expenses | 56,500 | 53,440 | 53,440 | 56,500 | 53,440 | 160,908 | 56,500 | 53,440 |
| Wages & Professional Fees - Admin, Ops & Maintenance | 300,242 | 300,242 | 300,242 | 300,242 | 300,242 | 300,242 | 300,242 | 300,242 |
| General Facilities | 12,393 | 12,393 | 12,393 | 12,393 | 12,393 | 12,393 | 12,393 | 12,393 |
| Insurance | 214,664 | 214,664 | 296,086 | 214,664 | 214,664 | 296,086 | 214,664 | 214,664 |
| **Total Cash Outflows from Operations** | 3,764,569 | 3,614,629 | 3,696,051 | 3,617,689 | 3,614,629 | 3,803,520 | 3,617,689 | 3,614,629 |
| **Net Cash Flow from Operations** | 110,431 | 260,371 | 178,949 | 257,311 | 260,371 | 71,480 | 257,311 | 260,371 |
| | | | | | | | | |
| **Cash Flows from Investing Activities** | | | | | | | | |
| New Hire Crew Training | - | - | - | - | - | - | - | - |
| **Net Cash Flow from Investing Activities** | - | - | - | - | - | - | - | - |
| | | | | | | | | |
| **Cash Flows from Financing Activities** | | | | | | | | |
| DIP Loan Invested | - | - | - | - | - | - | - | - |
| **Net Cash Flow from Financing Activities** | - | - | - | - | - | - | - | - |
| | | | | | | | | |
| **NET CASH FLOW BEFORE REORGANIZTION & PLAN PAYMENTS** | 110,431 | 260,371 | 178,949 | 257,311 | 260,371 | 71,480 | 257,311 | 260,371 |
| | | | | | | | | |
| **Cash Flows from Reorganization & Plan Payments** | | | | | | | | |
| Additional Contributed Capital | - | - | - | - | - | - | - | - |
| US Bankruptcy Administrator | - | - | - | - | - | - | - | - |
| Debtor Professional Fees | - | - | - | - | - | - | - | - |
| Committee Professional Fees¹ | - | - | - | - | - | - | - | - |
| Priority IRS Payments² | (151,740) | (151,740) | (151,740) | (151,740) | (151,740) | (151,740) | (151,740) | (151,740) |
| Class 2: US Department of Agriculture Payments | - | - | - | - | - | - | - | - |
| Class 3: Priority Unsecured Payments | - | - | - | - | - | - | - | - |
| Class 4: Convenience Class Payments | - | - | - | - | - | - | - | - |
| Class 5: General Unsecured Class Payments | - | - | - | - | - | - | - | - |
| Class 6: Residual Government Unit Payments | - | - | - | - | - | - | - | - |
| **Total Cash Flow from Reorganization and Plan Payments** | (151,740) | (151,740) | (151,740) | (151,740) | (151,740) | (151,740) | (151,740) | (151,740) |
| | | | | | | | | |
| **NET INCREASE/(DECREASE) IN CASH** | (41,309) | 108,631 | 27,209 | 105,571 | 108,631 | (80,260) | 105,571 | 108,631 |
| **Beginning Cash** | 1,593,106 | 1,551,797 | 1,660,428 | 1,687,636 | 1,793,207 | 1,901,839 | 1,821,579 | 1,927,150 |
| **ENDING CASH AFTER ADMIN** | 1,551,797 | 1,660,428 | 1,687,636 | 1,793,207 | 1,901,839 | 1,821,579 | 1,927,150 | 2,035,781 |

1. This amount reflects the $2,670,000 Class 5 Distribution Fund
2. IRS payments are based on Dynamic estimates of IRS liability ca
Note: Costs have been adjusted for 2% inflation in 2019.